FILED

DEC 3 1 2005

CLERK
DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

PEOPLE OF THE STATE OF ILLINOIS,         )
*ex rel.* Lisa Madigan,                   )
Attorney General of the State            )
of Illinois,                             )
                                         )
         Plaintiff,                      )
                                         )    CIVIL ACTION NO.
                                         )
         v.                              )
                                         )    05 C 5 0 2 4 5
                                         )
BFI WASTE SYSTEMS OF                     )
NORTH AMERICA, INC., *et al.*,            )
("*et al.*" includes each of the         )
Cashout Generator Settling               )
Defendants, the Owner Settling           )
Defendants, the Municipal                )
Settling Defendants and the              )
Covenant Beneficiary Settling            )
Defendants),                             )
                                         )
         Defendants.                     )

RD/RA CONSENT DECREE

I.   BACKGROUND

1.   People of the State of Illinois, *ex rel.* Lisa Madigan,

Attorney General of the State of Illinois ("the State"), on her own

motion and at the request of the Illinois Environmental Protection

Agency ("Illinois EPA"), filed a complaint in this matter pursuant

to Section 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 and Section 22.2 of the Illinois Environmental Protection Act ("the Act"), 415 ILCS 5/22.2 (2004).

2. The State in its complaint seeks, inter alia: (1) reimbursement of costs incurred by the State for response actions at the MIG/DeWane Landfill Superfund Site ("Site") located in Belvidere, Boone County, Illinois, together with accrued interest; and (2) performance of studies and response activities at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

3. In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), U.S. EPA notified the Federal Natural Resource Trustee(s) and the State of Illinois Natural Resources Trustee(s), of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

4. The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes

-2-

an imminent or substantial endangerment to the public health or welfare or the environment.

5.    Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, U.S. EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on August 30, 1990, 55 Fed. Reg. 35502.  Pursuant to an understanding between U.S. EPA and Illinois EPA, Illinois EPA has assumed responsibility as the lead agency for implementation of the final Site RD/RA response actions.

6.    On October 29, 1990, U.S. EPA and Browning-Ferris Industries of Illinois, Inc. (n/k/a BFI Waste Systems of North America, Inc.) ("BFINA") agreed to an Administrative Order On Consent ("AOC1"), pursuant to section 106(a) of CERCLA, 42 U.S.C. § 9606 (a).  Under the terms of AOC1, BFINA was required to monitor leachate levels and pump the leachate surface impoundment to allow two feet of freeboard.  BFINA was also required to pay U.S. EPA's costs associated with a June 1990 removal action and oversight costs related to implementing the terms of AOC1.  BFINA has fully complied with AOC1.

7.    On March 29, 1991, the U.S. EPA, the Illinois EPA and certain respondents, including BFINA, agreed to an Administrative Order on Consent Re: Remedial Investigation and Feasibility Study ("AOC2"), which required the respondents to undertake all actions

-3-

to (1) fully determine the nature and effect of the potential threat to the public health, welfare or the environment caused by the release or threatened release of hazardous substances, pollutants or contaminants from or at the Site by conducting a Remedial Investigation ("RI"), and (2) determine and evaluate alternatives for remedial action to prevent, mitigate or otherwise remedy any release or threatened release of hazardous substances, pollutants or contaminants from or at the Site by conducting a Feasibility Study ("FS"). The respondents to AOC2 have fully complied with AOC2.

8. The AOC2 respondents completed the Remedial Investigation on July 11, 1997, and the Feasibility Study on February 1, 1999.

9. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, Illinois EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 10, 17, and 24, 1999, in a major local newspaper of general circulation. Illinois EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Illinois EPA based the selection of the response action.

10. The decision by Illinois EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision

-4-

("ROD"), Appendix A hereto, executed on March 30, 2000, and concurred with by the U.S. EPA on March 31, 2000. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

11. Based on the information presently available, the State believes that the Work will be properly and promptly conducted by BFINA if conducted in accordance with the requirements of this Consent Decree and its appendices.

12. Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action set forth in the ROD and the Site Work, as defined below, to be performed by BFINA shall constitute a response action.

13. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

## II.  JURISDICTION

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and CERCLA, 42 U.S.C. §

9601 *et seq.*, and the doctrine of pendent jurisdiction with respect to claims under the Act, 415 ILCS 5/1 *et seq.* (2004). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III.  **PARTIES BOUND**

15. This Consent Decree applies to and is binding upon the State of Illinois and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

16. BFINA shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing BFINA with respect to the Site or the Work, and BFINA shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. BFINA or its contractors shall provide written notice of the Consent Decree to

-6-

all subcontractors hired to perform any portion of the Work required by this Consent Decree. BFINA shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with BFINA within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.  DEFINITIONS

17. Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Act, CERCLA, or in regulations promulgated under the Act or CERCLA shall have the meaning assigned to them in the Act, CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

18. "Act" shall mean the Illinois Environmental Protection Act, 415 ILCS 5/1 et seq. (2004).

19. "BFINA" shall mean BFI Waste Systems of North America, Inc., as merger successor to Browning-Ferris Industries of Illinois, Inc., and its former, present and future shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors, predecessors, agents, and assigns, whether pursuant to

-7-

contract, by operation of law, or otherwise.

20. "Cashout Generator Settling Defendants" shall mean those parties identified in Appendix D, and each of their respective former, present and future owners, shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors, predecessors, agents, and assigns, whether pursuant to contract, by operation of law, or otherwise. The amount of hazardous substances that a Cashout Generator Settling Defendant may have arranged to be disposed of at the Site or accepted for transport to the Site (if the Site was selected by the Cashout Generator Settling Defendant) is, to the best of the Cashout Generator Settling Defendant's knowledge, minimal in relation to the total volume of the hazardous substances delivered to the Site and is not significantly more toxic than other hazardous substances sent to the Site.

21. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq.*

22. "Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

23. "Covenant Beneficiary Settling Defendants" shall mean those parties added as Settling Defendants to this Consent Decree

after its effective date, with the State's approval, using the provisions of Paragraph 106.d. and the Covenant Beneficiary Form (Appendix H).

24. "Covenant Beneficiary Form" shall mean the documents attached as Appendix H, which provides the means for future Settling Defendants to be added to this Consent Decree, upon the State's approval.

25. "Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or State holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State holiday, the period shall run until the close of business of the next working day.

26. "Future Response Costs" shall mean all costs incurred subsequent to the entry of this Consent Decree, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Periodic Review), IX (Access and Institutional Controls) (including, but not limited to, attorneys fees and any monies paid

to secure access and/or to secure institutional controls, including the amount of just compensation), XV (Emergency Response), and Paragraphs 133, 134, and 137 of Section XXI (Covenants Not To Sue By Plaintiff).

27. "Illinois EPA" shall mean the Illinois Environmental Protection agency and any successor departments or agencies of the State.

28. "Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

29. "Municipal Settling Defendants" shall mean those parties identified in Appendix F, and each of their respective former, present and future shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors, predecessors, agents, and assigns, whether pursuant to contract, by operation of law, or otherwise. The amount of hazardous substances that a Municipal Settling Defendant may have arranged to be disposed of at the Site or accepted for transport to the Site (if the Site was selected by the Municipal Settling Defendant) is, to the best of the Municipal Settling Defendant's knowledge, minimal in relation to the total volume of the hazardous substances delivered to the Site

and is not significantly more toxic than other hazardous substances sent to the Site.

30. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

31. "Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by Illinois EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

32. "Owner, Operator, or Lessee of Residential Property" shall mean a person who owns, operates, manages, or leases Residential Property and who uses or allows the use of the Residential Property exclusively for residential purposes.

33. "Owner Settling Defendants" shall mean the Settling Defendants listed in Appendix E.

34. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

35. "Parties" shall mean the Illinois EPA, the State of Illinois, the Illinois Attorney General and the Settling Defendants.

36. "Past Response Costs" shall mean all costs, including, but

- 11 -

not limited to, direct and indirect costs, that the State incurred at or in connection with the Site prior to entry of this Consent Decree and not submitted for reimbursement under AOC1 or AOC2, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

37. "Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW.

38. "Plaintiff" shall mean the People of the State of Illinois acting by and through the Illinois Attorney General and the Illinois EPA.

39. "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

40. "Record of Decision" or "ROD" shall mean the Illinois EPA Record of Decision relating to the Site signed on March 30, 2000, by the Director of the Illinois EPA, and concurred with by the U.S. EPA on March 31, 2000, and all attachments thereto. The ROD is attached as Appendix A.

41. "Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by BFINA to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by Illinois

EPA.

42. "Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 63 of this Consent Decree and approved by Illinois EPA, and any amendments thereto.

43. "Remedial Design" shall mean those activities to be undertaken by BFINA to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

44. "Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 62 of this Consent Decree and approved by Illinois EPA, and any amendments thereto.

45. "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

46. "Settling Defendant" shall mean individually BFINA, those Parties identified in Appendices D (Cashout Generator Settling Defendants), E (Owner Settling Defendants), F (Municipal Settling Defendants), and any Covenant Beneficiary Defendants added to this Consent Decree after its effective date (collectively, "Settling Defendants").

47. "Site" shall mean the Facility known as the MIG/DeWane Landfill Superfund Site, encompassing approximately 47 acres, located approximately 0.25 miles east of the City of Belvidere, and approximately 0.5 miles north of Business U.S. Route 20, in Boone County, Illinois, and other areas where a hazardous substance from

the Site has been deposited, stored, disposed of, or placed, or otherwise come to be located. The Site is depicted generally on the map attached as Appendix C.

48. "State" shall mean the State of Illinois, Illinois EPA and Illinois Attorney General, collectively.

49. "Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

50. "Supervising Contractor" shall mean the principal contractor retained by BFINA to supervise and direct the implementation of the Work under this Consent Decree.

51. "Trust Fund" or "Trust Funds" shall mean the MIG/DeWane RD/RA Construction Trust Fund and the MIG/DeWane RD/RA O&M Trust Fund established pursuant to the MIG/DeWane Landfill Superfund Site Trust Agreement attached as Appendix G.

52. "United States" shall mean the United States of America.

53. "U.S. EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

54. "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any

pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous substance" under Section 3.215 of the Act, 415 ILCS 5/3.215 (2004).

55. "Work" shall mean all activities BFINA is required to perform under this Consent Decree, including any additional Site work performed by BFINA or required pursuant to Paragraphs 134, 135, or 137 of this Consent Decree, except those activities required by Section XXV (Retention of Records).

### V.  GENERAL PROVISIONS

56. Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site, to reimburse response costs of the Plaintiff, and to resolve the claims and potential claims related to the Site of Plaintiff against Settling Defendants as provided in this Consent Decree.

57. Commitments by BFINA

BFINA shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by BFINA and approved by Illinois EPA pursuant to this Consent Decree.  BFINA shall also reimburse the State for Past

Response Costs and Future Response Costs as provided in this Consent Decree.

58. Compliance With Applicable Law

All activities undertaken by BFINA pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. BFINA must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by Illinois EPA, shall be considered to be consistent with the NCP.

59. Permits

a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, BFINA shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. BFINA may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay

in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work, as long as the delay is not caused by the action or inaction of BFINA.

     c.   This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

     60.  Notice of Obligations to Successors-in-Title

     a.   Within fifteen (15) days after the entry of this Consent Decree, the Owner Settling Defendants shall record a memorandum of judgment of this Consent Decree with the Recorder's Office of Boone County, State of Illinois. Thereafter, each deed, title, or other instrument conveying an interest in the property included in the Site shall contain a notice stating that the property is subject to this Consent Decree and shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under this Consent Decree.

     b.   The obligations of each Owner Settling Defendant with respect to the provision of access under Section IX (Access and Institutional Controls) shall be binding upon any and all such Settling Defendants and any and all persons who subsequently acquire any such interest or portion thereof (hereinafter "Successors-in-Title"). Within fifteen (15) days after the entry of this Consent Decree, each Owner Settling Defendant shall record at

- 17 -

the Recorder's Office a notice of obligation to provide access under Section IX (Access and Institutional Controls) and related covenants, if any. Each subsequent instrument conveying an interest to any such property included in the Site shall reference the recorded location of such notice and covenants applicable to the property.

c. Any Owner Settling Defendant and any Successor-in-Title shall, at least thirty (30) days prior to the conveyance of any such interest, give written notice of this Consent Decree to the grantee and written notice to the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee. In the event of any such conveyance, BFINA's obligations under this Consent Decree, including its obligations to provide or secure access pursuant to Section IX (Access and Institutional Controls), shall continue to be met by BFINA. In addition, if the State approves, the grantee may perform some or all of the Work under this Consent Decree, as approved by the Illinois EPA. In no event shall the conveyance of an interest in property that includes, or is a portion of, the Site release or otherwise affect the liability of BFINA to comply with the Consent Decree.

## VI.  **PERFORMANCE OF THE WORK BY BFINA**

61.  Selection of Supervising Contractor.

a.  All aspects of the Work to be performed by BFINA pursuant to Sections VI (Performance of the Work by BFINA), VII (Periodic Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by Illinois EPA.  Within ten (10) days after the lodging of this Consent Decree, BFINA shall notify Illinois EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  Illinois EPA will issue a notice of disapproval or an authorization to proceed.  If at any time thereafter, BFINA propose to change a Supervising Contractor, BFINA shall give such notice to Illinois EPA and must obtain an authorization to proceed from Illinois EPA, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.  If Illinois EPA disapproves a proposed Supervising Contractor, Illinois EPA will notify BFINA in writing.  BFINA shall submit to Illinois EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to BFINA within thirty (30) days of receipt of Illinois EPA's

- 19 -

disapproval of the contractor previously proposed. Illinois EPA
will provide written notice of the names of any contractor(s) that
it disapproves and an authorization to proceed with respect to any
of the other contractors. BFINA may select any contractor from
that list that is not disapproved and shall notify Illinois EPA of
the name of the contractor selected within twenty-one (21) days of
Illinois EPA's authorization to proceed.

      c.    If Illinois EPA fails to provide written notice of
its authorization to proceed or disapproval as provided in this
Paragraph and this failure prevents BFINA from meeting one or more
deadlines in a plan approved by the Illinois EPA pursuant to this
Consent Decree, BFINA may seek relief under the provisions of
Section XVIII (Force Majeure) hereof.

      62.   Remedial Design.

      a.    Within thirty (30) days after Illinois EPA's issuance
of an authorization to proceed pursuant to Paragraph 61, BFINA
shall submit to Illinois EPA a work plan for the design of the
Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work
Plan"). The Remedial Design Work Plan shall provide for design of
the remedy set forth in the ROD, in accordance with the SOW and for
achievement of the Performance Standards and other requirements set
forth in the ROD, this Consent Decree and/or the SOW. Upon its
approval by Illinois EPA, the Remedial Design Work Plan shall be

incorporated into and become enforceable under this Consent Decree. Within thirty (30) days after Illinois EPA's issuance of an authorization to proceed, BFINA shall submit to Illinois EPA, a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and Illinois EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.    The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of the items listed below in this paragraph.  These items will be based on site-specific factors and include the following items: (1) design sampling and analysis plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan ("RD QAPP") in accordance with Section VIII (Quality  Assurance,  Sampling,  and  Data  Analysis);  (2) a treatability study; (3) a Pre-design Work Plan; (4) a preliminary design submittal; (5) an intermediate design submittal or briefing; (6) a pre-final/final design submittal; and (7) a Construction Quality Assurance Plan.  In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan.

c.    Upon approval of the Remedial Design Work Plan by

Illinois EPA and submittal of the Health and Safety Plan for all field activities to Illinois EPA and the State, BFINA shall implement the Remedial Design Work Plan. BFINA shall submit to Illinois EPA all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions). Unless otherwise directed by Illinois EPA, BFINA shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

d. The preliminary design submittal shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies; (3) results of additional field sampling and pre-design work; (4) project delivery strategy; (5) preliminary plans, drawings and sketches; (6) required specifications in outline form; and (7) preliminary construction schedule.

e. The intermediate design submittal, if required by Illinois EPA or if independently submitted by BFINA, shall be a continuation and expansion of the preliminary design. Any value engineering proposals must be identified and evaluated during this review.

f. The pre-final/final design submittal shall include, at a minimum, the following: (1) final plans and specifications;

- 22 -

(2) Operation and Maintenance Plan; (3) Construction Quality Assurance Project Plan ("CQAPP"); (4) Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) Contingency Plan. The CQAPP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

63. Remedial Action.

a. Within thirty (30) days after the approval of the final design submittal, BFINA shall submit to Illinois EPA, a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by Illinois EPA. Upon its approval by Illinois EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, BFINA shall submit to Illinois EPA a Health and Safety Plan for field activities required by the Remedial Action Work Plan which

conforms to the applicable Occupational Safety and Health Administration and Illinois EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

     b. The Remedial Action Work Plan shall include the following items listed below in this paragraph for which methodologies, plans and schedules should be included in the Remedial Action Work Plan. This list will be based on site specific factors and include the following: (1) the schedule for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for developing and submitting other required Remedial Action plans; (4) methodology for implementation of the Construction Quality Assurance Plan; (5) a groundwater monitoring plan; (6) methods for satisfying permitting requirements; (7) methodology for implementation of the Operation and Maintenance Plan; (8) methodology for implementation of the Contingency Plan; (9) tentative formulation of the Remedial Action team; (10) construction quality control plan (by constructor); and (11) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The Remedial Action Work Plan also shall include a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of BFINA's Remedial Action Project Team (including, but not limited to, the Supervising

Contractor).

c.   Upon approval of the Remedial Action Work Plan by Illinois EPA, BFINA shall implement the activities required under the Remedial Action Work Plan.  BFINA shall submit to Illinois EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions).  Unless otherwise directed by Illinois EPA, BFINA shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

64.   BFINA shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

65.   Modification of the SOW or Related Work Plans.

a.   If Illinois EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, Illinois EPA may require that such modification be incorporated in the SOW and/or such work plans. Provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with

- 25 -

the scope of the remedy selected in the ROD.

   b.   For the purposes of this Paragraph 65 and Paragraphs 98 and 99 only, the "scope of the remedy selected in the ROD" is: (1) Construction and operation of a leachate collection and monitoring system; (2) Construction and operation of an active and passive landfill gas collection system and monitoring program; (3) Leachate surface impoundment closure; (4) Surface water diversion system; (5) Implementation of access restrictions and institutional controls; (6) Natural attenuation of groundwater; (7) Long-term groundwater monitoring; and (8) Construction of a cap over the entire landfill to minimize infiltration of precipitation into the landfill.

   c.   If BFINA objects to any modification determined by Illinois EPA to be necessary pursuant to this Paragraph, BFINA may seek dispute resolution pursuant to Section XIX (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

   d.   BFINA shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

   e.   Nothing in this Paragraph shall be construed to limit Illinois EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

66. BFINA acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

67. BFINA shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the Illinois EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

a. BFINA shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. BFINA shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b.    The identity of the receiving facility and state, will be determined by BFINA following the award of the contract for Remedial Action construction.  BFINA shall provide the information required by Paragraph 67 as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

## VII.    <u>PERIODIC REVIEW</u>

68.    <u>Periodic Review</u>.    BFINA shall conduct any studies and investigations as requested by Illinois EPA, in order to permit Illinois EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

69.    <u>Illinois EPA Selection of Further Response Actions</u>.    If Illinois EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, Illinois EPA may select further response actions for the Site in accordance with the requirements of CERCLA, the Act and the NCP.

70.    <u>Opportunity To Comment</u>.    BFINA and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by Illinois EPA, as a result of the review conducted pursuant to Paragraph 68 above.  BFINA and the public, if permitted to, may submit written comments for the record during the comment

period.

71. BFINA's Obligation To Perform Further Response Actions.
If Illinois EPA selects further response actions for the Site,
BFINA shall undertake such further response actions to the extent
that the reopener conditions in Paragraph 134 or Paragraph 135(the
State's reservations of liability based on unknown conditions or new
information) are satisfied. BFINA may invoke the procedures set
forth in Section XIX (Dispute Resolution) to dispute (1) Illinois
EPA's determination that the reopener conditions of Paragraph 134 or
Paragraph 135 of Section XXI (Covenants Not To Sue by Plaintiff)
are satisfied, (2) Illinois EPA's determination that the Remedial
Action is not protective of human health and the environment, or
(3) Illinois EPA's selection of the further response actions.
Disputes pertaining to whether the Remedial Action is protective or
to Illinois EPA's selection of further response actions shall be
resolved pursuant to Section XIX (Dispute Resolution).

72. Submissions of Plans. If BFINA is required to perform
the further response actions pursuant to Paragraph 71, BFINA shall
submit a plan for such work to Illinois EPA for approval in
accordance with the procedures set forth in Section VI (Performance
of the Work by BFINA) and shall implement the plan approved by
Illinois EPA in accordance with the provisions of this Consent
Decree.

## VIII. QUALITY ASSURANCE, SAMPLING, and DATA ANALYSIS

73.  BFINA shall use quality assurance, quality control, and
chain of custody procedures for all treatability studies, design,
compliance and monitoring samples in accordance with "U.S. EPA
Requirements for Quality Assurance Project Plans for Environmental
Data Operation," (EPA QA/R5; "Preparing Perfect Project Plans,"
(EPA /600/9-88/087), and subsequent amendments to such guidelines
upon notification by Illinois EPA to BFINA of such amendment.
Amended guidelines shall apply only to procedures conducted after
such notification.  Prior to the commencement of any monitoring
project under this Consent Decree, BFINA shall submit to Illinois
EPA for approval, after a reasonable opportunity for review and
comment by the State, a Quality Assurance Project Plan ("QAPP") that
is consistent with the SOW, the NCP and applicable guidance
documents.  If relevant to the proceeding, the Parties agree that
validated sampling data generated in accordance with the QAPP(s)
and reviewed and approved by Illinois EPA shall be admissible as
evidence, without objection, in any proceeding under this Consent
Decree.  BFINA shall ensure that Illinois EPA personnel and its
authorized representatives are allowed access at reasonable times
to all laboratories utilized by BFINA in implementing this Consent
Decree.  In addition, BFINA shall ensure that such laboratories
shall analyze all samples submitted by Illinois EPA pursuant to the

QAPP for quality assurance monitoring. BFINA shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted U.S. EPA methods. Accepted U.S. EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree. BFINA shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an U.S. EPA or U.S.EPA-equivalent QA/QC program. BFINA shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by Illinois EPA. BFINA shall notify Illinois EPA, pursuant to the SOW, in writing of the laboratories BFINA proposes to use for the Work to be performed under this Consent Decree. Illinois EPA shall issue its approval or disapproval within ten (10) days of receipt of such written notice from BFINA.

74. Upon request, BFINA shall allow split or duplicate samples to be taken by Illinois EPA or its authorized representatives. BFINA shall notify Illinois EPA not less than fourteen (14) days in advance of any sample collection activity

unless shorter notice is agreed to by Illinois EPA. In addition, Illinois EPA shall have the right to take any additional samples that Illinois EPA deems necessary. Upon request, Illinois EPA shall allow BFINA to take split or duplicate samples of any samples it takes as part of the Plaintiff"s oversight of BFINA's implementation of the Work.

75. BFINA shall submit to Illinois EPA five (5) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of BFINA with respect to the Site and/or the implementation of this Consent Decree unless Illinois EPA agrees otherwise.

76. Notwithstanding any provision of this Consent Decree, the State hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, the Act and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

77. Commencing upon the date of lodging of this Consent Decree, BFINA agrees to provide the State and its representatives, including Illinois EPA and its contractors, access at all reasonable times to the Site and any other property to which access is required for the implementation of this Consent Decree, to the extent access to the property is controlled by BFINA, for the

- 32 -

purposes of conducting any activity related to this Consent Decree including, but not limited to:

   a.  Monitoring the Work;

   b.  Verifying any data or information submitted to Illinois EPA;

   c.  Conducting investigations relating to contamination at or near the Site;

   d.  Obtaining samples;

   e.  Assessing the need for planning or implementing additional response actions at or near the Site;

   f.  Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by BFINA or its agents, consistent with Section XXIV; and

   g.  Assessing BFINA's compliance with this Consent Decree.

   78.  a.  Pursuant to the Access and Use Restriction Agreement attached as Appendix I, the Owner Settling Defendants shall provide access for BFINA and its contractors, as well as for the State and its representatives, including, but not limited to, Illinois EPA and its contractors, as necessary to effectuate this Consent Decree, the ROD, the SOW, and all other documents required by Illinois EPA and its contractors.

b.    To the extent that the Site or any other property to
which access is required for the implementation of this Consent
Decree is owned or controlled by persons other than BFINA or the
Owner Settling Defendants, BFINA shall use its best efforts to
secure from such persons access for BFINA and its contractors, as
well as for the State and its representatives, including, but not
limited to, Illinois EPA and its contractors, as necessary to
effectuate this Consent Decree.    For purposes of this Paragraph,
"best efforts" include the payment of reasonable sums of money in
consideration of access.    If any access required to complete the
Work is not obtained within forty-five (45) days of the date of
lodging of this Consent Decree, or within forty-five (45) days of
the date Illinois EPA notifies BFINA in writing that additional
access beyond that previously secured is necessary, BFINA shall
promptly notify the State in writing, and shall include in that
notification a summary of the steps BFINA has taken to attempt to
obtain access.    The State may, as it deems appropriate, assist
BFINA in obtaining access.    BFINA shall reimburse the State, in
accordance with the procedures in Section XVI (Reimbursement of
Response Costs), for all costs incurred by the State in obtaining
access.

79.    Notwithstanding any provision of this Consent Decree, the
State retains all of its access authorities and rights, including

enforcement authorities related thereto, under CERCLA, RCRA, the Act and any other applicable statute or regulations.

## X.  REPORTING REQUIREMENTS

80.  In addition to any other requirement of this Consent Decree, BFINA shall submit to Illinois EPA, with one (1) copy to each of U.S. EPA Region 5 Superfund Section, and the recipients of notice for the Cashout Generator Settling Defendants, five (5) copies of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by BFINA or its contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f)

- 35 -

include any modifications to the work plans or other schedules that BFINA has proposed to Illinois EPA or that have been approved by Illinois EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the following six weeks. BFINA shall submit these progress reports to Illinois EPA by the tenth day of every month following the lodging of this Consent Decree until Illinois EPA notifies BFINA pursuant to Paragraph 98.b. of Section XIV (Certification of Completion). If requested by Illinois EPA, BFINA shall also provide briefings for Illinois EPA to discuss the progress of the Work.

81. BFINA shall notify Illinois EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven (7) days prior to the performance of the activity.

82. During performance of the Work, if any event occurs that BFINA is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), BFINA shall within 24 hours of the onset of such event orally notify the Illinois EPA Project Coordinator or the Alternate Illinois EPA Project Coordinator (in the event of the unavailability of the Illinois EPA Project Coordinator), or, in the

event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section of the Illinois EPA at 217-782-3637. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

83.  Within twenty (20) days of the onset of such an event, BFINA shall furnish to Illinois EPA a written report, signed by BFINA's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, BFINA shall submit a report setting forth all actions taken in response thereto.

84.  BFINA shall submit five (5) copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to Illinois EPA in accordance with the schedules set forth in such plans, and one (1) copy to each of the U.S. EPA Region 5 Superfund Section and the recipients of notice for the Cashout Generator Settling Defendants.

85.  All reports and other documents submitted by BFINA to Illinois EPA (other than the monthly progress reports referred to above) which purport to document BFINA's compliance with the terms of this Consent Decree shall be signed by an authorized

- 37 -

representative of BFINA.

## XI.   ILLINOIS EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

86.   After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, Illinois EPA, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that BFINA modify the submission; or (e) any combination of the above.   However, Illinois EPA shall not modify a submission without first providing BFINA at least one notice of deficiency and an opportunity to cure within fifteen (15) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

87.   In the event of approval, approval upon conditions, or modification by Illinois EPA, pursuant to Paragraph 86 (a), (b), or (c), BFINA shall proceed to take any action required by the plan, report, or other item, as approved or modified by Illinois EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by Illinois EPA. In

the event that Illinois EPA modifies the submission to cure the deficiencies pursuant to Paragraph 86 (c) and the submission has a material defect, Illinois EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

88.a.    Upon receipt of a notice of disapproval pursuant to Paragraph 86(d), BFINA shall, within twenty-one (21) days or such longer time as specified by Illinois EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the twenty-one (21) day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 89 and 90.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 86 (d), BFINA shall proceed, at the direction of Illinois EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve BFINA of any liability for stipulated penalties under Section XX (Stipulated Penalties).

89.  In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by Illinois EPA, Illinois

EPA may again require that BFINA correct the deficiencies, in accordance with the preceding Paragraphs. Illinois EPA also retains the right to modify or develop the plan, report or other item. BFINA shall implement any such plan, report, or item as modified or developed by Illinois EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

90. If upon resubmission, a plan, report, or item is disapproved or modified by Illinois EPA due to a material defect, BFINA shall be deemed to have failed to submit such plan, report, or item timely and adequately unless BFINA invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and Illinois EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If Illinois EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX (Stipulated Penalties).

91. All plans, reports, and other items required to be submitted to Illinois EPA under this Consent Decree shall, upon approval or modification by Illinois EPA, be enforceable under this

Consent Decree. In the event Illinois EPA approves or modifies a portion of a plan, report, or other item required to be submitted to Illinois EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

92. Within twenty (20) days of lodging this Consent Decree, BFINA and Illinois EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. BFINA's Project Coordinator shall be subject to disapproval by Illinois EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. BFINA's Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

93. Plaintiff may designate other representatives, including, but not limited to, Illinois EPA employees, and federal and State

contractors and consultants, to observe and monitor the progress of
any activity undertaken pursuant to this Consent Decree. Illinois
EPA's Project Coordinator and Alternate Project Coordinator shall
have the authority lawfully vested in a Remedial Project Manager
(RPM) and an On-Scene Coordinator (OSC) by the National Contingency
Plan, 40 C.F.R. Part 300. In addition, Illinois EPA's Project
Coordinator or Alternate Project Coordinator shall have authority,
consistent with the National Contingency Plan, to halt any Work
required by this Consent Decree and to take any necessary response
action when s/he determines that conditions at the Site constitute
an emergency situation or may present an immediate threat to public
health or welfare or the environment due to release or threatened
release of Waste Material.

## XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

94. Within thirty (30) days of entry of this Consent Decree,
BFINA shall establish and maintain financial security:

a. Until issuance by Illinois EPA of the Certification
of Completion of the Remedial Action pursuant to Paragraph 98,
financial security in the amount of $17,475,000.00, or such other
amounts as Illinois EPA may approve from time to time pursuant to
Paragraph 96, in one or more of the following forms such that the
total financial assurance amount meets or exceeds the estimated
costs of completing the Work:

- 42 -

(i) A guarantee to perform the Work by Allied Waste Industries, Inc.;

(ii) A demonstration that BFINA satisfies the requirements of 35 Ill. Adm. Code 724.243(f);

(iii) A surety bond guaranteeing performance of the Work issued by a financial institution licensed by the appropriate state and federal agencies to issue such bonds;

(iv) One or more irrevocable letters of credit equaling the total estimated cost of the Work issued by a financial institution licensed by the appropriate state and federal agencies to issue such letters of credit;

(v) A trust fund of cash deposits dedicated to performance of the Site Work; or

(vi) Insurance coverage for performance of the Site Work acceptable to the State, naming the State and all Cashout Generator Settling Defendants as additional insureds.

The initial financial security amount ($17,475,000.00) is based on the RD/RA future cost estimate from the ROD. If the results of the Remedial Design demonstrate that the RD/RA future cost estimate exceeds this amount, then BFINA's financial security obligation shall increase accordingly.

b. Following issuance by Illinois EPA of the Certification of Completion of the Remedial Action pursuant to

Paragraph 98, financial security for the remaining O&M activities only, for an amount not to exceed $3,100,000.00, as may be reduced by Illinois EPA from time to time pursuant to Paragraph 96, in one of the above forms, or in one or more of the following forms:

(i) A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with BFINA.

(ii) A demonstration that BFINA satisfies the requirements of 35 Ill. Adm. Code 724.243(f).

95. In the event that Illinois EPA, determines at any time that the financial assurances provided pursuant to this Section are inadequate, BFINA shall, within thirty (30) days of receipt of notice of Illinois EPA's determination, obtain and present to Illinois EPA for approval one of the other forms of financial assurance listed in Paragraph 94 of this Consent Decree. BFINA's inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

96. If BFINA can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 94 above after entry of this Consent Decree, BFINA may reduce the amount of the financial security provided under this

- 44 -

Section to the estimated cost of the remaining work to be performed. BFINA shall submit a proposal for such reduction to Illinois EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by Illinois EPA. In the event of a dispute, BFINA may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

97. BFINA may change the form of financial assurance provided under this Section at any time, upon notice to and approval by Illinois EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, BFINA may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV. CERTIFICATION OF COMPLETION

98. Completion of the Remedial Action.

a. Within ninety (90) days after BFINA concludes that the Remedial Action has been fully performed and the Performance Standards have been attained, BFINA shall schedule and conduct a pre-certification inspection to be attended by BFINA and Illinois EPA. If, after the pre-certification inspection, BFINA still believes that the Remedial Action has been fully performed and the Performance Standards have been attained, BFINA shall submit a

written report requesting certification to Illinois EPA for
approval, pursuant to Section XI (Illinois EPA Approval of Plans
and Other Submissions) within thirty (30) days of the inspection.
In the report, a registered professional engineer and the BFINA
Project Coordinator shall state that the Remedial Action has been
completed in full satisfaction of the requirements of this Consent
Decree. The written report shall include as-built drawings signed
and stamped by a professional engineer. The report shall contain
the following statement, signed by a responsible corporate official
of BFINA or BFINA's Project Coordinator:

> "To the best of my knowledge, after thorough investigation, I
> certify that the information contained in or accompanying this
> submission is true, accurate and complete. I am aware that
> there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing
> violations."

If, after completion of the pre-certification inspection and
receipt and review of the written report, Illinois EPA determines
that the Remedial Action or any portion thereof has not been
completed in accordance with this Consent Decree or that the
Performance Standards have not been achieved, Illinois EPA will
notify BFINA in writing of the activities that must be undertaken
by BFINA pursuant to this Consent Decree to complete the Remedial
Action and achieve the Performance Standards. Provided, however,
that Illinois EPA may only require BFINA to perform such activities

pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 65.b. BFINA shall prepare a schedule for the review and approval of Illinois EPA for performance of such activities consistent with the Consent Decree and the SOW. BFINA shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If Illinois EPA concludes, based on the initial or any subsequent report requesting Certification of Completion, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, Illinois EPA will so certify in writing to BFINA within ninety (90) days of Illinois EPA's receipt of the initial or any subsequent report requesting Certification of Completion. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiffs). Certification of Completion of the Remedial Action shall not affect BFINA's obligations under this Consent Decree.

99. <u>Completion of the Work</u>

- 47 -

a.   Within ninety (90) days after BFINA concludes that all phases of the Work (including O & M), have been fully performed, BFINA shall schedule and conduct a pre-certification inspection to be attended by BFINA and Illinois EPA.  If, after the pre-certification inspection, BFINA still believes that the Work has been fully performed, BFINA shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The report shall contain the following statement, signed by a responsible corporate official of BFINA or BFINA's Project Coordinator:

"To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying   this submission is true, accurate and complete.  I am aware     that there are significant penalties for submitting false   information, including the possibility of fine and   imprisonment for knowing violations."

If, after review of the written report, Illinois EPA determines that any portion of the Work has not been completed in accordance with this Consent Decree, Illinois EPA will notify BFINA in writing of the activities that must be undertaken by BFINA pursuant to this Consent Decree to complete the Work.  Provided, however, that Illinois EPA may only require BFINA to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as

that term is defined in Paragraph 65.b. BFINA shall prepare a schedule for the review and approval of Illinois EPA for performance of such activities consistent with the Consent Decree and the SOW. BFINA shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.   If Illinois EPA concludes, based on the initial or any subsequent request for Certification of Completion by BFINA and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, Illinois EPA will so notify BFINA in writing.

## XV.   EMERGENCY RESPONSE

100. In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, BFINA shall, subject to Paragraph 101, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the Illinois EPA's Project Coordinator, or, if the Project Coordinator is unavailable, Illinois EPA's Alternate Project

Coordinator. If neither of these persons is available, BFINA shall notify the Illinois EPA's Emergency Response Section at 217-782-3637. If BFINA is unable to reach the Illinois EPA's Emergency Response Section, then BFINA shall notify the Illinois Emergency Management Agency at 1-800-782-7860. BFINA shall take such actions in consultation with Illinois EPA's Project Coordinator or other available authorized Illinois EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that BFINA fails to take appropriate response action as required by this Section, and Illinois EPA takes such action instead, BFINA shall reimburse Illinois EPA for all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Reimbursement of Response Costs).

101. Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the State, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of

Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

## XVI.   REIMBURSEMENT OF RESPONSE COSTS AND

## SETTLEMENT PAYMENTS BY OTHER SETTLING DEFENDANTS

102. a.   BFINA shall pay any and all Past Response Costs, not inconsistent with the NCP, incurred by the State which are documented in billings provided to BFINA by the State, within thirty (30) days of receipt of the invoice for such Past Response Costs.   Payment shall be made in the form of a certified or cashiers check or checks made payable to the "Illinois Environmental Protection Agency" designated for deposit in the "Hazardous Waste Fund".   BFINA shall include the name and number of this case on all checks.   The check(s) shall be delivered to:

Illinois EPA
Fiscal Services Section
P.O. Box 19276
1021 North Grand Avenue East
Springfield, IL 62794-9276

BFINA shall simultaneously submit a copy of the transmittal letter and the check(s) to the Attorney General at:

Gerald T. Karr
Assistant Attorney General
Environmental Bureau
188 West Randolph Street, 20th Floor.
Chicago, IL 60601

- 51 -

b.   Additionally, BFINA shall pay any and all Past Response Costs of the Illinois Attorney General within thirty (30) days of receipt of the invoice for such Past Response Costs. Payment required by this Paragraph shall be by check made payable to the "Illinois Attorney General State Projects and Court Ordered Distribution Fund (801 Fund)." The check(s) shall be delivered to:

Illinois Attorney General's Office
Chief, Environmental Bureau North
188 West Randolph Street, 20th Floor.
Chicago, IL 60601

BFINA shall provide the case name and number on the check(s).

103. BFINA shall reimburse the Illinois EPA for all Future Response Costs incurred which are not inconsistent with the National Contingency Plan.  The Illinois EPA shall send BFINA, on a quarterly basis, a bill requiring payment that includes a cost summary and associated backup documentation.  The Illinois Attorney General's Office shall submit to BFINA invoices with supporting documentation for Future Oversight Costs.  Within thirty (30) days of receipt of the invoice BFINA shall pay the amount due and owing.  Payment required by this paragraph shall be by check made payable to the "Illinois Attorney General State Projects and Court Ordered Distribution Fund (801 Fund)." The check(s) shall be delivered to:

Illinois Attorney General's Office
Chief, Environmental Bureau North
188 West Randolph Street, 20th Floor.
Chicago, IL 60601

BFINA shall provide the case name and number on the check(s).
Failure by Illinois EPA to submit an accounting of costs on a
quarterly basis shall not preclude Illinois EPA or Illinois
Attorney General's Office from obtaining reimbursement of Future
Response Costs from BFINA.  BFINA shall make all payments within
thirty (30) days of BFINA receipt of each bill requiring payment
in accordance with the terms contained in this Paragraph 103 of
this Consent Decree.  BFINA shall make all payments required by
this Paragraph, subject to the Dispute Resolution procedure set
forth in Section XIX (Dispute Resolution) of this Consent Decree.

     104. BFINA may contest payment of any Future Response Costs
under Paragraph 103 if it determines that the Illinois EPA or
Illinois Attorney General's Office has made an accounting error or
if they allege that a cost item that is included represents costs
that are inconsistent with the NCP.  Such objection shall be made
in writing within thirty (30) days of receipt of the bill.  BFINA
shall send such objections pursuant to Section XXVI (Notices and
Submissions).  Any such objection shall specifically identify the
contested Future Response Costs and the basis for objection.  In
the event of an objection, BFINA shall within the thirty (30) day
period pay all uncontested Future Response Costs to the Illinois

EPA or Illinois Attorney General's Office in the manner described in Paragraph 103. Simultaneously, BFINA shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Illinois and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. BFINA shall send to the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, BFINA shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the State prevails in the dispute, within five (5) days of the resolution of the dispute, BFINA shall pay the sums due (with accrued interest) to the State, in the manner described in Paragraph 103. If BFINA prevails concerning any aspect of the contested costs, BFINA shall pay that portion of the costs (plus associated accrued interest) for which BFINA did not prevail to the State, in the manner described in this Paragraph 104 ; BFINA shall be disbursed any balance of the escrow account. The dispute resolution procedures

- 54 -

set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding BFINA obligation to reimburse the State for its Future Response Costs.

105. In the event that the payment of Past Response Costs billed by the State are not made within thirty (30) days of the effective date of this Consent Decree as required by Paragraph 102 or the payments of Future Response Cost incurred by the Illinois EPA or Illinois Attorney General's Office are not made within thirty (30) days of BFINA receipt of the bill as required by Paragraph 103, BFINA shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue thirty (30) days after the effective date of this Consent Decree. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of BFINA's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of BFINA's failure to make timely payments under this Section. BFINA shall make all payments required by this Paragraph in the manner described in Paragraphs 102 and 103.

106. Settlement Payments by Other Settling Defendants.

a. Cashout Generator Settling Defendants. Within

thirty (30) days of the entry of this Consent Decree, each Cashout Generator Settling Defendants listed on the second row or below in Appendix D shall pay BFINA its respective amount identified in Appendix D. Within thirty (30) days of the entry of this Consent Decree, those Cashout Generator Settling Defendants collectively listed in the first row of Appendix D shall collectively pay a total of $6,978,139.00 into the Trust Funds in the respective amounts indicated in Appendix G, the MIG/DeWane Landfill Superfund Site Trust Agreement.

b. Owner Settling Defendants. As soon as practicable after entry of this Consent Decree, the Owner Settling Defendants shall cause BFINA to be paid the balance of the Escrow Fund, as that term is defined in the January 1999 Escrow Agreement by and among the Owner Settling Defendants and the MIG/DeWane Landfill Task Force, minus one hundred forty thousand dollars ($140,000.00), which will be conveyed to certain of the Owner Settling Defendants.

c. Municipal Settling Defendants. Within thirty (30) days of the entry of this Consent Decree, each Municipal Settling Defendant shall pay BFINA its respective amount identified in Appendix F.

d. Covenant Beneficiary Settling Defendants. As the effective date of this Consent Decree, BFINA may seek to add additional Settling Defendants who settle with BFINA to this

Consent Decree by sending a written request to the State, with a
Covenant Beneficiary Form (Appendix H) fully executed by the
proposed additional Settling Defendant, and the reasons that the
proposed additional Settling Defendant should be added to the
Consent Decree. Upon written approval by the State of the addition
of each Covenant Beneficiary Settling Defendant, the respective
fully-executed Covenant Beneficiary Form shall become part of this
Consent Decree.

107. The payments made by each Settling Defendant under
Paragraph 106, and the other consideration provided by the Owner
Settling Defendants in Paragraphs 60 and 78, are intended to
represent each respective Settling Defendant's equitable share of
all costs incurred or to be incurred by any party related to
environmental conditions at the Site, including cost overruns
incurred during implementation of the remedy and costs for
supplemental remedies or additional work to be performed in the
event that the State determines the implemented remedy is not
protective of human health or the environment. Such payments are
neither penalties nor monetary sanctions.

108. By signing this Consent Decree, each Cashout Generator
Settling Defendant and Municipal Settling Defendant certifies, to
the best of its knowledge and belief, that it has made reasonable
inquiry to gather all information which relates in any way to its

ownership, operation, generation, treatment, transportation, storage or disposal of hazardous substances at or in connection with the Site, and that the amount of hazardous substances that it may have arranged to be disposed of at the Site or accepted for transport to the Site (if the Site was selected by the Settling Defendant) is, to the best of the Settling Defendant's knowledge, minimal in relation to the total volume of the hazardous substances delivered to the Site and is not significantly more toxic than other hazardous substances sent to the Site.

109. The covenant not to sue contained in this Consent Decree is null and void, with respect to a Cashout Generator Settling Defendant or a Municipal Settling Defendant, if information not currently known to Illinois EPA is discovered, and Illinois EPA determines that the new information indicates that the Cashout Generator Settling Defendant or Municipal Settling Defendant contributed hazardous substances to the Site in such greater amount or of such greater toxic or other hazardous effect that the Cashout Generator Settling Defendant or Municipal Settling Defendant no longer qualifies as a Cashout Generator Settling Defendant or Municipal Settling Defendant.

## XVII.  INDEMNIFICATION AND INSURANCE

110. a.   The State does not assume any liability by entering into this agreement or by virtue of any designation of BFINA as

Illinois EPA's authorized representatives under Section 104(e) of CERCLA. BFINA shall indemnify, save and hold harmless the State and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of BFINA, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of BFINA as Illinois EPA's authorized representatives under Section 104(e) of CERCLA. Further, BFINA agrees to pay the State all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the State based on negligent or other wrongful acts or omissions of BFINA, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree. The State shall not be held out as a party to any contract entered into by or on behalf of BFINA in carrying out activities pursuant to this Consent Decree. Neither the BFINA nor any such contractor shall be considered an agent of the State.

   b. The State shall give BFINA notice of any claim for

which the State plans to seek indemnification pursuant to Paragraph 110.a., and shall consult with BFINA prior to settling such claim.

111. BFINA waives all claims against the State for damages or reimbursement or for set-off of any payments made or to be made to the State, arising from or on account of any contract, agreement, or arrangement between BFINA and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, BFINA shall indemnify and hold harmless the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between BFINA and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

112. No later than fifteen (15) days before commencing any on-site Work, BFINA shall secure, and shall maintain until the first anniversary of Illinois EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 98.b. of Section XIV (Certification of Completion) commercial comprehensive general liability insurance with limits of $2 million dollars, naming the State as an additional insured. In addition, for the duration of this Consent Decree, BFINA shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and

regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of BFINA in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, BFINA shall provide to Illinois EPA certificates of such insurance and a copy of each insurance policy. BFINA shall resubmit such certificates and copies of policies each year on the anniversary of the effective date of this Consent Decree. If BFINA demonstrates by evidence satisfactory to Illinois EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, BFINA only needs to provide that portion of the insurance described above which is not maintained by the contractor or subcontractor.

### XVIII.  FORCE MAJEURE

113. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of BFINA, of any entity controlled by BFINA, or of BFINA's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite BFINA's best efforts to fulfill the obligation. The requirement that BFINA exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the

effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

114. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, BFINA shall notify orally Illinois EPA's Project Coordinator or, in his or her absence, Illinois EPA's Alternate Project Coordinator within two (2) working days of when BFINA first knew or should have known that the event might cause a delay. Within ten (10) days thereafter, BFINA shall provide in writing to Illinois EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; BFINA's rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of BFINA, such event may cause or contribute to an endangerment to public health, welfare or the environment. BFINA shall include with any notice all available documentation supporting its claim that the delay was attributable to a force

majeure event. Failure to comply with the above requirements shall preclude BFINA from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. BFINA shall be deemed to know of any circumstance of which it, any entity it controls, or its contractors knew or should have known.

115. Within fifteen (15) days of receipt of BFINA's notice, Illinois EPA shall agree or disagree in writing with this request. If Illinois EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by Illinois EPA for such time as is necessary to complete those obligations. Illinois EPA will notify BFINA in writing, of the length of the extension, if any, for performance of the obligations affected by the force majeure event. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If Illinois EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, Illinois EPA will notify BFINA in writing of its decision.

116. If BFINA elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall

do so no later than fifteen (15) days after receipt of Illinois EPA's notice. In any such proceeding, BFINA shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that BFINA complied with the requirements of Paragraphs 114 and 115, above. If BFINA carries this burden, the delay at issue shall be deemed not to be a violation by BFINA of the affected obligation of this Consent Decree identified to Illinois EPA and the Court.

### XIX. DISPUTE RESOLUTION

117. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the State to enforce obligations of BFINA that have not been disputed in accordance with this Section, or to disputes between Settling Defendants that do not involve the State. The Cashout Generator Settling Defendants' rights to invoke the dispute resolution procedures of this Section are limited to disputes arising under Paragraph 106 (Settlement Payments by Other Settling Defendants), Paragraph 138 (Covenants

Not to Sue Other Settling Defendants), Paragraphs 141-144 (Covenants by Settling Defendants), and Paragraphs 145 and 146 (Effect of Settlement and Contribution Protection).

118. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

119. a. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by Illinois EPA shall be considered binding unless, within fourteen (14) days after the conclusion of the informal negotiation period, the other Party to the dispute invokes the formal dispute resolution procedures of this Section by serving on the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by such Party.

b. Within fourteen (14) days after receipt of the other Party's Statement of Position, Illinois EPA will serve on such Party

its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by Illinois EPA. Within seven (7) days after receipt of Illinois EPA's Statement of Position, the other Party may submit a Reply.

120. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by Illinois EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by any Settling Defendant regarding the validity of the ROD's provisions.

a. An administrative record of the dispute shall be maintained by Illinois EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, Illinois EPA may allow submission of supplemental statements of position by the Parties to the dispute.

b. The Illinois EPA will issue a final administrative

- 66 -

decision resolving the dispute based on the administrative record described in Paragraph 120.a. within forty-five (45) days after the twenty-day negotiation period ends and explain the basis for the decision. This decision shall be binding upon the Parties to the dispute, subject only to the right to seek judicial review pursuant to Paragraph 120.c. and d.

c. Any administrative decision made by Illinois EPA pursuant to Paragraph 120.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the other Party to the dispute with the Court and served on all Parties within ten (10) days of receipt of Illinois EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The State may file a response to the other Party's motion.

d. In proceedings on any dispute governed by this Paragraph, the other Party shall have the burden of demonstrating that the decision of the Illinois EPA is arbitrary and capricious or otherwise not in accordance with law. Judicial review of Illinois EPA's decision shall be on the administrative record compiled pursuant to Paragraph 120.a.

121. The invocation of formal dispute resolution procedures

under this Section shall not extend, postpone or affect in any way any obligation of BFINA under this Consent Decree, not directly in dispute, unless the State or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 130. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that BFINA does not prevail on a disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. STIPULATED PENALTIES

122. BFINA shall be liable for stipulated penalties in the amounts set forth in Paragraphs 123 and 124 to the State for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by BFINA shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by Illinois EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

123. The following stipulated penalties shall accrue per violation per day for any noncompliance with Paragraphs 60, 61, 82, 94, 102 and 1023.

| Penalty Per Violation | Per Day | Period of Noncompliance |
|---|---|---|
| Days 1 through 14 | | $250.00 per violation |
| Days 15 through 30 | | $500.00 per violation |
| Days 31 through 45 | | $750.00 per violation |
| Days 46 and beyond | | $1000.00 per violation |

124. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Paragraphs 62, 63 80, 81, 83, 88, 92 and 160.

| Penalty Per Violation | Per Day | Period of Noncompliance |
|---|---|---|
| Days 1 through 14 | | $250.00 per violation |
| Days 15 through 29 | | $500.00 per violation |
| Days 30 and beyond | | $1000.00 per violation |

125. In the event that Illinois EPA assumes performance of a portion or all of the Work pursuant to Paragraph 1389 of Section XXI (Covenants Not to Sue by Plaintiff), BFINA shall be liable for a stipulated penalty in the amount of $150,000.00

126. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and

- 69 -

shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (Illinois EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after Illinois EPA's receipt of such submission until the date that Illinois EPA notifies BFINA of any deficiency; (2) with respect to a decision by the Illinois EPA under Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that BFINA replies to Illinois EPA's Statement of Position is received until the date that the Illinois EPA issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

127. Following Illinois EPA's determination that BFINA has failed to comply with a requirement of this Consent Decree, Illinois EPA may give BFINA written notification of the same and describe the noncompliance. Illinois EPA may send BFINA a written

demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether Illinois EPA has notified BFINA of a violation.

128. All penalties accruing under this Section shall be due and payable to the State within thirty (30) days of BFINA's receipt from Illinois EPA of a demand for payment of the penalties, unless BFINA invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the State under this Section shall be paid by certified check(s) made payable to "Illinois Environmental Protection Agency" for deposit in the "Environmental Protection Trust Fund". BFINA should mail all payments to:

Manager, Fiscal Services
Illinois Environmental Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

BFINA shall provide the case name and number on the face of the check. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the State as provided in Section XXVI (Notices and Submissions).

129. The payment of penalties shall not alter in any way BFINA's obligation to complete the performance of the Work required under this Consent Decree.

130. Penalties shall continue to accrue as provided in Paragraph 126 during any dispute resolution period, but need not be

paid until the following:

      a.   If the dispute is resolved by agreement or by a decision of Illinois EPA that is not appealed to this Court, accrued penalties determined shall be paid to Illinois EPA within fifteen (15) days of the agreement or the receipt of Illinois EPA's decision or order;

      b.   If the dispute is appealed to this Court and the State prevails in whole or in part, BFINA shall pay all accrued penalties determined by the Court to be owed to Illinois EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

      c.   If the District Court's decision is appealed by any Party, BFINA shall pay all accrued penalties determined by the District Court to be owing to the State into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days.  Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to Illinois EPA or to BFINA to the extent that BFINA prevails, as required by the District Court's Order.

    131. a.   If BFINA fails to pay stipulated penalties when due, the State may institute proceedings to collect the penalties, as

well as interest. BFINA shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 128, at the rate established in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

b.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the State to seek from BFINA any other remedies or sanctions available by virtue of BFINA's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA.  Provided, however, that the State shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

132. Notwithstanding any other provision of this Section, the State may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.   COVENANTS NOT TO SUE BY PLAINTIFF

133. Covenants Not to Sue BFINA.   In consideration of the actions that will be performed and the payments that will be made by BFINA under the terms of the Consent Decree, and except as specifically provided in Paragraphs 134, 135, and 137 of this

Section, the State covenants not to sue or to take administrative action against BFINA pursuant to Sections 106 or 107(a) of CERCLA, Section 7003 of RCRA and the Act for performance of the Work and the recovery of Past Response Costs and Future Response Costs, relating to the Site. Except with respect to future liability for BFINA, these covenants not to sue shall take effect upon the receipt by Illinois EPA of the payment required by Paragraph 102 of Section XVI (Reimbursement of Response Costs and Settlement Payments by Other Settling Defendants). With respect to future liability for BFINA, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by Illinois EPA pursuant to Paragraph 98.b of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by BFINA of its obligations under this Consent Decree. These covenants not to sue extend only to BFINA and do not extend to any other person.

134. State's Pre-certification reservations. With respect to BFINA, notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the State's right to institute proceedings in this action or in a new action, or to take administrative action seeking to compel BFINA (1) to perform further response actions relating to the Site or (2) to reimburse the State for additional costs of response if,

prior to Certification of Completion of the Remedial Action:

> (i)   conditions at the Site, previously unknown to
>
>      Illinois EPA, are discovered, or
>
> (ii) information, previously unknown to Illinois EPA,
>
>      is received, in whole or in part,

and these previously unknown conditions or information together
with any other relevant information indicates that the Remedial
Action is not protective of human health or the environment.

     135.  <u>State's Post-certification reservations.</u>  With respect to
BFINA, notwithstanding any other provision of this Consent Decree,
the State reserves, and this Consent Decree is without prejudice
to, the right to institute proceedings in this action or in a new
action, or to take administrative action seeking to compel BFINA
(1) to perform further response actions relating to the Site or (2)
to reimburse the State for additional costs of response if,
subsequent to Certification of Completion of the Remedial Action:

> (i)   conditions at the Site, previously unknown to
>
>      Illinois EPA, are discovered, or
>
> (ii) information, previously unknown to Illinois EPA,
>
>      is received, in whole or in part, and these
>
>      previously unknown conditions or this information
>
>      together with other relevant information indicate
>
>      that the Remedial Action is not protective of

human health or the environment.

136. For purposes of Paragraph 134, the information and the conditions known to Illinois EPA shall include only that information and those conditions known to Illinois EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision. For purposes of Paragraph 135, the information and the conditions known to Illinois EPA shall include only that information and those conditions known to Illinois EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by Illinois EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

137. General reservations of rights.

BFINA. The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraph 133. The State reserves, and this Consent Decree is without prejudice to, all rights against BFINA with respect to all other matters, including but not limited to, the following:

a. claims based on a failure by BFINA to meet a requirement of this Consent Decree;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site;

c.    liability for future disposal of Waste Material at the Site, other than as provided in the ROD, the Work, or otherwise ordered by Illinois EPA;

d.    liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e.    criminal liability;

f.    liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

g.    liability, prior to Certification of Completion of the Remedial Action, for additional response actions that Illinois EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 65 (Modification of the SOW or Related Work Plans).

Except as provided in Paragraph 146, BFINA reserves all rights, defenses, and objections to the matters contained in Subparagraphs a. through g. above.

138. Covenants Not to Sue Other Settling Defendants.

a.    Except for those claims reserved in Subparagraph (b)

below, the State releases and covenants not to sue or to take any other civil or administrative action against Cashout Generator Settling Defendants, Municipal Settling Defendants, Owner Settling Defendants, and Covenant Beneficiary Settling Defendants, pursuant to Sections 106 or 107 of CERCLA or Section 7003 of RCRA or the Act relating to the Site. These covenants not to sue shall take effect with respect to any individual Cashout Generator Settling Defendant and Municipal Settling Defendant upon the payment to the Trust Funds pursuant to Paragraph 106 and Appendices D and F, by that Settling Defendant, or the effective date of this Consent Decree, whichever is later. These covenants not to sue shall take effect with respect to the Owner Settling Defendants upon their full compliance with the requirements of Paragraphs 60 and 78 and payment to BFINA under Paragraph 106 whichever is later. These covenants not to sue shall take effect with respect to any individual Covenant Beneficiary Settling Defendant upon written approval from the State of its addition to this Consent Decree, pursuant to Paragraph 106.d. These covenants not to sue extend only to Cashout Generator Settling Defendants, Municipal Settling Defendants, Owner Settling Defendants and Covenant Beneficiary Settling Defendants and do not extend to any other person.

      b.    Reservation of Rights. Notwithstanding any other provision of this Consent Decree, the State reserves, and this

Consent Decree is without prejudice to, all rights against each Cashout Generator Settling Defendant, Municipal Settling Defendant, Owner Settling Defendant, and Covenant Beneficiary Settling Defendant with respect to all other matters, including but not limited to, the following:

(i)     failure by a Settling Defendant to make timely payments to BFINA as required in Paragraph 105 of this Consent Decree;

(ii)     liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials by a Settling Defendant at any location that is outside of the Site;

(iii)     liability for future disposal of Waste Material at the Site by a Settling Defendant;

(iv)     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

(v)     criminal liability; and

(vi)     liability for violations of federal or state law which occur during or after implementation of the Remedial Action.

c.     Except as provided in Paragraph 146, Cashout Generator Settling Defendants, Owner Settling Defendants, Municipal

- 79 -

Settling Defendants, and Covenant Beneficiary Settling Defendants reserve all rights, defenses, and objections to the matters contained in Subparagraphs (i) through (vi) above.

139. Work Takeover.  In the event Illinois EPA determines that BFINA has ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in their performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human health or the environment, Illinois EPA may assume the performance of all or any portions of the Work as Illinois EPA determines necessary.  BFINA may invoke the procedures set forth in Section XIX (Dispute Resolution), to dispute Illinois EPA's determination that takeover of the Work is warranted under this Paragraph.  Costs incurred by the Illinois EPA in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that BFINA shall pay pursuant to Section XVI (Reimbursement of Response Costs).

140. Notwithstanding any other provision of this Consent Decree, the State retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII.   COVENANTS BY SETTLING DEFENDANTS

141. Covenant Not to Sue the State.  Subject to the reservations in Paragraph 137, 138.b, and 142, Settling Defendants

hereby covenant not to sue and agree not to assert any claims or causes of action against the State with respect to the Site and Past and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

    a.   any direct or indirect claim for reimbursement from any State Fund or any other provision of law;

    b.   any claims against the State, including any department, agency or instrumentality of the State under CERCLA Sections 107 or 113 related to the Site, but not including those generator PRPs listed in Appendix J; or

    c.   any claims arising out of response activities at the Site, including claims based on Illinois EPA's selection of response actions, oversight of response activities or approval of plans for such activities.

142. The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the State, based on negligent action taken directly by the State (not including oversight or approval of BFINA plans or activities). Such reservation applies only to claims pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

143. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of

Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

144. <u>Covenants Between Settling Defendants</u>.

a. BFINA, Owner Settling Defendants, Municipal Settling Defendants, Cashout Generator Settling Defendants and Covenant Beneficiary Settling Defendants hereby release and covenant not to sue and agree not to assert any claims or causes of action against each other with respect to the Site or this Consent Decree, including, but not limited to, any direct or indirect claim for reimbursement or indemnification through CERCLA Sections 107 and 113 or any other provision of law, or any claims arising out of response activities at the Site. The Settling Defendants reserve, and this Consent Decree is without prejudice to, any claims, actions or defenses against parties who have failed to comply with their obligations under this Consent Decree or with their obligations in the several settlement agreements entered into between the Settling Defendants to resolve the matters addressed in this Consent Decree.

b. Notwithstanding any provision to the contrary contained herein, any Cashout Generator Settling Defendant that becomes the recipient of administrative orders, demands, other claims or legal actions by U.S. EPA or other agency of the United States related to the Site reserves, and this Consent Decree is without prejudice to, any and all rights to assert a claim and/or

- 82 -

maintain an action, including, but not limited to, an action for contribution pursuant to CERCLA §113, 42 U.S.C. 9613, that such Cashout Generator Settling Defendant may have against any other Cashout Generator Settling Defendant that also becomes the recipient of such or a similar order, demand, claim or action. Further, any Cashout Generator Settling Defendant against which a claim has been asserted or an action has been maintained by another Cashout Generator Settling Defendant pursuant to the provisions of the preceding sentence shall have the right to assert any and all defenses to such claim or action other than the defense that this Consent Decree bars or precludes a contribution claim by reason of 42 U.S.C. 9613(f)(2).

c. Notwithstanding any provision to the contrary contained herein and as between DaimlerChrysler Corporation ("DCC") and BFINA only, this Consent Decree is without prejudice to any and all claims and causes of action which are the subject matter of *DaimlerChrysler Corporation v. BFI Waste Systems of North America, Inc.*, Case No. 2002-L-17, Circuit Court of the Seventeenth Judicial Circuit, Boone County, Illinois arising under contract including, but not limited to breach of contract, breach of warranty, and contractual indemnification concerning or relating to the Site.

### XXIII. **EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION**

145. Nothing in this Consent Decree shall be construed to

create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

146. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the effective date of this Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) and the Act for matters addressed in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken by the State, all respondents to AOC1 and AOC2, BFINA, all other Settling Defendants, and by all other entities who are not Parties to this Consent Decree; and all response costs at the Site incurred and to be incurred by the State, all respondents to AOC1 and AOC2, BFINA, all other Settling Defendants, and by all other entities who are not parties to this Consent Decree; and all fees, costs and expenses of attorneys, agents, consultants, assigns, or other

- 84 -

representatives of the State, all respondents to AOC1 and AOC2, BFINA, all other Settling Defendants, and by all other entities who are not parties to this Consent Decree, whether or not they are deemed to be response costs. However, "matters addressed" expressly does not include any and all claims and/or actions of Cashout Generator Settling Defendants and defenses thereto, as are provided by, and as are limited in, Paragraph 144.b and claims and/or actions between DCC and BFINA as provided in Paragraph 144.c.

147. The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the State in writing no later than sixty (60) days prior to the initiation of such suit or claim.

148. The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the State within ten (10) days of service of the complaint on them. In addition, Settling Defendants shall notify the State within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

149. In any subsequent administrative or judicial proceeding initiated by the State for injunctive relief, recovery of response

costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

### XXIV. ACCESS TO INFORMATION

150. BFINA shall provide to Illinois EPA, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. BFINA shall also make available to Illinois EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

151. a. Settling Defendants may assert business confidentiality claims covering part or all of the documents or

information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with 2 Ill. Adm. Code 1828. Public records determined to be confidential under 2 Ill. Adm. Code 1828, will be afforded the protection specified therein. If the requirements in 2 Ill. Adm. Code 1828.401, have not been met when the public records are submitted to the Illinois EPA, or Illinois EPA has notified the Settling Defendants that the public records are not confidential under 2 Ill. Adm. Code 1828.402 and 1828.403, the public may be given access to such public records, subject to appeal rights found in 2 Ill. Adm. Code 1828.405.

b.   The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by state or federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Illinois EPA with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent

Decree shall be withheld on the grounds that they are privileged.

152. No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

**XXV.   RETENTION OF RECORDS**

153. Until ten (10) years after the Settling Defendants' receipt of Illinois EPA's notification pursuant to Paragraph 98.b. of Section XIV (Certification of Completion), BFINA shall preserve and retain all records and documents now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work or liability of any person for response actions conducted and to be conducted at the Site, regardless of any corporate retention policy to the contrary. Until ten (10) years after BFINA's receipt of Illinois EPA's notification pursuant to Paragraph 98.b. of Section XIV (Certification of Completion), BFINA shall also instruct its contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the Work.

154. At the conclusion of this document retention period, BFINA shall notify the Illinois EPA at least ninety (90) days prior

to the destruction of any such records or documents, and, upon request by the Illinois EPA, BFINA shall deliver any such records or documents to Illinois EPA. BFINA may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If BFINA asserts such a privilege, it shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by BFINA. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

155. Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information relating to its potential liability regarding the Site since notification of potential liability by the United States or the State of Illinois or the filing of suit against it regarding the Site and that it has fully complied with any and all U.S. EPA

requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, or requests from the Illinois EPA.

## XXVI.  NOTICES AND SUBMISSIONS

156. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree.  Notice needs to be given to Cashout Generator Settling Defendants and Owner Settling Defendants, only of the following:

(a)  Certification of Completion of the Site Work pursuant to Section XIV (Certification of Completion);

(b)  Notice of a dispute pursuant to Section XIX (Dispute Resolution);

(c)  Selection of further response actions pursuant to Paragraph 69;

(d)  Determination that the financial assurances of ability to complete the Site Work are inadequate pursuant to

Section XIII (Assurance of Ability to Complete Work); or

(e) Modification to the amount or form of financial assurances of ability to complete the Work pursuant to Paragraphs 95 or 96.

Notice need not be given to Municipal Settling Defendants or Covenant Beneficiary Settling Defendants unless their respective interests are specifically implicated. In such case, notice shall be sent to the interested parties.


As to the Illinois Environmental Protection Agency:


Rick Lanham
Project Manager
National Priorities List Unit
Federal Site Remediation Section
Illinois Environmental
Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

Paul Jagiello
Division of Legal Counsel
Illinois Environmental
Protection Agency
9511 West Harrison Street
Des Plaines, Illinois 60016


As to the State of Illinois:

Gerald T. Karr
Senior Assistant Attorney General
Environmental Bureau
188 West Randolph Street, 20th Floor
Chicago, Illinois 60601

As to BFINA:

Eric Ballenger
BFINA's Project Coordinator
Allied Waste Industries, Inc.
26 W. 580 Schick Road
Hanover Park, Illinois 60133

Gary D. Justis
Attorney for BFINA
Lathrop & Gage
10851 Mastin Blvd.
Suite 1000
Overland Park, Kansas 66210


As to Cashout Generator Settling Defendants:

Steven C. Kohl, Esq.
Warner, Norcross & Judd LLP
2000 Town Center
Suite 2700
Southfield, MI 48075-1318

John L. Greenthal
Nixon Peabody LLP
Omni Plaza
30 South Pearl Street
Albany, NY 12207


Kathleen McFadden
United Technologies Corporation
Office of the General Counsel
One Financial Plaza, M/S 524-Legal
Hartford, CT 06102


As to Owner Settling Defendants:

Jeffrey R. Diver
The Jeff Diver Group
1749 S. Naperville Road
Suite 102
Wheaton, Illinois 60187


As to U.S. EPA

Richard Clarizio
Associate Regional Counsel
U.S. EPA
77 West Jackson Boulevard
C-14J
Chicago, Illinois 60604

## XXVII.   EFFECTIVE DATE

157. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII. RETENTION OF JURISDICTION

158. This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof. The Court's retention of jurisdiction includes, but is not limited to, any claim by a Cashout Generator Settling Defendant that costs incurred by BFINA to complete the Work that are paid from any trust fund established pursuant to the Trust Agreement, Appendix G hereto, are not consistent with the terms of this Consent Decree. Upon a finding by the Court that such costs are inconsistent with the Work as required by this Consent Decree, the Court may order BFINA to repay those costs into the Trust Fund or take such other action as the Court may deem appropriate.

## XXIX. APPENDICES

159. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the complete list of the Cashout Generator Settling Defendants.

"Appendix E" is the complete list of the Owner Settling Defendants.

"Appendix F" is the complete list of the Municipal Settling Defendants.

"Appendix G" is the MIG/DeWane Landfill Superfund Site Trust Agreement.

"Appendix H" is the Covenant Beneficiary Form.

"Appendix I" is the Access and Use Restriction Agreement between the MIG/DeWane Landfill Task Force (including BFINA) and the Owner Settling Defendants.

"Appendix J" is the list of State entities who are generator PRPs at the Site, and who are excluded from Settling Defendants' Covenants Not to Sue in Paragraph 141.

## XXX.   COMMUNITY RELATIONS

160. Within sixty (60) days of the entry of this Consent Decree, BFINA shall propose, in writing, to Illinois EPA the extent of their participation in the community relations plan. Illinois

EPA will determine the appropriate role for BFINA under the Plan. BFINA shall also cooperate with Illinois EPA in providing information regarding the Work to the public. As requested by Illinois EPA, BFINA shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by Illinois EPA to explain activities at or relating to the Site.

### XXXI. MODIFICATION

161. Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of Illinois EPA and BFINA. All such modifications shall be made in writing.

162. Except as provided in Paragraph 65 ("Modification of the SOW or Related Work Plans"), no material modifications shall be made to the SOW without written notification to and written approval of the Plaintiff, BFINA, and the Court. Modifications to the SOW that do not materially alter that document may be made by written agreement between Illinois EPA and BFINA.

163. Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

164. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment.  The Plaintiff reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants consent to the entry of this Consent Decree without further notice.

165. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII.  SIGNATORIES/SERVICE

166. The undersigned representative for each of the Parties to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

167. Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the Plaintiff has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

- 96 -

168. Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

SO ORDERED THIS _____ DAY OF _____, 2005.


_____
United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of People of the State of Illinois v. BFI Waste Systems of North America, Inc., et al. relating to the MIG/DeWane Landfill Superfund Site.

PEOPLE OF THE
STATE OF ILLINOIS

ex rel. Lisa Madigan
Attorney General of
State of Illinois

Matthew J. Dunn, Chief
Environmental Enforcement/
Asbestos Litigation Division

Date: 8/5/05

By: _____
RoseMarie Cazeau, Chief
Assistant Attorney General
Environmental Bureau


ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

Date: August 1, 2005

By: _____
William D. Ingersoll
Acting Chief
Legal Counsel
Division of Legal Counsel

˘ 98 ˘