IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* Lisa Madigan, Attorney General of the State of Illinois, | ) ) ) ) ) |
| .Plaintiff, | ) ) |
| | ) CIVIL ACTION NO. 05 C 50245 |
| v. | ) ) |
| | ) Judge Bucklo |
| BFI WASTE SYSTEMS OF NORTH AMERICA, INC., *et al.*, ("*et al.*" includes each of the Cashout Generator Settling Defendants, the Owner Settling Defendants, the Municipal Settling Defendants and the Covenant Beneficiary Settling Defendants), | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

RD/RA CONSENT DECREE

I. BACKGROUND

1. People of the State of Illinois, *ex rel.* Lisa Madigan, Attorney General of the State of Illinois ("the State"), on her own motion and at the request of the Illinois Environmental Protection Agency ("Illinois EPA"), filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 and Section 22.2 of the Illinois Environmental Protection Act ("the Act"), 415 ILCS 5/22.2 (2004).

2. The State in its complaint seeks, inter alia: (1) reimbursement of costs incurred by the State for response actions at the MIG/DeWane Landfill Superfund Site ("Site") located in Belvidere, Boone County, Illinois, together with accrued interest; and (2) performance of studies and response activities at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

3. In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), U.S. EPA notified the Federal Natural Resource Trustee(s) and the State of Illinois Natural Resources Trustee(s), of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

4. The defendants that have entered into this Consent Decree ("Settling Defendants") do not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes

-2-

an imminent or substantial endangerment to the public health or welfare or the environment.

5. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, U.S. EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on August 30, 1990, 55 Fed. Reg. 35502. Pursuant to an understanding between U.S. EPA and Illinois EPA, Illinois EPA has assumed responsibility as the lead agency for implementation of the final Site RD/RA response actions.

6. On October 29, 1990, U.S. EPA and Browning-Ferris Industries of Illinois, Inc. (n/k/a BFI Waste Systems of North America, Inc.) ("BFINA") agreed to an Administrative Order On Consent ("AOC1"), pursuant to section 106(a) of CERCLA, 42 U.S.C. § 9606 (a). Under the terms of AOC1, BFINA was required to monitor leachate levels and pump the leachate surface impoundment to allow two feet of freeboard. BFINA was also required to pay U.S. EPA's costs associated with a June 1990 removal action and oversight costs related to implementing the terms of AOC1. BFINA has fully complied with AOC1.

7. On March 29, 1991, the U.S. EPA, the Illinois EPA and certain respondents, including BFINA, agreed to an Administrative Order on Consent Re: Remedial Investigation and Feasibility Study ("AOC2"), which required the respondents to undertake all actions

to (1) fully determine the nature and effect of the potential threat to the public health, welfare or the environment caused by the release or threatened release of hazardous substances, pollutants or contaminants from or at the Site by conducting a Remedial Investigation ("RI"), and (2) determine and evaluate alternatives for remedial action to prevent, mitigate or otherwise remedy any release or threatened release of hazardous substances, pollutants or contaminants from or at the Site by conducting a Feasibility Study ("FS"). The respondents to AOC2 have fully complied with AOC2.

8. The AOC2 respondents completed the Remedial Investigation on July 11, 1997, and the Feasibility Study on February 1, 1999.

9. Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, Illinois EPA published notice of the completion of the FS and of the proposed plan for remedial action on June 10, 17, and 24, 1999, in a major local newspaper of general circulation. Illinois EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Illinois EPA based the selection of the response action.

10. The decision by Illinois EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision

("ROD"), Appendix A hereto, executed on March 30, 2000, and concurred with by the U.S. EPA on March 31, 2000. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

11. Based on the information presently available, the State believes that the Work will be properly and promptly conducted by BFINA if conducted in accordance with the requirements of this Consent Decree and its appendices.

12. Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action set forth in the ROD and the Site Work, as defined below, to be performed by BFINA shall constitute a response action.

13. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

## II. JURISDICTION

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and CERCLA, 42 U.S.C. §

9601 *et seq.*, and the doctrine of pendent jurisdiction with respect to claims under the Act, 415 ILCS 5/1 *et seq.* (2004). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

### III. **PARTIES BOUND**

15. This Consent Decree applies to and is binding upon the State of Illinois and upon Settling Defendants and their successors and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

16. BFINA shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing BFINA with respect to the Site or the Work, and BFINA shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. BFINA or its contractors shall provide written notice of the Consent Decree to

all subcontractors hired to perform any portion of the Work required by this Consent Decree. BFINA shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with BFINA within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

17. Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Act, CERCLA, or in regulations promulgated under the Act or CERCLA shall have the meaning assigned to them in the Act, CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

18. "Act" shall mean the Illinois Environmental Protection Act, 415 ILCS 5/1 *et seq.* (2004).

19. "BFINA" shall mean BFI Waste Systems of North America, Inc., as merger successor to Browning-Ferris Industries of Illinois, Inc., and its former, present and future shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors, predecessors, agents, and assigns, whether pursuant to

contract, by operation of law, or otherwise.

20. "Cashout Generator Settling Defendants" shall mean those parties identified in Appendix D, and each of their respective former, present and future owners, shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors, predecessors, agents, and assigns, whether pursuant to contract, by operation of law, or otherwise. The amount of hazardous substances that a Cashout Generator Settling Defendant may have arranged to be disposed of at the Site or accepted for transport to the Site (if the Site was selected by the Cashout Generator Settling Defendant) is, to the best of the Cashout Generator Settling Defendant's knowledge, minimal in relation to the total volume of the hazardous substances delivered to the Site and is not significantly more toxic than other hazardous substances sent to the Site.

21. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq.*

22. "Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

23. "Covenant Beneficiary Settling Defendants" shall mean those parties added as Settling Defendants to this Consent Decree

after its effective date, with the State's approval, using the provisions of Paragraph 106.d. and the Covenant Beneficiary Form (Appendix H).

24. "Covenant Beneficiary Form" shall mean the documents attached as Appendix H, which provides the means for future Settling Defendants to be added to this Consent Decree, upon the State's approval.

25. "Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or State holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State holiday, the period shall run until the close of business of the next working day.

26. "Future Response Costs" shall mean all costs incurred subsequent to the entry of this Consent Decree, including, but not limited to, direct and indirect costs, that the State incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII (Periodic Review), IX (Access and Institutional Controls) (including, but not limited to, attorneys fees and any monies paid

to secure access and/or to secure institutional controls, including the amount of just compensation), XV (Emergency Response), and Paragraphs 133, 134, and 137 of Section XXI (Covenants Not To Sue By Plaintiff).

27. "Illinois EPA" shall mean the Illinois Environmental Protection agency and any successor departments or agencies of the State.

28. "Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

29. "Municipal Settling Defendants" shall mean those parties identified in Appendix F, and each of their respective former, present and future shareholders, officers, directors, employees, affiliates, parents, subsidiaries, successors, predecessors, agents, and assigns, whether pursuant to contract, by operation of law, or otherwise. The amount of hazardous substances that a Municipal Settling Defendant may have arranged to be disposed of at the Site or accepted for transport to the Site (if the Site was selected by the Municipal Settling Defendant) is, to the best of the Municipal Settling Defendant's knowledge, minimal in relation to the total volume of the hazardous substances delivered to the Site

and is not significantly more toxic than other hazardous substances sent to the Site.

30. "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

31. "Operation and Maintenance" or "O & M" shall mean all activities required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by Illinois EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

32. "Owner, Operator, or Lessee of Residential Property" shall mean a person who owns, operates, manages, or leases Residential Property and who uses or allows the use of the Residential Property exclusively for residential purposes.

33. "Owner Settling Defendants" shall mean the Settling Defendants listed in Appendix E.

34. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

35. "Parties" shall mean the Illinois EPA, the State of Illinois, the Illinois Attorney General and the Settling Defendants.

36. "Past Response Costs" shall mean all costs, including, but

not limited to, direct and indirect costs, that the State incurred at or in connection with the Site prior to entry of this Consent Decree and not submitted for reimbursement under AOC1 or AOC2, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

37. "Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and the SOW.

38. "Plaintiff" shall mean the People of the State of Illinois acting by and through the Illinois Attorney General and the Illinois EPA.

39. "RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

40. "Record of Decision" or "ROD" shall mean the Illinois EPA Record of Decision relating to the Site signed on March 30, 2000, by the Director of the Illinois EPA, and concurred with by the U.S. EPA on March 31, 2000, and all attachments thereto. The ROD is attached as Appendix A.

41. "Remedial Action" shall mean those activities, except for Operation and Maintenance, to be undertaken by BFINA to implement the ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by Illinois

EPA.

42. "Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 63 of this Consent Decree and approved by Illinois EPA, and any amendments thereto.

43. "Remedial Design" shall mean those activities to be undertaken by BFINA to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

44. "Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 62 of this Consent Decree and approved by Illinois EPA, and any amendments thereto.

45. "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

46. "Settling Defendant" shall mean individually BFINA, those Parties identified in Appendices D (Cashout Generator Settling Defendants), E (Owner Settling Defendants), F (Municipal Settling Defendants), and any Covenant Beneficiary Defendants added to this Consent Decree after its effective date (collectively, "Settling Defendants").

47. "Site" shall mean the Facility known as the MIG/DeWane Landfill Superfund Site, encompassing approximately 47 acres, located approximately 0.25 miles east of the City of Belvidere, and approximately 0.5 miles north of Business U.S. Route 20, in Boone County, Illinois, and other areas where a hazardous substance from

the Site has been deposited, stored, disposed of, or placed, or otherwise come to be located. The Site is depicted generally on the map attached as Appendix C.

48. "State" shall mean the State of Illinois, Illinois EPA and Illinois Attorney General, collectively.

49. "Statement of Work" or "SOW" shall mean the statement of work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix B to this Consent Decree and any modifications made in accordance with this Consent Decree.

50. "Supervising Contractor" shall mean the principal contractor retained by BFINA to supervise and direct the implementation of the Work under this Consent Decree.

51. "Trust Fund" or "Trust Funds" shall mean the MIG/DeWane RD/RA Construction Trust Fund and the MIG/DeWane RD/RA O&M Trust Fund established pursuant to the MIG/DeWane Landfill Superfund Site Trust Agreement attached as Appendix G.

52. "United States" shall mean the United States of America.

53. "U.S. EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

54. "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any

pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous substance" under Section 3.215 of the Act, 415 ILCS 5/3.215 (2004).

55. "Work" shall mean all activities BFINA is required to perform under this Consent Decree, including any additional Site work performed by BFINA or required pursuant to Paragraphs 134, 135, or 137 of this Consent Decree, except those activities required by Section XXV (Retention of Records).

## V. **GENERAL PROVISIONS**

56. <u>Objectives of the Parties</u>

The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site, to reimburse response costs of the Plaintiff, and to resolve the claims and potential claims related to the Site of Plaintiff against Settling Defendants as provided in this Consent Decree.

57. <u>Commitments by BFINA</u>

BFINA shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by BFINA and approved by Illinois EPA pursuant to this Consent Decree. BFINA shall also reimburse the State for Past

Response Costs and Future Response Costs as provided in this Consent Decree.

58. Compliance With Applicable Law

All activities undertaken by BFINA pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. BFINA must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by Illinois EPA, shall be considered to be consistent with the NCP.

59. Permits

a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, BFINA shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b. BFINA may seek relief under the provisions of Section XVIII (Force Majeure) of this Consent Decree for any delay

in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work, as long as the delay is not caused by the action or inaction of BFINA.

c. This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

60. Notice of Obligations to Successors-in-Title

a. Within fifteen (15) days after the entry of this Consent Decree, the Owner Settling Defendants shall record a memorandum of judgment of this Consent Decree with the Recorder's Office of Boone County, State of Illinois. Thereafter, each deed, title, or other instrument conveying an interest in the property included in the Site shall contain a notice stating that the property is subject to this Consent Decree and shall reference the recorded location of the Consent Decree and any restrictions applicable to the property under this Consent Decree.

b. The obligations of each Owner Settling Defendant with respect to the provision of access under Section IX (Access and Institutional Controls) shall be binding upon any and all such Settling Defendants and any and all persons who subsequently acquire any such interest or portion thereof (hereinafter "Successors-in-Title"). Within fifteen (15) days after the entry of this Consent Decree, each Owner Settling Defendant shall record at

the Recorder's Office a notice of obligation to provide access under Section IX (Access and Institutional Controls) and related covenants, if any. Each subsequent instrument conveying an interest to any such property included in the Site shall reference the recorded location of such notice and covenants applicable to the property.

c. Any Owner Settling Defendant and any Successor-in-Title shall, at least thirty (30) days prior to the conveyance of any such interest, give written notice of this Consent Decree to the grantee and written notice to the State of the proposed conveyance, including the name and address of the grantee, and the date on which notice of the Consent Decree was given to the grantee. In the event of any such conveyance, BFINA's obligations under this Consent Decree, including its obligations to provide or secure access pursuant to Section IX (Access and Institutional Controls), shall continue to be met by BFINA. In addition, if the State approves, the grantee may perform some or all of the Work under this Consent Decree, as approved by the Illinois EPA. In no event shall the conveyance of an interest in property that includes, or is a portion of, the Site release or otherwise affect the liability of BFINA to comply with the Consent Decree.

## VI. **PERFORMANCE OF THE WORK BY BFINA**

61. Selection of Supervising Contractor.

a. All aspects of the Work to be performed by BFINA pursuant to Sections VI (Performance of the Work by BFINA), VII (Periodic Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by Illinois EPA. Within ten (10) days after the lodging of this Consent Decree, BFINA shall notify Illinois EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. Illinois EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, BFINA propose to change a Supervising Contractor, BFINA shall give such notice to Illinois EPA and must obtain an authorization to proceed from Illinois EPA, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b. If Illinois EPA disapproves a proposed Supervising Contractor, Illinois EPA will notify BFINA in writing. BFINA shall submit to Illinois EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to BFINA within thirty (30) days of receipt of Illinois EPA's

disapproval of the contractor previously proposed. Illinois EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. BFINA may select any contractor from that list that is not disapproved and shall notify Illinois EPA of the name of the contractor selected within twenty-one (21) days of Illinois EPA's authorization to proceed.

c.   If Illinois EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents BFINA from meeting one or more deadlines in a plan approved by the Illinois EPA pursuant to this Consent Decree, BFINA may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

62.  <u>Remedial Design</u>.

a.   Within thirty (30) days after Illinois EPA's issuance of an authorization to proceed pursuant to Paragraph 61, BFINA shall submit to Illinois EPA a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the ROD, in accordance with the SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree and/or the SOW. Upon its approval by Illinois EPA, the Remedial Design Work Plan shall be

incorporated into and become enforceable under this Consent Decree. Within thirty (30) days after Illinois EPA's issuance of an authorization to proceed, BFINA shall submit to Illinois EPA, a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and Illinois EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.   The Remedial Design Work Plan shall include plans and schedules for implementation of all remedial design and pre-design tasks identified in the SOW, including, but not limited to, plans and schedules for the completion of the items listed below in this paragraph.  These items will be based on site-specific factors and include the following items: (1) design sampling and analysis plan (including, but not limited to, a Remedial Design Quality Assurance Project Plan ("RD QAPP") in accordance with Section VIII (Quality Assurance, Sampling, and Data Analysis); (2) a treatability study; (3) a Pre-design Work Plan; (4) a preliminary design submittal; (5) an intermediate design submittal or briefing; (6) a pre-final/final design submittal; and (7) a Construction Quality Assurance Plan.  In addition, the Remedial Design Work Plan shall include a schedule for completion of the Remedial Action Work Plan.

c.   Upon approval of the Remedial Design Work Plan by

Illinois EPA and submittal of the Health and Safety Plan for all field activities to Illinois EPA and the State, BFINA shall implement the Remedial Design Work Plan. BFINA shall submit to Illinois EPA all plans, submittals and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions). Unless otherwise directed by Illinois EPA, BFINA shall not commence further Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan.

d. The preliminary design submittal shall include, at a minimum, the following: (1) design criteria; (2) results of treatability studies; (3) results of additional field sampling and pre-design work; (4) project delivery strategy; (5) preliminary plans, drawings and sketches; (6) required specifications in outline form; and (7) preliminary construction schedule.

e. The intermediate design submittal, if required by Illinois EPA or if independently submitted by BFINA, shall be a continuation and expansion of the preliminary design. Any value engineering proposals must be identified and evaluated during this review.

f. The pre-final/final design submittal shall include, at a minimum, the following: (1) final plans and specifications;

(2) Operation and Maintenance Plan; (3) Construction Quality Assurance Project Plan ("CQAPP"); (4) Field Sampling Plan (directed at measuring progress towards meeting Performance Standards); and (5) Contingency Plan. The CQAPP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project.

63. <u>Remedial Action</u>.

a. Within thirty (30) days after the approval of the final design submittal, BFINA shall submit to Illinois EPA, a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the ROD, the SOW, and the design plans and specifications developed in accordance with the Remedial Design Work Plan and approved by Illinois EPA. Upon its approval by Illinois EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, BFINA shall submit to Illinois EPA a Health and Safety Plan for field activities required by the Remedial Action Work Plan which

conforms to the applicable Occupational Safety and Health Administration and Illinois EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b. .The Remedial Action Work Plan shall include the following items .listed below in this paragraph for which methodologies, plans and schedules should be included in the Remedial Action Work Plan. This list will be based on site specific factors and include the following: (1) the schedule for completion of the Remedial Action; (2) method for selection of the contractor; (3) schedule for developing and submitting other required Remedial Action plans; (4) methodology for implementation of the Construction Quality Assurance Plan; (5) a groundwater monitoring plan; (6) methods for satisfying permitting requirements; (7) methodology for implementation of the Operation and Maintenance Plan; (8) methodology for implementation of the Contingency Plan; (9) tentative formulation of the Remedial Action team; (10) construction quality control plan (by constructor); and (11) procedures and plans for the decontamination of equipment and the disposal of contaminated materials. The Remedial Action Work Plan also shall include a schedule for implementation of all Remedial Action tasks identified in the final design submittal and shall identify the initial formulation of BFINA's Remedial Action Project Team (including, but not limited to, the Supervising

Contractor).

c.   Upon approval of the Remedial Action Work Plan by Illinois EPA, BFINA shall implement the activities required under the Remedial Action Work Plan.   BFINA shall submit to Illinois EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions).   Unless otherwise directed by Illinois EPA, BFINA shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan.

64.   BFINA shall continue to implement the Remedial Action and O&M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

65.   Modification of the SOW or Related Work Plans.

a.   If Illinois EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, Illinois EPA may require that such modification be incorporated in the SOW and/or such work plans. Provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with

the scope of the remedy selected in the ROD.

b. For the purposes of this Paragraph 65 and Paragraphs 98 and 99 only, the "scope of the remedy selected in the ROD" is: (1) Construction and operation of a leachate collection and monitoring system; (2) Construction and operation of an active and passive landfill gas collection system and monitoring program; (3) Leachate surface impoundment closure; (4) Surface water diversion system; (5) Implementation of access restrictions and institutional controls; (6) Natural attenuation of groundwater; (7) Long-term groundwater monitoring; and (8) Construction of a cap over the entire landfill to minimize infiltration of precipitation into the landfill.

c. If BFINA objects to any modification determined by Illinois EPA to be necessary pursuant to this Paragraph, BFINA may seek dispute resolution pursuant to Section XIX (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d. BFINA shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e. Nothing in this Paragraph shall be construed to limit Illinois EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

66. BFINA acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

67. BFINA shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the Illinois EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

a. BFINA shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. BFINA shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

b.   The identity of the receiving facility and state, will be determined by BFINA following the award of the contract for Remedial Action construction.   BFINA shall provide the information required by Paragraph 67 as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

## VII.   **PERIODIC REVIEW**

68.   Periodic Review.   BFINA shall conduct any studies and investigations as requested by Illinois EPA, in order to permit Illinois EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations.

69.   Illinois EPA Selection of Further Response Actions.   If Illinois EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, Illinois EPA may select further response actions for the Site in accordance with the requirements of CERCLA, the Act and the NCP.

70.   Opportunity To Comment.   BFINA and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by Illinois EPA, as a result of the review conducted pursuant to Paragraph 68 above.   BFINA and the public, if permitted to, may submit written comments for the record during the comment

period.

71. <u>BFINA's Obligation To Perform Further Response Actions</u>. If Illinois EPA selects further response actions for the Site, BFINA shall undertake such further response actions to the extent that the reopener conditions in Paragraph 134 or Paragraph 135 (the State's reservations of liability based on unknown conditions or new information) are satisfied. BFINA may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (1) Illinois EPA's determination that the reopener conditions of Paragraph 134 or Paragraph 135 of Section XXI (Covenants Not To Sue by Plaintiff) are satisfied, (2) Illinois EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) Illinois EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to Illinois EPA's selection of further response actions shall be resolved pursuant to Section XIX (Dispute Resolution).

72. <u>Submissions of Plans</u>. If BFINA is required to perform the further response actions pursuant to Paragraph 71, BFINA shall submit a plan for such work to Illinois EPA for approval in accordance with the procedures set forth in Section VI (Performance of the Work by BFINA) and shall implement the plan approved by Illinois EPA in accordance with the provisions of this Consent Decree.

## VIII.  QUALITY ASSURANCE, SAMPLING, and DATA ANALYSIS

73.  BFINA shall use quality assurance, quality control, and chain of custody procedures for all treatability studies, design, compliance and monitoring samples in accordance with "U.S. EPA Requirements for Quality Assurance Project Plans for Environmental Data Operation,"  (EPA QA/R5; "Preparing Perfect Project Plans," (EPA /600/9-88/087), and subsequent amendments to such guidelines upon notification by Illinois EPA to BFINA of such amendment. Amended guidelines shall apply only to procedures conducted after such notification.  Prior to the commencement of any monitoring project under this Consent Decree, BFINA shall submit to Illinois EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents.  If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by Illinois EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  BFINA shall ensure that Illinois EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by BFINA in implementing this Consent Decree.  In addition, BFINA shall ensure that such laboratories shall analyze all samples submitted by Illinois EPA pursuant to the

QAPP for quality assurance monitoring. BFINA shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted U.S. EPA methods. Accepted U.S. EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree. BFINA shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an U.S. EPA or U.S.EPA-equivalent QA/QC program. BFINA shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by Illinois EPA. BFINA shall notify Illinois EPA, pursuant to the SOW, in writing of the laboratories BFINA proposes to use for the Work to be performed under this Consent Decree. Illinois EPA shall issue its approval or disapproval within ten (10) days of receipt of such written notice from BFINA.

74. Upon request, BFINA shall allow split or duplicate samples to be taken by Illinois EPA or its authorized representatives. BFINA shall notify Illinois EPA not less than fourteen (14) days in advance of any sample collection activity

unless shorter notice is agreed to by Illinois EPA. In addition, Illinois EPA shall have the right to take any additional samples that Illinois EPA deems necessary. Upon request, Illinois EPA shall allow BFINA to take split or duplicate samples of any samples it takes as part of the Plaintiff"s oversight of BFINA's implementation of the Work.

75. BFINA shall submit to Illinois EPA five (5) copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of BFINA with respect to the Site and/or the implementation of this Consent Decree unless Illinois EPA agrees otherwise.

76. Notwithstanding any provision of this Consent Decree, the State hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, the Act and any other applicable statutes or regulations.

## IX. ACCESS AND INSTITUTIONAL CONTROLS

77. Commencing upon the date of lodging of this Consent Decree, BFINA agrees to provide the State and its representatives, including Illinois EPA and its contractors, access at all reasonable times to the Site and any other property to which access is required for the implementation of this Consent Decree, to the extent access to the property is controlled by BFINA, for the

purposes of conducting any activity related to this Consent Decree including, but not limited to:

    a.   Monitoring the Work;

    b.   Verifying any data or information submitted to Illinois EPA;

    c.   Conducting investigations relating to contamination at or near the Site;

    d.   Obtaining samples;

    e.   Assessing the need for planning or implementing additional response actions at or near the Site;

    f.   Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by BFINA or its agents, consistent with Section XXIV; and

    g.   Assessing BFINA's compliance with this Consent Decree.

78. a. Pursuant to the Access and Use Restriction Agreement attached as Appendix I, the Owner Settling Defendants shall provide access for BFINA and its contractors, as well as for the State and its representatives, including, but not limited to, Illinois EPA and its contractors, as necessary to effectuate this Consent Decree, the ROD, the SOW, and all other documents required by Illinois EPA and its contractors.

b. To the extent that the Site or any other property to which access is required for the implementation of this Consent Decree is owned or controlled by persons other than BFINA or the Owner Settling Defendants, BFINA shall use its best efforts to secure from such persons access for BFINA and its contractors, as well as for the State and its representatives, including, but not limited to, Illinois EPA and its contractors, as necessary to effectuate this Consent Decree. For purposes of this Paragraph, "best efforts" include the payment of reasonable sums of money in consideration of access. If any access required to complete the Work is not obtained within forty-five (45) days of the date of lodging of this Consent Decree, or within forty-five (45) days of the date Illinois EPA notifies BFINA in writing that additional access beyond that previously secured is necessary, BFINA shall promptly notify the State in writing, and shall include in that notification a summary of the steps BFINA has taken to attempt to obtain access. The State may, as it deems appropriate, assist BFINA in obtaining access. BFINA shall reimburse the State, in accordance with the procedures in Section XVI (Reimbursement of Response Costs), for all costs incurred by the State in obtaining access.

79. Notwithstanding any provision of this Consent Decree, the State retains all of its access authorities and rights, including

enforcement authorities related thereto, under CERCLA, RCRA, the Act and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

80. In addition to any other requirement of this Consent Decree, BFINA shall submit to Illinois EPA, with one (1) copy to each of U.S. EPA Region 5 Superfund Section, and the recipients of notice for the Cashout Generator Settling Defendants, five (5) copies of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by BFINA or its contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f)

include any modifications to the work plans or other schedules that BFINA has proposed to Illinois EPA or that have been approved by Illinois EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the following six weeks. BFINA shall submit these progress reports to Illinois EPA by the tenth day of every month following the lodging of this Consent Decree until Illinois EPA notifies BFINA pursuant to Paragraph 98.b. of Section XIV (Certification of Completion). If requested by Illinois EPA, BFINA shall also provide briefings for Illinois EPA to discuss the progress of the Work.

81. BFINA shall notify Illinois EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven (7) days prior to the performance of the activity.

82. During performance of the Work, if any event occurs that BFINA is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), BFINA shall within 24 hours of the onset of such event orally notify the Illinois EPA Project Coordinator or the Alternate Illinois EPA Project Coordinator (in the event of the unavailability of the Illinois EPA Project Coordinator), or, in the

event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section of the Illinois EPA at 217-782-3637. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

83. Within twenty (20) days of the onset of such an event, BFINA shall furnish to Illinois EPA a written report, signed by BFINA's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, BFINA shall submit a report setting forth all actions taken in response thereto.

84. BFINA shall submit five (5) copies of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to Illinois EPA in accordance with the schedules set forth in such plans, and one (1) copy to each of the U.S. EPA Region 5 Superfund Section and the recipients of notice for the Cashout Generator Settling Defendants.

85. All reports and other documents submitted by BFINA to Illinois EPA (other than the monthly progress reports referred to above) which purport to document BFINA's compliance with the terms of this Consent Decree shall be signed by an authorized

representative of BFINA.

## XI. ILLINOIS EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

86. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, Illinois EPA, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that BFINA modify the submission; or (e) any combination of the above. However, Illinois EPA shall not modify a submission without first providing BFINA at least one notice of deficiency and an opportunity to cure within fifteen (15) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

87. In the event of approval, approval upon conditions, or modification by Illinois EPA, pursuant to Paragraph 86 (a), (b), or (c), BFINA shall proceed to take any action required by the plan, report, or other item, as approved or modified by Illinois EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by Illinois EPA. In

the event that Illinois EPA modifies the submission to cure the deficiencies pursuant to Paragraph 86 (c) and the submission has a material defect, Illinois EPA retains its right to seek stipulated penalties, as provided in Section XX (Stipulated Penalties).

88.a.    Upon receipt of a notice of disapproval pursuant to Paragraph 86(d), BFINA shall, within twenty-one (21) days or such longer time as specified by Illinois EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX (Stipulated Penalties), shall accrue during the twenty-one (21) day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 89 and 90.

b.    Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 86 (d), BFINA shall proceed, at the direction of Illinois EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve BFINA of any liability for stipulated penalties under Section XX (Stipulated Penalties).

89.    In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by Illinois EPA, Illinois

EPA may again require that BFINA correct the deficiencies, in accordance with the preceding Paragraphs. Illinois EPA also retains the right to modify or develop the plan, report or other item. BFINA shall implement any such plan, report, or item as modified or developed by Illinois EPA, subject only to their right to invoke the procedures set forth in Section XIX (Dispute Resolution).

90. If upon resubmission, a plan, report, or item is disapproved or modified by Illinois EPA due to a material defect, BFINA shall be deemed to have failed to submit such plan, report, or item timely and adequately unless BFINA invokes the dispute resolution procedures set forth in Section XIX (Dispute Resolution) and Illinois EPA's action is overturned pursuant to that Section. The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If Illinois EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX (Stipulated Penalties).

91. All plans, reports, and other items required to be submitted to Illinois EPA under this Consent Decree shall, upon approval or modification by Illinois EPA, be enforceable under this

Consent Decree. In the event Illinois EPA approves or modifies a portion of a plan, report, or other item required to be submitted to Illinois EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XII. PROJECT COORDINATORS

92. Within twenty (20) days of lodging this Consent Decree, BFINA and Illinois EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five (5) working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. BFINA's Project Coordinator shall be subject to disapproval by Illinois EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. BFINA's Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

93. Plaintiff may designate other representatives, including, but not limited to, Illinois EPA employees, and federal and State

contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. Illinois EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, Illinois EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

### XIII. ASSURANCE OF ABILITY TO COMPLETE WORK

94. Within thirty (30) days of entry of this Consent Decree, BFINA shall establish and maintain financial security:

a. Until issuance by Illinois EPA of the Certification of Completion of the Remedial Action pursuant to Paragraph 98, financial security in the amount of $17,475,000.00, or such other amounts as Illinois EPA may approve from time to time pursuant to Paragraph 96, in one or more of the following forms such that the total financial assurance amount meets or exceeds the estimated costs of completing the Work:

(i) A guarantee to perform the Work by Allied Waste Industries, Inc.;

(ii) A demonstration that BFINA satisfies the requirements of 35 Ill. Adm. Code 724.243(f);

(iii) A surety bond guaranteeing performance of the Work issued by a financial institution licensed by the appropriate state and federal agencies to issue such bonds;

(iv) One or more irrevocable letters of credit equaling the total estimated cost of the Work issued by a financial institution licensed by the appropriate state and federal agencies to issue such letters of credit;

(v) A trust fund of cash deposits dedicated to performance of the Site Work; or

(vi) Insurance coverage for performance of the Site Work acceptable to the State, naming the State and all Cashout Generator Settling Defendants as additional insureds.

The initial financial security amount ($17,475,000.00) is based on the RD/RA future cost estimate from the ROD. If the results of the Remedial Design demonstrate that the RD/RA future cost estimate exceeds this amount, then BFINA's financial security obligation shall increase accordingly.

b. Following issuance by Illinois EPA of the Certification of Completion of the Remedial Action pursuant to

Paragraph 98, financial security for the remaining O&M activities only, for an amount not to exceed $3,100,000.00, as may be reduced by Illinois EPA from time to time pursuant to Paragraph 96, in one of the above forms, or in one or more of the following forms:

(i) A guarantee to perform the Work by one or more parent corporations or subsidiaries, or by one or more unrelated corporations that have a substantial business relationship with BFINA.

(ii) A demonstration that BFINA satisfies the requirements of 35 Ill. Adm. Code 724.243(f).

95. In the event that Illinois EPA, determines at any time that the financial assurances provided pursuant to this Section are inadequate, BFINA shall, within thirty (30) days of receipt of notice of Illinois EPA's determination, obtain and present to Illinois EPA for approval one of the other forms of financial assurance listed in Paragraph 94 of this Consent Decree. BFINA's inability to demonstrate financial ability to complete the Work shall not excuse performance of any activities required under this Consent Decree.

96. If BFINA can show that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 94 above after entry of this Consent Decree, BFINA may reduce the amount of the financial security provided under this

Section to the estimated cost of the remaining work to be performed. BFINA shall submit a proposal for such reduction to Illinois EPA, in accordance with the requirements of this Section, and may reduce the amount of the security upon approval by Illinois EPA. In the event of a dispute, BFINA may reduce the amount of the security in accordance with the final administrative or judicial decision resolving the dispute.

97. BFINA may change the form of financial assurance provided under this Section at any time, upon notice to and approval by Illinois EPA, provided that the new form of assurance meets the requirements of this Section. In the event of a dispute, BFINA may change the form of the financial assurance only in accordance with the final administrative or judicial decision resolving the dispute.

## XIV.  CERTIFICATION OF COMPLETION

98. Completion of the Remedial Action.

a.  Within ninety (90) days after BFINA concludes that the Remedial Action has been fully performed and the Performance Standards have been attained, BFINA shall schedule and conduct a pre-certification inspection to be attended by BFINA and Illinois EPA.  If, after the pre-certification inspection, BFINA still believes that the Remedial Action has been fully performed and the Performance Standards have been attained, BFINA shall submit a

written report requesting certification to Illinois EPA for approval, pursuant to Section XI (Illinois EPA Approval of Plans and Other Submissions) within thirty (30) days of the inspection. In the report, a registered professional engineer and the BFINA Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of BFINA or BFINA's Project Coordinator:

"To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

If, after completion of the pre-certification inspection and receipt and review of the written report, Illinois EPA determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, Illinois EPA will notify BFINA in writing of the activities that must be undertaken by BFINA pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards. Provided, however, that Illinois EPA may only require BFINA to perform such activities

pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as that term is defined in Paragraph 65.b. BFINA shall prepare a schedule for the review and approval of Illinois EPA for performance of such activities consistent with the Consent Decree and the SOW. BFINA shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If Illinois EPA concludes, based on the initial or any subsequent report requesting Certification of Completion, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, Illinois EPA will so certify in writing to BFINA within ninety (90) days of Illinois EPA's receipt of the initial or any subsequent report requesting Certification of Completion. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants Not to Sue by Plaintiffs). Certification of Completion of the Remedial Action shall not affect BFINA's obligations under this Consent Decree.

99. Completion of the Work

- 47 -

a. Within ninety (90) days after BFINA concludes that all phases of the Work (including O & M), have been fully performed, BFINA shall schedule and conduct a pre-certification inspection to be attended by BFINA and Illinois EPA. If, after the pre-certification inspection, BFINA still believes that the Work has been fully performed, BFINA shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of BFINA or BFINA's Project Coordinator:

"To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

If, after review of the written report, Illinois EPA determines that any portion of the Work has not been completed in accordance with this Consent Decree, Illinois EPA will notify BFINA in writing of the activities that must be undertaken by BFINA pursuant to this Consent Decree to complete the Work. Provided, however, that Illinois EPA may only require BFINA to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the ROD," as

that term is defined in Paragraph 65.b. BFINA shall prepare a schedule for the review and approval of Illinois EPA for performance of such activities consistent with the Consent Decree and the SOW. BFINA shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b. If Illinois EPA concludes, based on the initial or any subsequent request for Certification of Completion by BFINA and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, Illinois EPA will so notify BFINA in writing.

## XV. EMERGENCY RESPONSE

100. In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, BFINA shall, subject to Paragraph 101, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the Illinois EPA's Project Coordinator, or, if the Project Coordinator is unavailable, Illinois EPA's Alternate Project

Coordinator. If neither of these persons is available, BFINA shall notify the Illinois EPA's Emergency Response Section at 217-782-3637. If BFINA is unable to reach the Illinois EPA's Emergency Response Section, then BFINA shall notify the Illinois Emergency Management Agency at 1-800-782-7860. BFINA shall take such actions in consultation with Illinois EPA's Project Coordinator or other available authorized Illinois EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that BFINA fails to take appropriate response action as required by this Section, and Illinois EPA takes such action instead, BFINA shall reimburse Illinois EPA for all costs of the response action not inconsistent with the NCP pursuant to Section XVI (Reimbursement of Response Costs).

101. Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the State, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of