Waste Material on, at, or from the Site, subject to Section XXI (Covenants Not to Sue by Plaintiff).

## XVI. REIMBURSEMENT OF RESPONSE COSTS AND

## SETTLEMENT PAYMENTS BY OTHER SETTLING DEFENDANTS

102. a.  BFINA shall pay any and all Past Response Costs, not inconsistent with the NCP, incurred by the State which are documented in billings provided to BFINA by the State, within thirty (30) days of receipt of the invoice for such Past Response Costs.  Payment shall be made in the form of a certified or cashiers check or checks made payable to the "Illinois Environmental Protection Agency" designated for deposit in the "Hazardous Waste Fund".  BFINA shall include the name and number of this case on all checks.  The check(s) shall be delivered to:

Illinois EPA
Fiscal Services Section
P.O. Box 19276
1021 North Grand Avenue East
Springfield, IL 62794-9276

BFINA shall simultaneously submit a copy of the transmittal letter and the check(s) to the Attorney General at:

Gerald T. Karr
Assistant Attorney General
Environmental Bureau
188 West Randolph Street, 20th Floor.
Chicago,IL 60601

b.   Additionally, BFINA shall pay any and all Past Response Costs of the Illinois Attorney General within thirty (30) days of receipt of the invoice for such Past Response Costs. Payment required by this Paragraph shall be by check made payable to the "Illinois Attorney General State Projects and Court Ordered Distribution Fund (801 Fund)." The check(s) shall be delivered to:

Illinois Attorney General's Office
Chief, Environmental Bureau North
188 West Randolph Street, 20th Floor.
Chicago, IL 60601

BFINA shall provide the case name and number on the check(s).

103. BFINA shall reimburse the Illinois EPA for all Future Response Costs incurred which are not inconsistent with the National Contingency Plan. The Illinois EPA shall send BFINA, on a quarterly basis, a bill requiring payment that includes a cost summary and associated backup documentation. The Illinois Attorney General's Office shall submit to BFINA invoices with supporting documentation for Future Oversight Costs. Within thirty (30) days of receipt of the invoice BFINA shall pay the amount due and owing. Payment required by this paragraph shall be by check made payable to the "Illinois Attorney General State Projects and Court Ordered Distribution Fund (801 Fund)." The check(s) shall be delivered to:

Illinois Attorney General's Office
Chief, Environmental Bureau North
188 West Randolph Street, 20th Floor.
Chicago, IL 60601

BFINA shall provide the case name and number on the check(s).

Failure by Illinois EPA to submit an accounting of costs on a quarterly basis shall not preclude Illinois EPA or Illinois Attorney General's Office from obtaining reimbursement of Future Response Costs from BFINA. BFINA shall make all payments within thirty (30) days of BFINA receipt of each bill requiring payment in accordance with the terms contained in this Paragraph 103 of this Consent Decree. BFINA shall make all payments required by this Paragraph, subject to the Dispute Resolution procedure set forth in Section XIX (Dispute Resolution) of this Consent Decree.

104. BFINA may contest payment of any Future Response Costs under Paragraph 103 if it determines that the Illinois EPA or Illinois Attorney General's Office has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within thirty (30) days of receipt of the bill. BFINA shall send such objections pursuant to Section XXVI (Notices and Submissions). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, BFINA shall within the thirty (30) day period pay all uncontested Future Response Costs to the Illinois

EPA or Illinois Attorney General's Office in the manner described in Paragraph 103. Simultaneously, BFINA shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Illinois and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. BFINA shall send to the State, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, BFINA shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution). If the State prevails in the dispute, within five (5) days of the resolution of the dispute, BFINA shall pay the sums due (with accrued interest) to the State, in the manner described in Paragraph 103. If BFINA prevails concerning any aspect of the contested costs, BFINA shall pay that portion of the costs (plus associated accrued interest) for which BFINA did not prevail to the State, in the manner described in this Paragraph 104 ; BFINA shall be disbursed any balance of the escrow account. The dispute resolution procedures

set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding BFINA obligation to reimburse the State for its Future Response Costs.

105. In the event that the payment of Past Response Costs billed by the State are not made within thirty (30) days of the effective date of this Consent Decree as required by Paragraph 102 or the payments of Future Response Cost incurred by the Illinois EPA or Illinois Attorney General's Office are not made within thirty (30) days of BFINA receipt of the bill as required by Paragraph 103, BFINA shall pay Interest on the unpaid balance. The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue thirty (30) days after the effective date of this Consent Decree. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of BFINA's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of BFINA's failure to make timely payments under this Section. BFINA shall make all payments required by this Paragraph in the manner described in Paragraphs 102 and 103.

106. <u>Settlement Payments by Other Settling Defendants</u>.

    a. <u>Cashout Generator Settling Defendants</u>. Within

thirty (30) days of the entry of this Consent Decree, each Cashout Generator Settling Defendants listed on the second row or below in Appendix D shall pay BFINA its respective amount identified in Appendix D. Within thirty (30) days of the entry of this Consent Decree, those Cashout Generator Settling Defendants collectively listed in the first row of Appendix D shall collectively pay a total of $6,978,139.00 into the Trust Funds in the respective amounts indicated in Appendix G, the MIG/DeWane Landfill Superfund Site Trust Agreement.

b.  Owner Settling Defendants. As soon as practicable after entry of this Consent Decree, the Owner Settling Defendants shall cause BFINA to be paid the balance of the Escrow Fund, as that term is defined in the January 1999 Escrow Agreement by and among the Owner Settling Defendants and the MIG/DeWane Landfill Task Force, minus one hundred forty thousand dollars ($140,000.00), which will be conveyed to certain of the Owner Settling Defendants.

c.  Municipal Settling Defendants. Within thirty (30) days of the entry of this Consent Decree, each Municipal Settling Defendant shall pay BFINA its respective amount identified in Appendix F.

d.  Covenant Beneficiary Settling Defendants. As the effective date of this Consent Decree, BFINA may seek to add additional Settling Defendants who settle with BFINA to this

Consent Decree by sending a written request to the State, with a Covenant Beneficiary Form (Appendix H) fully executed by the proposed additional Settling Defendant, and the reasons that the proposed additional Settling Defendant should be added to the Consent Decree. Upon written approval by the State of the addition of each Covenant Beneficiary Settling Defendant, the respective fully-executed Covenant Beneficiary Form shall become part of this Consent Decree.

107. The payments made by each Settling Defendant under Paragraph 106, and the other consideration provided by the Owner Settling Defendants in Paragraphs 60 and 78, are intended to represent each respective Settling Defendant's equitable share of all costs incurred or to be incurred by any party related to environmental conditions at the Site, including cost overruns incurred during implementation of the remedy and costs for supplemental remedies or additional work to be performed in the event that the State determines the implemented remedy is not protective of human health or the environment. Such payments are neither penalties nor monetary sanctions.

108. By signing this Consent Decree, each Cashout Generator Settling Defendant and Municipal Settling Defendant certifies, to the best of its knowledge and belief, that it has made reasonable inquiry to gather all information which relates in any way to its

ownership, operation, generation, treatment, transportation, storage or disposal of hazardous substances at or in connection with the Site, and that the amount of hazardous substances that it may have arranged to be disposed of at the Site or accepted for transport to the Site (if the Site was selected by the Settling Defendant) is, to the best of the Settling Defendant's knowledge, minimal in relation to the total volume of the hazardous substances delivered to the Site and is not significantly more toxic than other hazardous substances sent to the Site.

109. The covenant not to sue contained in this Consent Decree is null and void, with respect to a Cashout Generator Settling Defendant or a Municipal Settling Defendant, if information not currently known to Illinois EPA is discovered, and Illinois EPA determines that the new information indicates that the Cashout Generator Settling Defendant or Municipal Settling Defendant contributed hazardous substances to the Site in such greater amount or of such greater toxic or other hazardous effect that the Cashout Generator Settling Defendant or Municipal Settling Defendant no longer qualifies as a Cashout Generator Settling Defendant or Municipal Settling Defendant.

## XVII. **INDEMNIFICATION AND INSURANCE**

110. a.    The State does not assume any liability by entering into this agreement or by virtue of any designation of BFINA as

Illinois EPA's authorized representatives under Section 104(e) of CERCLA. BFINA shall indemnify, save and hold harmless the State and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of BFINA, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of BFINA as Illinois EPA's authorized representatives under Section 104(e) of CERCLA. Further, BFINA agrees to pay the State all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the State based on negligent or other wrongful acts or omissions of BFINA, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree. The State shall not be held out as a party to any contract entered into by or on behalf of BFINA in carrying out activities pursuant to this Consent Decree. Neither the BFINA nor any such contractor shall be considered an agent of the State.

      b.   The State shall give BFINA notice of any claim for

which the State plans to seek indemnification pursuant to Paragraph 110.a., and shall consult with BFINA prior to settling such claim.

111. BFINA waives all claims against the State for damages or reimbursement or for set-off of any payments made or to be made to the State, arising from or on account of any contract, agreement, or arrangement between BFINA and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, BFINA shall indemnify and hold harmless the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between BFINA and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

112. No later than fifteen (15) days before commencing any on-site Work, BFINA shall secure, and shall maintain until the first anniversary of Illinois EPA's Certification of Completion of the Remedial Action pursuant to Paragraph 98.b. of Section XIV (Certification of Completion) commercial comprehensive general liability insurance with limits of $2 million dollars, naming the State as an additional insured. In addition, for the duration of this Consent Decree, BFINA shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and

regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of BFINA in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, BFINA shall provide to Illinois EPA certificates of such insurance and a copy of each insurance policy. BFINA shall resubmit such certificates and copies of policies each year on the anniversary of the effective date of this Consent Decree. If BFINA demonstrates by evidence satisfactory to Illinois EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, BFINA only needs to provide that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVIII.  **FORCE MAJEURE**

113. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of BFINA, of any entity controlled by BFINA, or of BFINA's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite BFINA's best efforts to fulfill the obligation. The requirement that BFINA exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the

effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

114. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, BFINA shall notify orally Illinois EPA's Project Coordinator or, in his or her absence, Illinois EPA's Alternate Project Coordinator within two (2) working days of when BFINA first knew or should have known that the event might cause a delay. Within ten (10) days thereafter, BFINA shall provide in writing to Illinois EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; BFINA's rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of BFINA, such event may cause or contribute to an endangerment to public health, welfare or the environment. BFINA shall include with any notice all available documentation supporting its claim that the delay was attributable to a force

majeure event. Failure to comply with the above requirements shall preclude BFINA from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. BFINA shall be deemed to know of any circumstance of which it, any entity it controls, or its contractors knew or should have known.

115. Within fifteen (15) days of receipt of BFINA's notice, Illinois EPA shall agree or disagree in writing with this request. If Illinois EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by Illinois EPA for such time as is necessary to complete those obligations. Illinois EPA will notify BFINA in writing, of the length of the extension, if any, for performance of the obligations affected by the force majeure event. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If Illinois EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, Illinois EPA will notify BFINA in writing of its decision.

116. If BFINA elects to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), it shall

do so no later than fifteen (15) days after receipt of Illinois EPA's notice. In any such proceeding, BFINA shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that BFINA complied with the requirements of Paragraphs 114 and 115, above. If BFINA carries this burden, the delay at issue shall be deemed not to be a violation by BFINA of the affected obligation of this Consent Decree identified to Illinois EPA and the Court.

## XIX. DISPUTE RESOLUTION

117. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the State to enforce obligations of BFINA that have not been disputed in accordance with this Section, or to disputes between Settling Defendants that do not involve the State. The Cashout Generator Settling Defendants' rights to invoke the dispute resolution procedures of this Section are limited to disputes arising under Paragraph 106 (Settlement Payments by Other Settling Defendants), Paragraph 138 (Covenants

Not to Sue Other Settling Defendants), Paragraphs 141-144 (Covenants by Settling Defendants), and Paragraphs 145 and 146 (Effect of Settlement and Contribution Protection).

118. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

119. a. In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by Illinois EPA shall be considered binding unless, within fourteen (14) days after the conclusion of the informal negotiation period, the other Party to the dispute invokes the formal dispute resolution procedures of this Section by serving on the State a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by such Party.

b. Within fourteen (14) days after receipt of the other Party's Statement of Position, Illinois EPA will serve on such Party

its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by Illinois EPA. Within seven (7) days after receipt of Illinois EPA's Statement of Position, the other Party may submit a Reply.

120. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by Illinois EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by any Settling Defendant regarding the validity of the ROD's provisions.

a. An administrative record of the dispute shall be maintained by Illinois EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, Illinois EPA may allow submission of supplemental statements of position by the Parties to the dispute.

b. The Illinois EPA will issue a final administrative

decision resolving the dispute based on the administrative record described in Paragraph 120.a. within forty-five (45) days after the twenty-day negotiation period ends and explain the basis for the decision. This decision shall be binding upon the Parties to the dispute, subject only to the right to seek judicial review pursuant to Paragraph 120.c. and d.

c. Any administrative decision made by Illinois EPA pursuant to Paragraph 120.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the other Party to the dispute with the Court and served on all Parties within ten (10) days of receipt of Illinois EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The State may file a response to the other Party's motion.

d. In proceedings on any dispute governed by this Paragraph, the other Party shall have the burden of demonstrating that the decision of the Illinois EPA is arbitrary and capricious or otherwise not in accordance with law. Judicial review of Illinois EPA's decision shall be on the administrative record compiled pursuant to Paragraph 120.a.

121. The invocation of formal dispute resolution procedures

under this Section shall not extend, postpone or affect in any way any obligation of BFINA under this Consent Decree, not directly in dispute, unless the State or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 130. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that BFINA does not prevail on a disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX. **STIPULATED PENALTIES**

122. BFINA shall be liable for stipulated penalties in the amounts set forth in Paragraphs 123 and 124 to the State for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure). "Compliance" by BFINA shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by Illinois EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

123. The following stipulated penalties shall accrue per violation per day for any noncompliance with Paragraphs 60, 61, 82, 94, 102 and 1023.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| Days 1 through 14 | $250.00 per violation |
| Days 15 through 30 | $500.00 per violation |
| Days 31 through 45 | $750.00 per violation |
| Days 46 and beyond | $1000.00 per violation |

124. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other written documents pursuant to Paragraphs 62, 63 80, 81, 83, 88, 92 and 160.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| Days 1 through 14 | $250.00 per violation |
| Days 15 through 29 | $500.00 per violation |
| Days 30 and beyond | $1000.00 per violation |

125. In the event that Illinois EPA assumes performance of a portion or all of the Work pursuant to Paragraph 138̲9̲ of Section XXI (Covenants Not to Sue by Plaintiff), BFINA shall be liable for a stipulated penalty in the amount of $150,000.00

126. All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and

shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties shall not accrue: (1) with respect to a deficient submission under Section XI (Illinois EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after Illinois EPA's receipt of such submission until the date that Illinois EPA notifies BFINA of any deficiency; (2) with respect to a decision by the Illinois EPA under Section XIX (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that BFINA replies to Illinois EPA's Statement of Position is received until the date that the Illinois EPA issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

127. Following Illinois EPA's determination that BFINA has failed to comply with a requirement of this Consent Decree, Illinois EPA may give BFINA written notification of the same and describe the noncompliance. Illinois EPA may send BFINA a written

demand for the payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether Illinois EPA has notified BFINA of a violation.

128. All penalties accruing under this Section shall be due and payable to the State within thirty (30) days of BFINA's receipt from Illinois EPA of a demand for payment of the penalties, unless BFINA invokes the Dispute Resolution procedures under Section XIX (Dispute Resolution). All payments to the State under this Section shall be paid by certified check(s) made payable to "Illinois Environmental Protection Agency" for deposit in the "Environmental Protection Trust Fund". BFINA should mail all payments to:

Manager, Fiscal Services
Illinois Environmental Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

BFINA shall provide the case name and number on the face of the check. Copies of check(s) paid pursuant to this Section, and any accompanying transmittal letter(s), shall be sent to the State as provided in Section XXVI (Notices and Submissions).

129. The payment of penalties shall not alter in any way BFINA's obligation to complete the performance of the Work required under this Consent Decree.

130. Penalties shall continue to accrue as provided in Paragraph 126 during any dispute resolution period, but need not be

paid until the following:

a.    If the dispute is resolved by agreement or by a decision of Illinois EPA that is not appealed to this Court, accrued penalties determined shall be paid to Illinois EPA within fifteen (15) days of the agreement or the receipt of Illinois EPA's decision or order;

b.    If the dispute is appealed to this Court and the State prevails in whole or in part, BFINA shall pay all accrued penalties determined by the Court to be owed to Illinois EPA within sixty (60) days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

c.    If the District Court's decision is appealed by any Party, BFINA shall pay all accrued penalties determined by the District Court to be owing to the State into an interest-bearing escrow account within sixty (60) days of receipt of the Court's decision or order.    Penalties shall be paid into this account as they continue to accrue, at least every sixty (60) days.    Within fifteen (15) days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to Illinois EPA or to BFINA to the extent that BFINA prevails, as required by the District Court's Order.

131. a.    If BFINA fails to pay stipulated penalties when due, the State may institute proceedings to collect the penalties, as

well as interest. BFINA shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 128, at the rate established in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

b.    Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the State to seek from BFINA any other remedies or sanctions available by virtue of BFINA's violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA.  Provided, however, that the State shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

132. Notwithstanding any other provision of this Section, the State may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

### XXI.    COVENANTS NOT TO SUE BY PLAINTIFF

133. Covenants Not to Sue BFINA.   In consideration of the actions that will be performed and the payments that will be made by BFINA under the terms of the Consent Decree, and except as specifically provided in Paragraphs 134, 135, and 137 of this

Section, the State covenants not to sue or to take administrative action against BFINA pursuant to Sections 106 or 107(a) of CERCLA, Section 7003 of RCRA and the Act for performance of the Work and the recovery of Past Response Costs and Future Response Costs, relating to the Site. Except with respect to future liability for BFINA, these covenants not to sue shall take effect upon the receipt by Illinois EPA of the payment required by Paragraph 102 of Section XVI (Reimbursement of Response Costs and Settlement Payments by Other Settling Defendants). With respect to future liability for BFINA, these covenants not to sue shall take effect upon Certification of Completion of Remedial Action by Illinois EPA pursuant to Paragraph 98.b of Section XIV (Certification of Completion). These covenants not to sue are conditioned upon the satisfactory performance by BFINA of its obligations under this Consent Decree. These covenants not to sue extend only to BFINA and do not extend to any other person.

134. State's Pre-certification reservations. With respect to BFINA, notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the State's right to institute proceedings in this action or in a new action, or to take administrative action seeking to compel BFINA (1) to perform further response actions relating to the Site or (2) to reimburse the State for additional costs of response if,

prior to Certification of Completion of the Remedial Action:

> (i)  conditions at the Site, previously unknown to
>
> Illinois EPA, are discovered, or
>
> (ii) information, previously unknown to Illinois EPA,
>
> is received, in whole or in part,

and these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

135. State's Post-certification reservations. With respect to BFINA, notwithstanding any other provision of this Consent Decree, the State reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to take administrative action seeking to compel BFINA (1) to perform further response actions relating to the Site or (2) to reimburse the State for additional costs of response if, subsequent to Certification of Completion of the Remedial Action:

> (i)  conditions at the Site, previously unknown to
>
> Illinois EPA, are discovered, or
>
> (ii) information, previously unknown to Illinois EPA,
>
> is received, in whole or in part, and these
>
> previously unknown conditions or this information
>
> together with other relevant information indicate
>
> that the Remedial Action is not protective of

human health or the environment.

136. For purposes of Paragraph 134, the information and the conditions known to Illinois EPA shall include only that information and those conditions known to Illinois EPA as of the date the ROD was signed and set forth in the Record of Decision for the Site and the administrative record supporting the Record of Decision. For purposes of Paragraph 135, the information and the conditions known to Illinois EPA shall include only that information and those conditions known to Illinois EPA as of the date of Certification of Completion of the Remedial Action and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-ROD administrative record, or in any information received by Illinois EPA pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

137. <u>General reservations of rights</u>.

<u>BFINA</u>. The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraph 133. The State reserves, and this Consent Decree is without prejudice to, all rights against BFINA with respect to all other matters, including but not limited to, the following:

a. claims based on a failure by BFINA to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site;

c. liability for future disposal of Waste Material at the Site, other than as provided in the ROD, the Work, or otherwise ordered by Illinois EPA;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e. criminal liability;

f. liability for violations of federal or state law which occur during or after implementation of the Remedial Action; and

g. liability, prior to Certification of Completion of the Remedial Action, for additional response actions that Illinois EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 65 (Modification of the SOW or Related Work Plans).

Except as provided in Paragraph 146, BFINA reserves all rights, defenses, and objections to the matters contained in Subparagraphs a. through g. above.

138. Covenants Not to Sue Other Settling Defendants.

a. Except for those claims reserved in Subparagraph (b)

below, the State releases and covenants not to sue or to take any other civil or administrative action against Cashout Generator Settling Defendants, Municipal Settling Defendants, Owner Settling Defendants, and Covenant Beneficiary Settling Defendants, pursuant to Sections 106 or 107 of CERCLA or Section 7003 of RCRA or the Act relating to the Site. These covenants not to sue shall take effect with respect to any individual Cashout Generator Settling Defendant and Municipal Settling Defendant upon the payment to the Trust Funds pursuant to Paragraph 106 and Appendices D and F, by that Settling Defendant, or the effective date of this Consent Decree, whichever is later. These covenants not to sue shall take effect with respect to the Owner Settling Defendants upon their full compliance with the requirements of Paragraphs 60 and 78 and payment to BFINA under Paragraph 106 whichever is later. These covenants not to sue shall take effect with respect to any individual Covenant Beneficiary Settling Defendant upon written approval from the State of its addition to this Consent Decree, pursuant to Paragraph 106.d. These covenants not to sue extend only to Cashout Generator Settling Defendants, Municipal Settling Defendants, Owner Settling Defendants and Covenant Beneficiary Settling Defendants and do not extend to any other person.

      b.    Reservation of Rights. Notwithstanding any other provision of this Consent Decree, the State reserves, and this

Consent Decree is without prejudice to, all rights against each Cashout Generator Settling Defendant, Municipal Settling Defendant, Owner Settling Defendant, and Covenant Beneficiary Settling Defendant with respect to all other matters, including but not limited to, the following:

(i) failure by a Settling Defendant to make timely payments to BFINA as required in Paragraph 105 of this Consent Decree;

(ii) liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials by a Settling Defendant at any location that is outside of the Site;

(iii) liability for future disposal of Waste Material at the Site by a Settling Defendant;

(iv) liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

(v) criminal liability; and

(vi) liability for violations of federal or state law which occur during or after implementation of the Remedial Action.

c. Except as provided in Paragraph 146, Cashout Generator Settling Defendants, Owner Settling Defendants, Municipal

Settling Defendants, and Covenant Beneficiary Settling Defendants reserve all rights, defenses, and objections to the matters contained in Subparagraphs (i) through (vi) above.

139. <u>Work Takeover</u>. In the event Illinois EPA determines that BFINA has ceased implementation of any portion of the Work, is seriously or repeatedly deficient or late in their performance of the Work, or is implementing the Work in a manner which may cause an endangerment to human health or the environment, Illinois EPA may assume the performance of all or any portions of the Work as Illinois EPA determines necessary. BFINA may invoke the procedures set forth in Section XIX (Dispute Resolution), to dispute Illinois EPA's determination that takeover of the Work is warranted under this Paragraph. Costs incurred by the Illinois EPA in performing the Work pursuant to this Paragraph shall be considered Future Response Costs that BFINA shall pay pursuant to Section XVI (Reimbursement of Response Costs).

140. Notwithstanding any other provision of this Consent Decree, the State retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXII. <u>COVENANTS BY SETTLING DEFENDANTS</u>

141. <u>Covenant Not to Sue the State</u>. Subject to the reservations in Paragraph 137, 138.b, and 142, Settling Defendants

hereby covenant not to sue and agree not to assert any claims or causes of action against the State with respect to the Site and Past and Future Response Costs as defined herein or this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from any State Fund or any other provision of law;

b. any claims against the State, including any department, agency or instrumentality of the State under CERCLA Sections 107 or 113 related to the Site, but not including those generator PRPs listed in Appendix J; or

c. any claims arising out of response activities at the Site, including claims based on Illinois EPA's selection of response actions, oversight of response activities or approval of plans for such activities.

142. The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the State, based on negligent action taken directly by the State (not including oversight or approval of BFINA plans or activities). Such reservation applies only to claims pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

143. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of

Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

144. <u>Covenants Between Settling Defendants</u>.

a. BFINA, Owner Settling Defendants, Municipal Settling Defendants, Cashout Generator Settling Defendants and Covenant Beneficiary Settling Defendants hereby release and covenant not to sue and agree not to assert any claims or causes of action against each other with respect to the Site or this Consent Decree, including, but not limited to, any direct or indirect claim for reimbursement or indemnification through CERCLA Sections 107 and 113 or any other provision of law, or any claims arising out of response activities at the Site. The Settling Defendants reserve, and this Consent Decree is without prejudice to, any claims, actions or defenses against parties who have failed to comply with their obligations under this Consent Decree or with their obligations in the several settlement agreements entered into between the Settling Defendants to resolve the matters addressed in this Consent Decree.

b. Notwithstanding any provision to the contrary contained herein, any Cashout Generator Settling Defendant that becomes the recipient of administrative orders, demands, other claims or legal actions by U.S. EPA or other agency of the United States related to the Site reserves, and this Consent Decree is without prejudice to, any and all rights to assert a claim and/or

maintain an action, including, but not limited to, an action for contribution pursuant to CERCLA §113, 42 U.S.C. 9613, that such Cashout Generator Settling Defendant may have against any other Cashout Generator Settling Defendant that also becomes the recipient of such or a similar order, demand, claim or action. Further, any Cashout Generator Settling Defendant against which a claim has been asserted or an action has been maintained by another Cashout Generator Settling Defendant pursuant to the provisions of the preceding sentence shall have the right to assert any and all defenses to such claim or action other than the defense that this Consent Decree bars or precludes a contribution claim by reason of 42 U.S.C. 9613(f)(2).

c.  Notwithstanding any provision to the contrary contained herein and as between DaimlerChrysler Corporation ("DCC") and BFINA only, this Consent Decree is without prejudice to any and all claims and causes of action which are the subject matter of *DaimlerChrysler Corporation v. BFI Waste Systems of North America, Inc.*, Case No. 2002-L-17, Circuit Court of the Seventeenth Judicial Circuit, Boone County, Illinois arising under contract including, but not limited to breach of contract, breach of warranty, and contractual indemnification concerning or relating to the Site.

### XXIII.  EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

145. Nothing in this Consent Decree shall be construed to

create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this decree may have under applicable law. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

146. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the effective date of this Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) and the Act for matters addressed in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken by the State, all respondents to AOC1 and AOC2, BFINA, all other Settling Defendants, and by all other entities who are not Parties to this Consent Decree; and all response costs at the Site incurred and to be incurred by the State, all respondents to AOC1 and AOC2, BFINA, all other Settling Defendants, and by all other entities who are not parties to this Consent Decree; and all fees, costs and expenses of attorneys, agents, consultants, assigns, or other

representatives of the State, all respondents to AOC1 and AOC2, BFINA, all other Settling Defendants, and by all other entities who are not parties to this Consent Decree, whether or not they are deemed to be response costs. However, "matters addressed" expressly does not include any and all claims and/or actions of Cashout Generator Settling Defendants and defenses thereto, as are provided by, and as are limited in, Paragraph 144.b and claims and/or actions between DCC and BFINA as provided in Paragraph 144.c.

147. The Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the State in writing no later than sixty (60) days prior to the initiation of such suit or claim.

148. The Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the State within ten (10) days of service of the complaint on them. In addition, Settling Defendants shall notify the State within ten (10) days of service or receipt of any Motion for Summary Judgment and within ten (10) days of receipt of any order from a court setting a case for trial.

149. In any subsequent administrative or judicial proceeding initiated by the State for injunctive relief, recovery of response

costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, <u>res</u> <u>judicata</u>, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants Not to Sue by Plaintiff).

## XXIV. <u>ACCESS TO INFORMATION</u>

150. BFINA shall provide to Illinois EPA, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work. BFINA shall also make available to Illinois EPA, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

151. a. Settling Defendants may assert business confidentiality claims covering part or all of the documents or

information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with 2 Ill. Adm. Code 1828. Public records determined to be confidential under 2 Ill. Adm. Code 1828, will be afforded the protection specified therein. If the requirements in 2 Ill. Adm. Code 1828.401, have not been met when the public records are submitted to the Illinois EPA, or Illinois EPA has notified the Settling Defendants that the public records are not confidential under 2 Ill. Adm. Code 1828.402 and 1828.403, the public may be given access to such public records, subject to appeal rights found in 2 Ill. Adm. Code 1828.405.

b. The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by state or federal law. If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Illinois EPA with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendants. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent

Decree shall be withheld on the grounds that they are privileged.

152. No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXV.  RETENTION OF RECORDS

153. Until ten (10) years after the Settling Defendants' receipt of Illinois EPA's notification pursuant to Paragraph 98.b. of Section XIV (Certification of Completion), BFINA shall preserve and retain all records and documents now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work or liability of any person for response actions conducted and to be conducted at the Site, regardless of any corporate retention policy to the contrary. Until ten (10) years after BFINA's receipt of Illinois EPA's notification pursuant to Paragraph 98.b. of Section XIV (Certification of Completion), BFINA shall also instruct its contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the Work.

154. At the conclusion of this document retention period, BFINA shall notify the Illinois EPA at least ninety (90) days prior

to the destruction of any such records or documents, and, upon request by the Illinois EPA, BFINA shall deliver any such records or documents to Illinois EPA. BFINA may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If BFINA asserts such a privilege, it shall provide the Plaintiffs with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by BFINA. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

155. Each Settling Defendant hereby certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information relating to its potential liability regarding the Site since notification of potential liability by the United States or the State of Illinois or the filing of suit against it regarding the Site and that it has fully complied with any and all U.S. EPA

requests for information pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, or requests from the Illinois EPA.

## XXVI.  NOTICES AND SUBMISSIONS

156. Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree.  Notice needs to be given to Cashout Generator Settling Defendants and Owner Settling Defendants, only of the following:

(a) Certification of Completion of the Site Work pursuant to Section XIV (Certification of Completion);

(b) Notice of a dispute pursuant to Section XIX (Dispute Resolution);

(c) Selection of further response actions pursuant to Paragraph 69;

(d) Determination that the financial assurances of ability to complete the Site Work are inadequate pursuant to

Section XIII (Assurance of Ability to Complete Work); or

(e) Modification to the amount or form of financial assurances of ability to complete the Work pursuant to Paragraphs 95 or 96.

Notice need not be given to Municipal Settling Defendants or Covenant Beneficiary Settling Defendants unless their respective interests are specifically implicated. In such case, notice shall be sent to the interested parties.

**As to the Illinois Environmental Protection Agency:**

Rick Lanham
Project Manager
National Priorities List Unit
Federal Site Remediation Section
Illinois Environmental
Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276

Paul Jagiello
Division of Legal Counsel
Illinois Environmental
Protection Agency
9511 West Harrison Street
Des Plaines, Illinois 60016

**As to the State of Illinois:**

Gerald T. Karr
Senior Assistant Attorney General
Environmental Bureau
188 West Randolph Street, 20th Floor
Chicago, Illinois 60601

As to BFINA:

Eric Ballenger
BFINA's Project Coordinator
Allied Waste Industries, Inc.
26 W. 580 Schick Road
Hanover Park, Illinois 60133

Gary D. Justis
Attorney for BFINA
Lathrop & Gage
10851 Mastin Blvd.
Suite 1000
Overland Park, Kansas 66210


As to Cashout Generator Settling Defendants:

Steven C. Kohl, Esq.
Warner, Norcross & Judd LLP
2000 Town Center
Suite 2700
Southfield, MI 48075-1318

John L. Greenthal
Nixon Peabody LLP
Omni Plaza
30 South Pearl Street
Albany, NY 12207


Kathleen McFadden
United Technologies Corporation
Office of the General Counsel
One Financial Plaza, M/S 524-Legal
Hartford, CT 06102


As to Owner Settling Defendants:

Jeffrey R. Diver
The Jeff Diver Group
1749 S. Naperville Road
Suite 102
Wheaton, Illinois 60187


As to U.S. EPA

Richard Clarizio
Associate Regional Counsel
U.S. EPA
77 West Jackson Boulevard
C-14J
Chicago, Illinois 60604

## XXVII.  EFFECTIVE DATE

157. The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVIII.  RETENTION OF JURISDICTION

158. This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution) hereof. The Court's retention of jurisdiction includes, but is not limited to, any claim by a Cashout Generator Settling Defendant that costs incurred by BFINA to complete the Work that are paid from any trust fund established pursuant to the Trust Agreement, Appendix G hereto, are not consistent with the terms of this Consent Decree. Upon a finding by the Court that such costs are inconsistent with the Work as required by this Consent Decree, the Court may order BFINA to repay those costs into the Trust Fund or take such other action as the Court may deem appropriate.

## XXIX.  APPENDICES

159. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is the description and/or map of the Site.

"Appendix D" is the complete list of the Cashout Generator Settling Defendants.

"Appendix E" is the complete list of the Owner Settling Defendants.

"Appendix F" is the complete list of the Municipal Settling Defendants.

"Appendix G" is the MIG/DeWane Landfill Superfund Site Trust Agreement.

"Appendix H" is the Covenant Beneficiary Form.

"Appendix I" is the Access and Use Restriction Agreement between the MIG/DeWane Landfill Task Force (including BFINA) and the Owner Settling Defendants.

"Appendix J" is the list of State entities who are generator PRPs at the Site, and who are excluded from Settling Defendants' Covenants Not to Sue in Paragraph 141.

## XXX.  COMMUNITY RELATIONS

160. Within sixty (60) days of the entry of this Consent Decree, BFINA shall propose, in writing, to Illinois EPA the extent of their participation in the community relations plan. Illinois

EPA will determine the appropriate role for BFINA under the Plan. BFINA shall also cooperate with Illinois EPA in providing information regarding the Work to the public. As requested by Illinois EPA, BFINA shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by Illinois EPA to explain activities at or relating to the Site.

## XXXI. MODIFICATION

161. Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of Illinois EPA and BFINA. All such modifications shall be made in writing.

162. Except as provided in Paragraph 65 ("Modification of the SOW or Related Work Plans"), no material modifications shall be made to the SOW without written notification to and written approval of the Plaintiff, BFINA, and the Court. Modifications to the SOW that do not materially alter that document may be made by written agreement between Illinois EPA and BFINA.

163. Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

164. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment. The Plaintiff reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

165. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXIII.   SIGNATORIES/SERVICE

166. The undersigned representative for each of the Parties to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

167. Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the Plaintiff has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

168. Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

SO ORDERED THIS _____ DAY OF _____, 2006.


_____
United States District Judge

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of People of the State of Illinois v. BFI Waste Systems of North America, Inc., et al. relating to the MIG/DeWane Landfill Superfund Site.

PEOPLE OF THE
STATE OF ILLINOIS

ex rel. Lisa Madigan
Attorney General of
State of Illinois

Matthew J. Dunn, Chief
Environmental Enforcement/
Asbestos Litigation Division

Date: 8/5/05          By: RoseMarie Cazeau, Chief
                          Assistant Attorney General
                          Environmental Bureau

ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

Date: August 1, 2005    By: William D. Ingersoll
                            Acting Chief
                            Legal Counsel
                            Division of Legal Counsel