4. Discuss any appropriate modifications of the approved construction quality assurance plan to ensure that Site-specific considerations are addressed;

5. Conduct a Site walk-around to verify that design criteria, plans, and specifications are understood and to review material and equipment storage locations; and

6. Identify and resolve potential problems with implementation of the approved design documents.

The preconstruction inspection and meeting shall be documented by the Illinois EPA and minutes shall be transmitted to all parties attending the inspection and meeting. This inspection and meeting will include the Illinois EPA's Project Manager or his or her designated representative, the PRPs' project coordinator or his or her designated representative and the RA Contractor(s).

## 8.4    Task 4 - RA Construction and Related Activities

The Settling Defendants/PRPs' Consultant(s) shall implement the RA as detailed in the approved Final Design. The following activities shall be completed in constructing the RA.

1. A landfill gas management program;
2. Institutional controls, access restrictions and deed restrictions;
3. Storm water management/surface water diversion system;
4. Closure of the leachate surface impoundment;
5. Leachate collection and management system;
6. Groundwater remediation and management (monitored natural attenuation); and
7. A multi-layer landfill cap.

### 8.4.1    Administrative Documents

This subtask involves the finalization of the QAPP and HSP. The Illinois EPA shall ensure the RA-QAPP and HSP submitted with the 100% design package are updated by the RA Contractor(s) resulting in Final Construction QAPP ("CQAPP") and HSP. The Final CQAPP and Final HSP shall be submitted to the Illinois EPA for approval prior to initiation of construction activities.

### 8.4.2    Construction Activities

This subtask involves actual construction activities at the Site. The Illinois EPA shall require the RA Contractor(s) to provide a schedule and details for each construction activity (e.g., mobilization, excavation, backfilling, demolition of structures, sampling, etc.). Also, the PRPs must submit for the Illinois EPA's review and approval information on the RA Contractor(s) to be used in the RA phase of the project.

## 8.5    Task 5 - Oversight of Construction Activities

The PRPs and their RA Contractor(s) shall be directly responsible for providing day-to-day on-Site management of the Site work and other RA Contractor(s). In addition, the PRPs or their consultant(s)

shall conduct periodic on-Site inspections to observe and monitor the RA construction activities. These inspections will be done in accordance with the scope and frequency specified in the Final CQAPP. The inspections shall verify compliance with the approved plans and specifications, the Final RA Work Plan, the Final QAPP, and the Final HSP.

General duties of the PRPs and/or their consultant(s) shall include at a minimum the following:

1.  interpreting the Site plans and specifications;
2.  interpreting the impact on the approved design of any proposed changes and preparing sketches and/or revised drawings in a timely manner to aid in the preparation of construction contract modifications;
3.  resolving design problems associated with interpretation of contract plans and specifications;
4.  documenting any field decisions during construction that result in design changes;
5.  overseeing Site start-up testing and shake-down; and
6.  verifying compliance with all environmental requirements.

## 8.6    Task 6 - Prefinal Construction Conference and Prefinal Inspection

Upon preliminary project completion, the RA Contractor(s) shall establish with the Illinois EPA a date for conducting a prefinal construction conference and a prefinal inspection. The purpose of the prefinal construction conference will be to discuss and outline procedures and requirements for project closeout. The prefinal inspection shall consist of a walk-through inspection of the entire Site. The purpose of this inspection is to determine if the project is complete and consistent with the contract documents and the approved RA work. Any outstanding RA work discovered during the inspection shall be identified and noted. The PRPs shall prepare and submit to Illinois EPA for approval a prefinal inspection report containing the following items:

1.  a punch list of incomplete construction items;
2.  a description of actions required to resolve each incomplete construction item;
3.  a completion date for each incomplete construction item; and
4.  a tentative date for a final inspection.

## 8.7    Task 7 - Preliminary/Interim Closeout Report Assistance

After receipt of the Illinois EPA's approval on the prefinal inspection report, the RA Contractor(s) shall prepare and submit to Illinois EPA any necessary documentation and provide any related assistance for the Illinois EPA's developing a Preliminary Closeout Report ("PCOR").

## 8.8    Task 8 - Final Inspection

After completion of any work identified in the prefinal inspection report, the PRPs/RA Contractor(s) shall notify the Illinois EPA after completion of any outstanding construction items identified in the pre-final inspection for purposes of scheduling a final inspection. The final inspection shall consist

of walk-through inspection of the Site by the Illinois EPA and the PRPs or their consultant(s). The prefinal inspection report shall be used during the final inspection to confirm that all outstanding construction items have been resolved. Confirmation shall be made that outstanding items have been resolved.

## Final Construction Report

Within 60 days of a successful final inspection, the PRPs/RA Contractor(s) shall submit a Construction Completion Report. In the report, a registered professional engineer and the PRPs' Project Coordinator shall state that the RA has been constructed in accordance with the design and specifications. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of the PRP or the PRPs' Project Coordinator:

> "To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

### 8.9    Task 9 - Project Closeout

## Remedial Action Completion Report

The PRPs/RA Contractor(s) shall submit to the Illinois EPA a RA Completion Report upon completion of all construction activities associated with the RA. This report shall document that the project was completed consistent with the design specifications and that RA work meets all performance standards and achieved all cleanup standards. In the report, a registered professional engineer and the PRPs' Project Coordinator shall state the RA has been completed in full satisfaction of the requirements of the CD. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of the PRPs' Project Coordinator:

> "To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

The report shall include, but not be limited to the following elements:

1.    Synopsis of the RA work and certification of the design and construction;
2.    Summary of any approved modifications to the plans and specifications;
3.    Summary of the operation and maintenance to be under taken at the Site;
4.    All as-built drawings; and
5.    Data demonstrating that cleanup and Performance Standards have been met.

This report shall be prepared and certified as true and accurate by a registered professional engineer. The report shall be developed consistent with **Superfund Remedial Design and Remedial Guidance (OSWER Dir. 9355.0-4A).**

The PRPs/RA Contractor(s) shall revise the report upon receipt of the Illinois EPA comments and submit a Final RA Report.

## 9.0    LONG-TERM O&M

The PRPs/RA Contractor(s) will perform long-term O&M as defined in approved specific O&M Plan, specifications, and schedules. The initial O&M Plan will be developed during the RD, revised as necessary during the RA, and revised further, if necessary, as determined by circumstances over time.

### Operation & Maintenance Plan

The RA Contractor shall prepare an O&M Plan to cover both implementation and long-term maintenance and monitoring of the RA. An initial draft O&M Plan shall be submitted as a final Design Document submission. The final O&M Plan shall be submitted to the Illinois EPA prior to the pre-final construction inspection, in accordance with the approved construction schedule. The O&M Plan shall be composed of the following elements:

1.    Description of normal O&M:
    a.    Description of tasks for operation;
    b.    Description of tasks for maintenance;
    c.    Description of prescribed treatment or operation conditions; and
    d.    Schedule showing frequency of each O&M task.

2.    Description of potential operating problems:
    a.    Description and analysis of potential operation problems;
    b.    Sources of information regarding problems; and
    c.    Common and/or anticipated remedies.

3.    Description of routine monitoring and laboratory testing:
    a.    Description of monitoring tasks;
    b.    Description of required data collection, laboratory tests and their interpretation;
    c.    Required quality assurance, and quality control;
    d.    Schedule of monitoring frequency and procedures for a petition to Illinois EPA to reduce the frequency of or discontinue monitoring; and
    e.    Description of verification sampling procedures if Cleanup or Performance Standards are exceeded in routine sampling.

4.    Description of alternative O&M:

a. Should systems fail, alternative procedures to prevent release or threatened releases of hazardous substances, pollutants or contaminants which may endanger public health and the environment or exceed performance standards; and

b. Analysis of vulnerability and additional resource requirement should a failure occur.

5. Corrective Action:
   a. Description of corrective action to be implemented in the event that clean-up or performance standards are not met; and
   b. Schedule for implementing these corrective actions.

6. Safety:
   a. Description of precautions, of necessary equipment, etc., for Site personnel; and
   b. Safety tasks required in event of systems failure.

7. Description of equipment:
   a. Equipment identification;
   b. Installation of monitoring components;
   c. Maintenance of Site equipment; and
   d. Replacement schedule for equipment and installed components.

8. Records and reporting mechanisms required:
   a. Daily operating logs;
   b. Laboratory records;
   c. Records for operating costs;
   d. Mechanism for reporting emergencies;
   e. Personnel and maintenance records; and
   f. Monthly/annual reports to the Illinois EPA.

# APPENDIX C



KISHWAUKEE RIVER

INTERMITTENT
DRAINAGE
CHANNELS

CHICAGO

AND

NORTHWESTERN

RR.

MIG/DEWANE
LANDFILL

INACTIVE GAS
COLLECTION SYSTEM

SURFACE
IMPOUNDMENT

INFERRED EDGE OF LANDFILL

BORROW PIT

AGRICUL TURAL
TILE DISCHARGE
LOCATION
(A.K.A. SPRING
LOCATION)

STREAM

INTERMITTENT
STREAM

DEWANE'S
AUCTION BARN

HICK'S GAS

ACCESS
GATE

FARM &
FLEET

175

SCALE IN FEET

0    200   400        800

7



**APPENDIX D**

# EXHIBIT D

## CASHOUT GENERATOR SETTLING DEFENDANTS

| Cashout Generator Settling Defendant | Buyout Amount ($) |
|---|---|
| Amerock division of Newell Operating Company (sub. of Newell Rubbermaid Inc.); Apache Products Company (Apache Building Prod.); The Arnold Engineering Company; Beatrice Company; Wright & Wagner Dairy; CherryVale Shopping Center (C.V. Investments) (JG Cherryvale Ltd.) (Jacobs Realty Investors Limited Partnership) (The Richard E. Jacobs Group, Inc.) (Jacobs Group Management Co., Inc.); Cub Food Stores (SuperValu Inc., f/k/a SuperValu Stores, Inc., d/b/a Cub Foods); DaimlerChrysler Corporation (f/k/a Chrysler Corporation); Dana Corporation (Warner Electric Brake & Clutch); Dell Foods (Kerry Inc.); Enzyme Bio-Systems, Ltd.; Hilander Foods; Hormel Foods Corporation (George A. Hormel & Company); Illinois Water Treatment, Inc. n/k/a Process Water Systems, Inc.; Invensys, PLC, including its subsidiary known as Invensys Building Systems, Inc., and the entities known as Barber-Colman Co., and Siebe North, Inc. (North Health Care); Kmart Corporation (K-Mart Corporation); Logli Food Stores (Schnuck Markets, Inc., d/b/a Logli Supermarkets); Lucky Stores, Inc. (Albertson's, Inc.); Marengo Disposal; Millmaster Onyx Group, L.P.; Pepsi-Cola General Bottlers, Inc.; Ponderosa Steak House (Metromedia Restaurant Group) (Metromedia Steakhouses Company, LP); Seneca Foods Corporation; Simon Property Group, L.P. on its own behalf and for Simon Property Group (Illinois), L.P.; Sonoco Products Company; Stateline Foundries (State Line Foundries, Inc.); Sugar Tree Products (International Ingredient Corporation f/k/a Sugar Tree Products); Taylor Freezer Company (Carrier Commercial Refrigeration, Inc.) (Beatrice Company); Textron Inc.; Camcar; Greenlee Tool; Ex-Cell-O Manufacturing; Sems Corporation; Twin Disc, Incorporated; Universal Foods Corporation (n/k/a Sensient Technologies Corporation); Valspar Corporation (McWhorter Inc.); Varco-Pruden (SPX Corporation, f/k/a United Dominion Industries, Inc., d/b/a Varco-Pruden); Warner-Lambert Company, a wholly-owned subsidiary of Pfizer Inc.; Wisconsin Power and Light Company (an Alliant Energy company);W.R. Meadows, Inc. | 6,978,139 |
| United Technologies Corporation | 149,680 |
| Ecolab, Inc. | 117,155 |
| UDL Laboratories, Inc. | 113,730 |
| Continental Envelope Corp. | 108,043 |
| Atwood Mobile Products | 92,420 |
| Chemtura Corporation | 86,270 |
| Eclipse, Inc. | 76,615 |

| Cashout Generator Settling Defendant | Buyout Amount ($) |
|---|---|
| Atwood CTP, Inc. | 70,000 |
| Beloit Memorial Hospital | 67,408 |
| Benson Pump Company | 64,013 |
| Hondo, Inc., d/b/a Coca-Cola Bottling Co., Inc. | 59,950 |
| J.W.L. Plaza d/b/a Elgin West Truck Stop | 55,760 |
| Wisconsin Knife Works, Inc. | 51,680 |
| Toys R Us | 48,530 |
| D&M Plastics Corp. | 45,800 |
| Rockford Systems, Inc. | 43,710 |
| Pierce Biotechnology, Inc. | 39,290 |
| Control Panels, Inc. | 38,930 |
| Bodycote Thermal Processing, Inc. | 37,810 |
| Nelson Piping Co. | 37,650 |
| Earl Scheib, Inc. | 35,910 |
| Pacific Scientific Co. | 35,560 |
| Peterson Kruse, Inc. | 32,950 |
| Tamms Industries | 32,680 |
| The Sherwin-Williams Co. | 31,825 |
| Material Service Corporation, a General Dynamics Corporation | 30,860 |
| The Goodyear Tire & Rubber Co. | 30,590 |
| North American Tool Corp. | 29,270 |
| Crescent Electric Supply Co. | 29,160 |
| Reliable Machine Co. | 29,155 |
| Dixon Automatic Tool, Inc. | 28,000 |
| Anderson Packaging, Inc. | 25,000 |
| Rockford Ball Screw Co. | 25,000 |
| Sjostrom & Sons, Inc. | 20,000 |
| Three Hammer Construction Co. | 20,000 |
| Mid-States Concrete Products Co. | 20,000 |
| The Gates Corporation | 16,181 |

| Cashout Generator Settling Defendant | Buyout Amount ($) |
|---|---|
| Jonco Tool, Inc. | 15,000 |
| Tang Industries, Inc., on behalf of Wilmar Processing and Beloit Power Systems | 0 |

# APPENDIX E

# APPENDIX E

## OWNER SETTLING DEFENDANTS

The term "Owner Settling Defendants" means Raymond E. DeWane, Audrey DeWane, Benjamin Farina and Jean Farina, in whatever legal capacity, including, but not limited to, as individuals, as partners of the Bonus Landfill Company, or as beneficiaries of land trusts, and their respective heirs, beneficiaries, successors, assigns, agents, representatives and insurers; and LAE, Inc., an Illinois corporation, its successors, assigns and insurers, and its present and former officers, shareholders, directors, employees and representatives.

# APPENDIX F

**EXHIBIT F**

**MUNICIPAL SETTLING DEFENDANTS**

| Municipal Settling Defendant | Buyout Amount ($) |
|---|---|
| City of Beloit, Wisconsin | 300,000 |
| Rockford School District No. 205, Winnebago-Boone Counties, Illinois | 93,000 |
| City of Evansville, Wisconsin | 45,000 |
| Village of Rockton, Illinois | 35,000 |
| Village of Hampshire, Illinois | 35,000 |
| City of South Beloit, Illinois | 30,000 |
| Village of Orfordville, Wisconsin | 30,000 |
| Village of Roscoe, Illinois | 25,000 |
| City of Rockford, Illinois, a Municipal Corporation (including Rockford Public Library); Rockford Housing Authority; Rock River Water Reclamation District | 25,000 |
| City of Genoa, Illinois | 23,000 |
| Village of Footville, Wisconsin | 19,800 |
| City of Harvard, Illinois | 15,000 |
| Village of Machesney Park, Illinois | 10,000 |
| Vilage of Kingston, Illinois | 5,000 |



**APPENDIX G**

**MIG/DEWANE LANDFILL SUPERFUND SITE**

**IRS 468B QUALIFIED SETTLEMENT TRUST FUND AGREEMENT**

APPENDIX G TO

MIG/DEWANE LANDFILL SITE

REMEDIAL DESIGN/REMEDIAL ACTION CONSENT DECREE

# IRS 468B QUALIFIED SETTLEMENT MIG/DEWANE LANDFILL SUPERFUND SITE TRUST FUND AGREEMENT

## TABLE OF CONTENTS

1.    Definitions ............................................................................................................4

2.    Name, Purpose of the Trust and Acceptance of the Trust .......................................6

3.    Contributions to the Trust Funds ...........................................................................7
3.1.   Initial Payments by Grantors ..................................................................................7
3.2.   Nature of Contributions by Grantors ......................................................................8
3.3.   No Transferability of Interest .................................................................................8

4.    Dispositive Provisions ............................................................................................8
4.1.   Payment of Income and Principal ...........................................................................8
4.2.   No Authority to Conduct Business ..........................................................................9
4.3.   Termination of the Trust Funds ..............................................................................9
4.4.   Distribution of Trust Funds Upon Termination ......................................................9
4.5.   Alterations, Amendments and Revocation ..............................................................9
4.6.   Grantors' Instructions to Trustee ..........................................................................10

5.    Trustee Management ............................................................................................ 10

6.    Express Powers of Trustee ................................................................................... 11
6.1.   Payment of Expenses of Administration ............................................................... 11
6.2.   Preservation of Principal ...................................................................................... 11
6.3.   Retention of Investment Advisor and Other Consultants ...................................... 11
6.4.   Execution of Documents of Transfer .................................................................... 11
6.5.   Extension of Obligations and Negotiations of Claims .......................................... 11
6.6.   Litigation ............................................................................................................. 12
6.7.   Execution of Contracts and Agreements ............................................................... 12
6.8.   Discretion in Exercise of Powers ..........................................................................12

7.    Advice of Counsel ................................................................................................13

8.    Trustee Compensation .........................................................................................13

9.    Successor Trustees ...............................................................................................13
9.1.   Vacancy Caused by Resignation or Removal ........................................................13
9.2.   Appointment of Successor Trustees ......................................................................13
9.3.   Acceptance of Appointment by Successor Trustees ..............................................14

9.4.    Preservation of Record of Changes to Trustees ....................................................14

10.     Instructions to the Trustee ......................................................................................14
10.1.   Reports ....................................................................................................................14
10.2.   Annual Statement and Tax Returns .......................................................................14
10.3.   Counsel ....................................................................................................................15
10.4.   Records ....................................................................................................................15

11.     Indemnity ................................................................................................................15
11.1.   Indemnity ................................................................................................................15
11.2.   Survival ...................................................................................................................16

12.     Interests Not Assignable or Subject to Claims of Creditors ..................................16

13.     Written Instructions to Trustee ..............................................................................16

14.     Choice of Law .........................................................................................................16

15.     Interpretation ..........................................................................................................17

16.     Separate Documents ...............................................................................................17

17.     Notices ....................................................................................................................17

18.     Response Action Contractor ...................................................................................19

19.     Successor Trustee ....................................................................................................19

20.     Assignment of Interests ..........................................................................................19

21.     Attachment of Escrow Fund: Compliance with Legal Consent Decrees ...............19

22.     Conflicting Demands ..............................................................................................20

## MIG/DEWANE LANDFILL SUPERFUND SITE
## TRUST FUND AGREEMENT

This Trust Fund Agreement ("Agreement") dated ____, 2005, by and between the entities whose authorized representatives have executed this Agreement (the "Grantors") and the _____ Bank, not personally but solely as Trustee hereunder, (the "Trustee"):

## RECITALS

WHEREAS, without admitting any liability, the Grantors have entered into a Consent Decree with the State of Illinois captioned People of the State of Illinois vs. BFI Waste Systems of North America, Inc., et al., No. _____, RD/RA CONSENT DECREE (the "Consent Decree") in which the Grantors have agreed to reimburse the State of Illinois for environmental response costs incurred and to be incurred at the MIG/DeWane Landfill Superfund Site in Belvidere, Boone County, Illinois (the "Site"), and/or to finance certain future work at the Site ("RD/RA Work");

WHEREAS, the Grantors wish to establish two trust funds, the MIG/DeWane RD/RA Construction Trust Fund and the MIG/DeWane RD/RA O&M Trust Fund which shall partially satisfy the financial assurance requirements of the Consent Decree and shall facilitate payments for a portion of the future RD/RA Work required under the Consent Decree;

Whereas, pursuant to the Consent Decree, BFINA shall perform the Work and may use the funds from the Trust Funds to pay for a portion of that Work pursuant to the Consent Decree and as allowed pursuant to this Trust Agreement;

NOW, THEREFORE, the Trustee hereby agrees that it will hold, invest and reinvest the funds contributed to the MIG/DeWane RD/RA Construction Trust Fund and the MIG/DeWane RD/RA O&M Trust Fund and any income earned thereon, consistent with this Agreement together with any other property hereafter conveyed, assigned, transferred or paid to it, as Trustee, in trust, subject to the terms, provisions and conditions set forth herein.

## 1. DEFINITIONS

As used in this Agreement:

**1.2.** The term **"Consent Decree"** shall mean the Consent Decree that the Grantors have entered into with the State of Illinois captioned People of the State of Illinois vs. BFI Waste Systems of North America, et al., No. _____, a copy of which has been or will be provided to the Trustee;

**1.3.** The term **"Trust Funds"** shall mean the two trust funds established pursuant to this Agreement to satisfy the requirements of the Consent Decree that an RD/RA

4

Construction Trust Fund and an RD/RA O&M Trust Fund be established and funded by settlement funds from the Large Volume Settling Defendants to pay a portion of future RD/RA Work, and to the extent allowed, to comply with Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder;

1.4.  The term **"Grantors"** shall mean certain Cashout Generator Settling Defendants as defined in the Consent Decree whose authorized representatives have executed this Agreement and the Consent Decree.

1.5.  The term **"Trustee"** shall mean LaSalle Bank National Association, its corporate successors and any successor or successors to such Trustee appointed in the future, but in no event shall any such Trustee or successor Trustee be a "related person" as defined in Treas. Reg. § 1.468B-1(d)(2).

1.6.  The term **"Contractor"** for purposes of the work to be performed under the Consent Decree shall mean a qualified person or entity selected and engaged by BFINA, or in the event of a work takeover by the State of Illinois pursuant to the Consent Decree, the Illinois EPA for the purpose of completing the RD/RA Work required by the Consent Decree;

1.7.  The term **"BFINA"** shall mean BFI Waste Systems of North America, Inc.

1.8.  The term **"Cashout Generator Settling Defendants"** shall mean those parties who have funded the Trust Funds and who have also signed the Consent Decree.

1.9.  The term **"RD/RA Work"** shall mean the future work at the Site required by the Consent Decree.

1.10. The term **"RD/RA Construction Trust Fund"** shall mean that trust fund established pursuant to this Agreement by the deposit of $6,228,139.00 by the Grantors and which funds shall be used exclusively for the funding of Remedial Action as defined in the Consent Decree.

1.11. The term **"RD/RA O&M Trust Fund"** shall mean that trust fund established pursuant to this Agreement by the deposit of $750,000.00 by the Grantors and

which funds shall be used exclusively for the funding of long term Operation and Maintenance of the Remedial Action as defined in the Consent Decree, and which funds may be expended only after issuance by Illinois EPA of the Certification of Completion of Remedial Action, a copy of which will be provided to the Trustee.

**1.12.** All other capitalized terms in this Agreement shall have the meanings defined in the Consent Decree unless specifically defined herein.

## 2. NAME, PURPOSE OF THE TRUST AND ACCEPTANCE OF THE TRUSTS

**2.1.** This Trust shall be known as the MIG/DeWane Landfill Superfund Site RD/RA Trust (the "RD/RA Trust") that allows the establishment of the Trust Funds as that term is defined in the Consent Decree. The purpose of the Trust is to obtain, hold, invest and disburse funds, and income earned thereon, as directed by the Grantors so that the Grantors may satisfy their obligations pursuant to the Consent Decree. The Grantors intend, to the extent this Trust may reasonably qualify, for this Trust to be classified as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code, 26 U.S.C. § 1.468B-1, et. seq. It is further intended that this Trust shall be taxed on its modified gross income, which will not include the sums transferred to it from any Grantor. In computing this Trust's modified gross income, deductions will be allowed for, inter alia, administrative costs and other incidental deductible expenses incurred in connection with the operation of this Trust, including without limitation, state and local taxes, legal, accounting, and actuarial fees relating to operation of this Trust.

**2.2.** The Trustee undertakes to perform such duties and only such duties as are specifically set forth in the Agreement and no implied covenants or obligations should be read into the Agreement against the Trustee.

**2.3.** The Trustee may execute any of the trusts and perform any of its duties by or through attorneys, agents, receivers or employees, shall be responsible for the conduct of same in accordance with the standards set forth in Section 2.5 below, and shall be entitled to the advice of counsel concerning all matters of the trusts hereof and the duties hereunder, and may in all cases pay such reasonable compensation to any such attorneys, agents, receivers or employees as may

6

reasonably be employed in connection with the trusts hereof. The Trustee may act upon the opinion or advice of any attorney (who may be the attorney or attorneys for the Grantors) approved by the Trustee after providing notice to the Grantors of its intent to solicit such opinion or advice in the exercise of reasonable care. The Trustee shall not be responsible for any loss or damage resulting from any action or non-action in good faith reliance upon such opinion or advice.

2.4.    The Trustee may act upon any notice, request, consent, certificate, Consent Decree, affidavit, letter, e-mail message or other paper or document believed to be genuine and correct, and to have been signed or sent by the proper person or persons based upon written notification to the Trustee by the Grantors or the person or persons authorized by the Grantors to request actions by the Trustee.

2.5.    The permissive right of the Trustee to do things enumerated in this Agreement shall not be construed as a duty, and the Trustee shall not be answerable for other than its negligence, gross negligence or willful misconduct or that of its attorneys, agents, receivers or employees.

2.6.    The Grantors acknowledge and agree that the Trustee does not make any representations, warranties or covenants regarding compliance of the Trust Funds or this Agreement, or any of the Trustee's acts or omissions, with Section 468 of the Internal Revenue Code or the Treasury Regulations promulgated thereunder.

3.    **CONTRIBUTIONS TO THE TRUST FUNDS**

3.1.    **Initial Payment by Grantors.** The Grantors will contribute to the Trust Funds within thirty (30) days of the effective date of the Consent Decree by collectively causing to be deposited into the RD/RA Construction Trust Fund the amount of $6,228,139.00 and into the RD/RA O&M Trust Fund the amount of $750,000.00. The Trustee will provide notice of each payment into the Trust to all other Grantors and to the Illinois EPA within 30 days of the Trustee's receipt of such payment. The Grantors shall have no funding obligations beyond the initial funding in the amount of a collective total of $6,978,139.00 as specified in 3.1 above.

**3.2.** **Nature of Contributions by Grantors.** All contributions to the Trust Funds shall be made in immediately available funds. All such contributions, together with the earnings thereon, shall be held as a trust fund for payment of a portion of the future Work required under the Consent Decree. Contributions made to the Trust Funds shall not be construed as fines, penalties or monetary sanctions.

**3.3.** **No Transferability of Interest.** The interest of the Grantors, and their obligation to provide funds under this section, is not transferable, except to a successor corporation or corporations, and any such transferee corporation shall assume the obligations of the transferring Grantor(s) by executing such documents as the Trustee may require.

**4.** **DISPOSITIVE PROVISIONS**

**4.1.** **Payment of Income and Principal.** During the term of this Agreement, and to the extent of the funds remaining in the Trust Funds, the Trustee shall, on behalf of the Grantors, pay all invoices that BFINA submits to the Trustee that include BFINA's validly executed Payment Authorization, in the form attached as Exhibits A or B attached hereto, for payments from the RD/RA Construction Trust Fund and from the RD/RA O&M Trust Fund respectively, that the invoice was incurred in compliance with the requirements of the Consent Decree. The Grantors may review all payments made by the Trustee. Such right to review shall not, however, be interpreted as creating a right on the part of Grantors to object or to direct the Trustee not to make a related payment. If the Grantors believe that such payments were made for work that is not consistent with the Work being done pursuant to the Consent Decree, the Grantors may petition the Court that retains jurisdiction over the Consent Decree for an Order requiring that BFINA reimburse the Trust Fund from which the payments were made the full amount of the payments. Upon receipt by the Trustee of a certified copy of a final Illinois EPA demand for the remaining Trust Funds that includes a notice of the conclusion of any and all dispute resolution procedures invoked by BFINA under the Consent Decree based on the IEPA's determination that BFINA has ceased implementation of any portion of the RD/RA portion of the Work pursuant to Paragraph 138 of the Consent Decree and that Illinois EPA is taking over

performance of the Work pursuant to the Consent Decree, the Trustee shall disburse the remaining funds in the Trust Funds to the Illinois EPA after payment of any outstanding Trustee Compensation pursuant to Paragraph 8, by remitting the funds to the address and account number specified in Section XVI of the Consent Decree, with a copy to BFINA and to the Grantors.

4.2. **No Authority to Conduct Business.** This Agreement shall not be construed to confer upon the Trustee any authority to carry on any business or activity for profit; provided, however, that the Trustee may invest the Trust Funds and to perform its other duties in accordance with this Agreement.

4.3. **Termination of the Trust Agreement.** This Trust Agreement shall terminate upon the occurrence of one or more of the following: (a) termination of the Consent Decree; or (b) distribution of all of the Trust Funds pursuant to Sections 4.4 or 4.1.

4.4. **Distribution of Trust Funds Upon Termination.** Before the trust created hereby may be deemed terminated, the trustee shall have distributed any remaining balance in the Trust Funds, after payment of the Trustee's fees, costs and expenses, to the Illinois EPA as specified in Section XVI of the Consent Decree, with a copy to BFINA and to the Grantors.

4.5. **Alterations, Amendments and Revocation.** This Trust may be altered, amended, or revoked by a written instrument executed by an authorized representative(s) of the Grantors provided, however, that no such alteration, amendment or revocation may conflict with or modify in any respect the Grantors' obligations under the Consent Decree, and provided further that: (a) Section 12 hereof shall not be revoked and shall not be altered or amended to limit the effect thereof with respect to acts or omissions taken or made up to thirty (30) days after such alteration or amendment; and (b) no such alteration, amendment or revocation is adverse to the interests of the Trustee. The Trustee shall have no duty to determine whether the conditions for alteration, amendment or revocation have been satisfied, but instead shall be entitled to rely upon the signatures of the Grantors on the instrument.

4.6 **Grantors' Instructions to Trustee.** The authorized representatives of Grantors Pfizer Inc., DaimlerChrysler Corporation and UTC are authorized to instruct the Trustee on behalf of all of the Grantors for any action the Grantors are authorized to take under this Agreement. The Trustee may rely upon any written instructions duly signed by all three of the authorized representatives of those three Grantors to take any action to effectuate the purpose of this Agreement and to exercise the powers specifically conferred upon it by this Agreement. However, the Grantor's authorized representatives may not instruct the Trustee not to pay invoices submitted by BFINA that include BFINA's validly executed Payment Authorization pursuant to Paragraph 4.1. The preceding sentence shall in no way limit he right of the Grantors to petition the Court for an Order requiring BFINA to reimburse the applicable Trust Fund the full amount of any such payments, as provided by Paragraph 4.1

5. **TRUSTEE MANAGEMENT**

The Trustee shall invest and reinvest the principal and income of the Trust Funds and keep the Trust Funds invested in Federated Treasury Obligations (Trust Shares) Fund, or such other investment fund as the Grantors after consultation with BFINA may instruct the Trustee in writing so long as the selected investment fund is located in the United States or guaranteed by agencies of the United States, and treated as a single fund without distinction between principal and income and so long as the Trustee is capable of investing in such funds on an automated basis. All investments shall be made so as to at all times provide sufficient liquidity to meet the anticipated cash needs of the Trust Funds. The Trustee, with the prior approval of the Grantors after consultation with BFINA, may engage the services of an investment advisor or manager, may rely on the advice of such advisor or manager, and may delegate investment decision-making authority to such advisor or manager with respect to management of the Trust Funds. The Trustee shall not be personally liable for any action or inaction taken in good faith reliance on the advice of such advisor or manager, nor for delegation in good faith of investment decision-making authority to such advisor or manager. The Trustee shall keep or arrange to be kept an accounting of all contributions to and disbursements from the Trust Funds.

10

## 6. **EXPRESS POWERS OF TRUSTEE**

Without in any way limiting the power and discretion conferred upon the Trustee by the other provisions of this Agreement or by law, the Trustee is expressly authorized and empowered as follows:

**6.1.** **Payment of Expenses of Administration.** To incur and pay any and all charges, taxes and expenses connected with the Trust Funds in the discharge of its fiduciary obligations under this Agreement. All such payments shall be made using the assets of the Trust Funds.

**6.2.** **Preservation of Principal.** Notwithstanding any other provision in this Agreement, to at all times hold, manage, invest and reinvest the assets of the Trust Funds in a manner designed to preserve the accrued income and principal of the Trust Funds for the purposes of the Trust Funds.

**6.3.** **Retention of Investment Advisor and Other Consultants.** With the prior approval of the Grantors, and pursuant to Section 14, to engage the services of (and pay compensation to) an investment advisor, accountants, agents, managers, legal counsel, or other consultants with respect to the management of investments of the Trust Funds, the management of the Trust Funds, or any other matters. However, the Grantor's authorized representatives may not instruct the Trustee not to pay invoices submitted by BFINA that include BFINA's validly executed Payment Authorization pursuant to Paragraph 4.1. The preceding sentence shall in no way limit the right of the Grantors to petition the Court for an Order requiring BFINA to reimburse the applicable Trust Fund the full amount of any such payments, as provided by Paragraph 4.1.

**6.4.** **Execution of Documents of Transfer.** To make, execute, acknowledge and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted.

**6.5.** **Litigation. At the direction** of the Grantors pursuant to Sections 4.6 and 13 and of BFINA and upon receipt of any indemnity the Trustee may require, the Trustee

agrees to be named as a party to litigation in the name of the Trust Funds on behalf of or in the name of some or all of the Grantors.

**6.7.** **Discretion in Exercise of Powers.** To do any other acts that it deems proper to effectuate the purpose of this Agreement and to exercise the powers specifically conferred upon it by this Agreement.

## 7. ADVICE OF COUNSEL

The Trustee may from time to time retain experts or counsel, who shall not be counsel to any of the Grantors or BFINA, with respect to any question arising from this Agreement. The reasonable costs of any such expert and counsel shall be paid from the Trust Funds or as otherwise provided in Section 9 provided that both the Grantors and BFINA were provided notice of the intent to engage such expert or counsel, together with such information on fees and rates as it may reasonably request. The Trustee shall be fully protected, to the extent permitted by law, in acting in reliance upon the advice of counsel.

## 8. TRUSTEE COMPENSATION

The Trustee shall be compensated for all of the services provided under this Agreement and reimbursed for its costs, in accordance with the schedule of fees and costs in effect on the effective date of this Agreement and as provided to the Grantors or as otherwise modified by agreement of the Trustee, the Grantors and BFINA during the period over which its services are performed. The Trustee may withdraw from the trust fund such fees and costs from the Trust Funds. The Trustee's schedule of fees and expenses is attached hereto as Exhibit C.

## 9. SUCCESSOR TRUSTEES

**9.1.** **Vacancy Caused by Resignation or Removal.** The Trustee may resign at any time by delivering a resignation to the Grantors and BFINA. The Grantors, after consulting with BFINA may remove any Trustee by delivering notice of such removal in writing to such Trustee. Any such resignation or removal shall take effect within thirty (30) days of delivery of the notice of resignation or removal but no sooner than upon the acceptance of an appointment, in writing, by a successor Trustee.

12

**9.2.** **Appointment of Successor Trustees.** Any vacancy in the office of Trustee created by dissolution, resignation or removal by the Grantors shall be filled by the Grantors, after consulting with BFINA, by an appointment in writing of a successor Trustee. In no event shall any successor trustee appointed hereunder be a "related person" as defined in Treasury Regulation Section 1.468B-1(d)(2).

**9.3.** **Acceptance of Appointment by Successor Trustees.** Acceptance of appointment as a successor Trustee shall be in writing and shall become effective upon receipt by the Grantors and BFINA of notice of such acceptance. Upon the acceptance of appointment of any successor Trustee, title to the Trust Funds shall thereupon be vested in said successor Trustee, without the necessity of any conveyance or instrument. Each successor Trustee shall have all the rights, powers, duties, authority, and privileges as if initially named as a Trustee in this Agreement.

**9.4.** **Preservation of Record of Changes to Trustees.** A copy of each instrument of resignation, removal, appointment and acceptance of appointment shall be attached to an executed counterpart of this Agreement in the custody of the Grantors.

**10.** <u>**INSTRUCTIONS TO THE TRUSTEE**</u>

Notwithstanding anything herein to the contrary, the Trustee is hereby directed to do the following in addition to other duties set forth in other provisions of this Agreement:

**10.1.** **Reports.** Have prepared monthly financial reports during the term of the RD/RA Trust, describing the manner in which all of the assets of the Trust Funds are then invested and the current market value of such assets, as well as the obligations, income, and expenses of the Trust Funds. Copies of such reports shall be transmitted by the Trustee in writing to BFINA, to the Grantors and to Illinois EPA.

**10.2.** **Annual Statement and Tax Returns.** In accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1), the Trustee shall have prepared annual financial statements during the term of the Trust, describing the manner in

which all of the assets of the Trust Funds are then invested and the current market value of such assets, as well as the obligations, income and expenses of the Trust Funds. All financial statements shall be prepared on an accrual basis, and shall be in accordance with accounting practices generally applicable to corporate trustees, applied on a consistent basis. The Trustee shall prepare and file such tax returns as shall be required by applicable law and as directed by the Grantors and in accordance with the provisions of Treasury Regulation Section 1.468B-2(k)(1). Copies of such annual statements and tax returns shall be transmitted by the Trustee in writing to BFINA, to the Grantors and to Illinois EPA. In accordance with Treasury Regulation Section 1.468B-2(j) the taxable year of this Trust shall be the calendar year.

**10.3.** **Counsel.** Advise, consult and confer with and otherwise inform the Grantors and BFINA upon any request by either the Grantors or BFINA with respect to matters arising out of this Agreement, administration of the Trust Funds, or any other matter which the Trustee, in its discretion, deems appropriate to bring to the attention of the Grantors and BFINA.

**10.4.** **Records.** Maintain records of all actions taken by the Trustee with respect to matters arising out of this Agreement or administration of the Trust Funds. Copies of said records shall be provided to the Grantors and BFINA, upon request, and upon termination of the Trust Funds, said records shall be transmitted, together with all other records of the Trustee, to the Grantors and BFINA. The Trustee shall have the right to assume, in the absence of written notice to the contrary, that no event constituting a change or a termination of the authority of Grantors, solely in respect to the submission of invoices for payment, has occurred.

## 11. **INDEMNITY**

**11.1.** **Indemnity.** Each Trustee, whether initially named or appointed as a successor Trustee, acts as a Trustee only and not personally; and in respect of any contract, obligation or liability made or incurred by the Trustee, or any of them hereunder in good faith, all persons shall look solely to the Trust Funds and not the Trustee personally or the Grantors. Neither the Trustee nor the Grantors shall incur any liability, personal or corporate, of any nature in connection with any act or

14

omission, made in good faith, of the Trustee or the Grantors in the administration of the Trust Funds or otherwise pursuant to this Agreement. The Trustee initially named, appointed as successor Trustee by the Grantors (after consultation with BFINA) or appointed by a court, shall be indemnified and held harmless by the Trust Funds, and, to the extent that indemnification cannot be obtained from the Trust Funds, jointly and severally by the Grantors and BFINA, for any loss, cost, expense, damage, claim, cause of action, Consent Decree or direction of any regulatory agency, any attorneys' fees, accountants' fees, expert witness fees and costs arising out of or pertaining to (a) the Site, (b) this Agreement, (c) any contracts, agreements or obligations entered into or incurred by the Trust Funds, (d) any acts or omissions of the Trustee in carrying out, or in good faith believing such acts or omissions were carrying out, this Agreement, (e) any personal injuries or property damage arising out of the Site or the Work, and (f) any response, removal or remedial costs at the Site. This indemnification shall apply to any liabilities arising from occurrences both before and after the date of this Agreement. This indemnification and hold harmless provision shall cover all expenses reasonably incurred by such Trustee in defense or settlement of the aforementioned acts or omissions of the Trustee or the Grantors. Except for the payment of all expenses reasonably incurred, this indemnification shall not apply to any liability arising from a criminal proceeding where the Trustee's conduct in question was, or is alleged to be, unlawful.

**11.2. Survival.** This section shall survive the termination of this Agreement and the Trust Funds and the resignation or removal of the Trustee.

## 12. INTERESTS NOT ASSIGNABLE OR SUBJECT TO CLAIMS OF CREDITORS

The interest of any Grantors in the Trust Funds shall not be subject to anticipation or assignment nor subject to the claims of any creditor of any Grantors.

## 13. WRITTEN INSTRUCTIONS TO TRUSTEE

Any directions for actions to be taken by the Trustee on behalf of the Grantors pursuant to this Agreement shall be given to the Trustee in writing by the Grantors subject to the provisions of Section 4.4 above.

14. **CHOICE OF LAW**

This Agreement shall be administered, construed, and enforced according to the laws of the State of Illinois except to the extent that federal law shall apply to questions arising under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq., or the National Contingency Plan, 40 C.F.R. Part 300, promulgated thereunder.

15. **INTERPRETATION**

As used in this Agreement, words in the singular include the plural and words in the plural include the singular and the masculine and neuter genders shall be deemed to include the masculine, feminine and neuter. The description heading for each Section and Subsection of this Agreement shall not affect the interpretation or the legal efficacy of this Agreement. It is agreed that neither the act of entering into this Agreement nor any contribution to the Trust Funds nor any action taken under this Agreement shall be deemed to constitute an admission of any liability or fault on the part of the Trustee or the Grantors with respect to the Site or otherwise, nor does it constitute a commitment or agreement, either express or implied, by any or all of them to undertake any further activities outside the scope of this Agreement.

16. **SEPARATE DOCUMENTS**

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17. **NOTICES**

Notices under this Agreement shall be deemed received when sent by and/or received by the Trustee in accordance with this Section 17. Notices shall be (a) sent registered mail, return receipt requested, (b) by facsimile, (c) by a nationally recognized overnight courier, or (d) by messenger delivery. Copies of notices to the Trustee shall be delivered to the Grantors' designated agents to the following address:

Notices to the Grantors shall be sent to:

16

John L. Greenthal
Nixon Peabody LLP
Omni Plaza
30 South Pearl Street
Albany, NY 12207
Phone (518) 427-2670
Fax (518) 427-2666
E-Mail:  JGreenthal@nixonpeabody.com; and

Steven C. Kohl Esq. (Steve)
Howard & Howard Attorneys PC
The Pinehurst Office Center
39400 Woodward Avenue, Suite 101
Bloomfield Hills, MI 48304-5151
Phone (248) 723-0320 (Direct)
E-Mail:  skohl@howardandhoward.com; and

Kathleen McFadden
United Technologies Corporation
Office of the General Counsel
One Financial Plaza, M/S 524-Legal
Hartford, CT 06102
Phone (860) 728-7895 (Direct)
E-Mail:  kathleen.mcfadden@utc.com;


and for BFINA to:

Gary D. Justis
Lathrop & Gage L.C.
10851 Mastin Blvd., Suite 1000
Overland Park, Kansas 66210
913/451-5144
913/451-0875 Fax
E-Mail: gjustis@lathropgage.com; and

Eric Ballenger
BFINA's Project Coordinator
Allied Waste Industries, Inc.
26 W. 580 Schick Road
Hanover Park, IL  60133;

and for the State of Illinois to:

and for the Trustee:

LaSalle Bank National Association
Corporate Trust Department
135 South LaSalle Street, Suite 1960
Chicago, IL 60603
Attention:      Anthony Veloz
Telephone:      (312) 904-2931
Fax:      (312) 904-2236

## 18.  RESPONSE ACTION CONTRACTOR

For the purposes of 42 U.S.C. §§ 9619(a) & (e), the Trustee under this Agreement is a
response action contractor.  The Grantors represent that the Trustee is providing services
to the Grantors that relate to a response action being performed pursuant to 42 U.S.C. §§
9606 or 9622.

## 19.  SUCCESSOR TRUSTEE

Any corporation or association into which the Trustee may be converted or merged, or
with which it may be consolidated, or to which it may sell or transfer its corporate trust
business and assets as a whole or in part, or any corporation or association resulting from
any such conversion, sale, merger, consolidation or transfer to which it is a party, shall be
and become the successor Trustee hereunder and vested with all of the title to the whole
property or trust estate and all of the trusts, powers, immunities, privileges, protections
and all other matters as was its predecessor, without the execution or filing of any
instrument or any further act, deed or conveyance on the part of any of the parties hereto,
anything herein to the contrary notwithstanding; provided, however, that if, within one
hundred eighty (180) days following any such conversion, sale, merger, consolidation or

transfer, the Grantors after consultation with BFINA shall remove the Trustee and appoint another qualified financial institution to serve as Trustee hereunder, neither the RD/RA Trust nor any Grantors or BFINA shall have any liability or obligations to such prior Trustee other than for payment of such prior Trustee's fees and charges, prorated as may be appropriate, through the date on which such removal is effective.

20. **ASSIGNMENT OF INTERESTS**

No assignment of the interest of any of the parties hereto shall be binding upon the Trustee unless and until written evidence of such assignment in form satisfactory to the Trustee shall be filed with and accepted by the Trustee.

21. **ATTACHMENT OF TRUST FUNDS: COMPLIANCE WITH LEGAL CONSENT DECREES**

In the event the Trust Funds are attached, garnished, or levied upon by any writ, court Consent Decree or decree, the Trustee is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, Consent Decrees or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Trustee obeys or complies with any such writ, Consent Decree or decree it shall not be liable to any of the parties hereto or to any other person, firm or corporation by reason of such compliance notwithstanding that such writ, Consent Decree or decree is subsequently reversed, modified, annulled, set aside or vacated.

22. **CONFLICTING DEMANDS**

In the event that conflicting demands are made upon the Trustee for any situation not addressed in this Agreement, the Trustee may withhold performance of the terms of this Agreement until such time as said conflicting demands shall have been withdrawn or the rights of the respective parties shall have been settled by court adjudication, arbitration, joint Consent Decree or otherwise.

19