**WITNESS** the execution hereof of the Trustee as of the date first above written.

_____, **not personally but solely as Trustee of the MIG/DeWane Landfill Superfund Site Trust**

**By:** _____

**Its:** _____

**WITNESS** the execution hereof of the Grantors designated below as of the date first above written.

Entity: _____

By: _____

Printed Name: _____

Title: _____

Company: _____

FEIN No. _____

)

Contact Person for Notices:

Name: _____

Company: _____

Address: _____

_____

_____

_____

Phone No. _____

20

Fax No. _____

E-mail: _____

# EXHIBIT C

## SCHEDULE OF TRUSTEE'S FEES AND EXPENSES

**Annual Charge**                    $2,000.00/funded Trust Fund*

**Acceptance/Setup Charge**          waived

*As long as both the Construction and O&M accounts are funded, the annual fee will be $4,000; once the RD/RA Construction Fund is closed, the annual fee will be $2,000 as long as the RD/RA O&M is active and funded.

The costs of producing annual tax returns are included within the above annual charge. Any other out-of-pocket expenses, or extraordinary fees or expenses such as attorney's fees or messenger cost's, are additional and are not included in the above schedule. The annual fee is billed in advance and payable prior to that year's service. Trustee may withdraw such charges from deposited Trust Funds without prior notice to Grantors or BFINA.

Shareholder Servicing Payments: Escrow Agent may receive Shareholder Servicing Payments as compensation for providing certain services for the benefit of the Money Market Fund Company. Shareholder Services typically provided by LaSalle include the maintenance of shareholder ownership records, distributing prospectuses and other shareholder information materials to investors and handling proxy-voting materials. Typically Shareholder Servicing payments are paid under a Money Market Fund's 12b-1 distribution plan and impact the investment performance of the Fund by the amount of the fee. The shareholder servicing fee payable from any money market fund is detailed in the Fund's prospectus that will be provided to you.

Revenue Sharing Payments: Escrow Agent may receive revenue sharing payments from a Money Market Fund Company. These payments represent a reallocation to Escrow Agent of a portion of the compensation payable to the fund company in connection with your account's money market fund investment. Revenue Sharing payments constitute a form of fee sharing between the fund company and Escrow Agent and do not, as a general rule, result in any additional charge or expense in connection with a money market fund investment, are not paid under a 12b-1 plan, and do not impact the investment performance of the Fund. The amount of any revenue share, if any, payable to Escrow Agent with respect to your account's investments is available upon request.



**APPENDIX H**

# APPENDIX H

## <u>COVENANT BENEFICIARY ELECTION FORM</u>

The following entity, by its undersigned representative, elects to become a Covenant Beneficiary in the RD/RA Consent Decree entered into by the State of Illinois ("State") and Settling Defendants in the action filed in the United States District Court for the Northern District of Illinois, Western Division (the "Court") entitled <u>People of the State of Illinois v. BFI Waste Systems of North America, Inc., et al.</u>, Case. No. _____ (N.D. Ill.) ("RD/RA Consent Decree"):

Name: _____

Address: _____

_____

The undersigned hereby acknowledges that he/she has received a copy of the RD/RA Consent Decree, and that he/she has had opportunity to review it or seek legal advice regarding its terms, and in return for the rights, covenants and protections provided to Covenant Beneficiaries in the RD/RA Consent Decree agrees, on behalf of the Covenant Beneficiary, to the following:

1.     The Covenant Beneficiary agrees, upon reasonable advance notice to the extent practicable based on the reason access is needed and site conditions, to provide the State and any Settling Defendant, and their contractors and representatives, access at all reasonable times to the portion(s) of the MIG/DeWane Landfill Site ("Site"), as defined in the RD/RA Consent Decree (and any other property in close proximity to the Site to which access is required for the implementation of the RD/RA Consent Decree), that it owns or controls to which access is necessary, as provided in Section IX of the RD/RA Consent Decree.

2.     The Covenant Beneficiary covenants not to sue and agrees not to assert any claims or causes of action against the State with respect to the Work, Past Response Costs, or Future Response Costs (all as defined in the RD/RA Consent Decree), the RD/RA Consent Decree, or contributions of Settling Defendants or other Covenant Beneficiaries with respect to the RD/RA Consent Decree or other Covenant Beneficiary Election Forms, including, but not limited to:

a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through Sections 106(b)(2), 107, 111, 112, 113 of the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, 9613, or any other provision of law;

b.     any claims against the State including any department, agency or instrumentality of the State under Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613 related to the Site, or

c. any claims arising out of response activities at the Site, including claims based on U.S. EPA's and the State's selection of response actions, oversight of response activities or approval of plans for such activities.

3. The Covenant Beneficiary agrees, as provided in Paragraph 14 and 163 of the RD/RA Consent Decree, not to oppose entry of the RD/RA Consent Decree or to challenge the terms of the RD/RA Consent Decree or this Covenant Beneficiary Election Form and the Court's jurisdiction to enter and enforce the RD/RA Consent Decree and the Covenant Beneficiary Election Form. Failure of the Covenant Beneficiary to abide by this paragraph renders the rights, covenants and protections applicable to it under the RD/RA Consent Decree null and void.

4. The Covenant Beneficiary agrees not to sue the Settling Defendants or any other Covenant Beneficiary for matters addressed in the RD/RA Consent Decree, as defined in Paragraph 146 of the Partial RD/RA Consent Decree.

5. The Covenant Beneficiary does not admit any liability arising out of the transactions or occurrences alleged in the complaints or the RD/RA Consent Decree, nor does the Covenant Beneficiary acknowledge that a release or threatened release of hazardous substances at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or environment.

6. The undersigned representative of the Covenant Beneficiary named herein certifies that he/she is fully authorized to agree to the terms and conditions applicable to Covenant Beneficiaries herein and in the RD/RA Consent Decree and to execute and legally bind the Covenant Beneficiary to these terms and conditions. This form shall be filed with:

Gerald T. Karr
Assistant Attorney General
Environmental Bureau
188 West Randolph Street, 20th Floor
Chicago, Illinois 60601

and:

Paul Jagiello
Division of Legal Counsel
Illinois Environmental Protection Agency
9511 West Harrison Street
Des Plaines, Illinois 60016

copy to:

Gary D. Justis
Lathrop & Gage L.C.
10851 Mastin Blvd., Suite 1000
Overland Park, KS 66210

7.    This Covenant Beneficiary Election Form may be recorded with respect to any property owned or operated by a Covenant Beneficiary within the Site (as defined in the RD/RA Consent Decree). If a Covenant Beneficiary owning or operating property at the Site records a copy of its Covenant Beneficiary Election Form with the Boone County Recorder of Deeds and provides a copy of the recordation to the State, with the effect that a subsequent purchaser, lessee, or mortgagee of the property is bound to comply with the Covenant Beneficiary Election Form, the benefits and responsibilities contained in the RD/RA Consent Decree with respect to Covenant Beneficiaries shall be binding upon and inure to the benefit of the subsequent purchaser, lessee, or mortgagee of the Covenant Beneficiary's property, but only to the extent that liability is sought to be imposed based upon the subsequent purchaser's, lessee's, or mortgagee's alleged ownership or operation of the Covenant Beneficiary's property and only so long as the subsequent purchaser, lessee, or mortgagee complies with all requirements or obligations of the Covenant Beneficiary pursuant to this the Covenant Beneficiary Form.

COVENANT BENEFICIARY:

By: _____

Title:_____

Attest (if applicable):

_____

BY: _____

If this Form is to be recorded by a Corporation:

STATE OF _____          )
                              )       SS
COUNTY OF _____      )

      I, the undersigned, a Notary Public, in and for the County and State aforesaid, DO HEREBY CERTIFY, that _____ personally known to me to be the _____ of said Corporation, and _____ personally known to me to be the _____ of said Corporation, and personally known to me to be the same persons whose names are subscribed in the foregoing instrument, appeared before me this day in person and severally acknowledged that as such _____ and _____ of said Corporation, and caused the corporation seal to be affixed thereto, pursuant to authority given by the Board of Directors of said corporation, as their free and voluntary act, and as the free and voluntary act of said corporation, for the purposes therein set forth.

      GIVEN under my hand and notarial seal this ____ day of _____, 20___.


_____
NOTARY PUBLIC

My Commission Expires:

_____

PREPARED BY:

_____
_____
_____

RETURN TO:

_____
_____
_____

If this Form is to be recorded by an individual:

STATE OF _____          )
                                        )     SS
COUNTY OF _____    )

     I, _____, a Notary in and for and residing in said County of _____, State of _____, DO HEREBY CERTIFY that _____ personally known to me to be the same person who name is subscribed to the foregoing instrument, appeared before me this _____ day of _____, 20___, and acknowledged that he/she signed, sealed and delivered said instrument as his/her free and voluntary act for the purposes therein set forth.

     GIVEN under my hand and notarial seal this ____ day of _____, 20___.

                                      _____
                                       NOTARY PUBLIC

# APPENDIX I

## USE RESTRICTION AGREEMENT

This Use Restriction Agreement is made and entered into by the LAE Defendants (as

defined in Subparagraph 1.A. hereof), and the MIG/DeWane Landfill Task Force (the "MLTF")

(as defined in Subparagraph 1.B. hereof), this **8 +h** day of January, 1999.

WHEREAS, the LAE Defendants individually or collectively own certain property (the

"Property"), located east of the City of Belvidere, in Boone County, Illinois, which Property and

its ownership is shown on a map, attached hereto as Exhibit A, and which Property is legally

described in Exhibit B attached hereto.

WHEREAS, landfill operations were conducted on a portion of the Property by a series

of parties from approximately 1969 through 1988, and the landfill was placed upon the National

Priorities List by the Environmental Protection Agency on August 30, 1990, as the

"MIG/DeWane Landfill Site" (the "Site"). The Site and its legal description are shown in

Exhibits A and B.

WHEREAS, an Administrative Order on Consent, together with all Attachments and

Exhibits thereto (the "Order"), has been entered into among the MLTF, the United States

Environmental Protection Agency ("the USEPA"), and the Illinois Environmental Protection

Agency ("the IEPA"), pursuant to which a Remedial Investigation/Feasibility Study ("RI/FS"),

has been conducted on the Site.

WHEREAS, the MLTF wishes to have appropriate use restrictions placed on the Site and

a groundwater use restriction placed on portions of the Property beneficially owned by Audrey

DeWane and Benjamin Farina, (hereafter, "Audrey and Ben"), to the south of the Site, in order to

perform Site remedial activities pursuant to the current Order or a future administrative order or

1

consent decree among the MLTF, USEPA, and IEPA requiring the MLTF to perform response activities at the Site (the "Future Order").

WHEREAS, the LAE Defendants wish to assist in placing the appropriate use restrictions on the Site and a groundwater use restriction placed on portions of the Property beneficially owned by Audrey DeWane and Benjamin Farina to the south of the Site, to promote the completion of such activities.

WHEREAS, the parties have this day entered into a "Conditional Settlement Agreement" resolving their disputes concerning the Site and the parties' respective liabilities for response costs arising out of the Site, (hereafter "Conditional Settlement Agreement").

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is mutually acknowledged, the parties agree as follows:

## 1. IDENTIFICATION OF PARTIES

A.    Whenever used herein, the term "LAE Defendants" means Raymond E. DeWane, Audrey DeWane, Benjamin Farina and Jean Farina, in whatever legal capacity, including, but not limited to, as individuals, as partners of the Bonus Landfill Company, or as beneficiaries of land trusts, and their respective heirs, beneficiaries, successors, assigns, agents, representatives and insurers; and, LAE, Inc., and Illinois corporation, its successors, assigns and insurers, and its present and former officers, shareholders, directors, employees, and representatives.

B.    Whenever used herein, the term MLTF means the MIG/DeWane Landfill Task Force, an unincorporated association, each individual member thereof, and their respective shareholders, officers, directors, employees, affiliates, subsidiaries, successors, and assigns, and

2

includes the MLTF for itself, and the individual members of the MLTF for themselves, and as successors in interest to, or assignees of the rights of, any other person or entity, whether pursuant to contract, by operation of law, or otherwise. The MLTF is comprised of the parties identified in the contemporaneously executed Conditional Settlement Agreement.

## 2. USE RESTRICTIONS ON THE SITE

If any portion of the Site, where land/water use restrictions are determined, by USEPA and IEPA, to be needed to promote the completion of response activities in the Order and/or Future Order, is owned or controlled by any of the LAE Defendants, those LAE Defendants shall, commencing on the date of execution of the USEPA/IEPA Settlement Agreement by the LAE Defendants, as provided in the Conditional Settlement Agreement, refrain from using the Site, (specifically including the land and water at or under the Site), in any manner that would knowingly interfere with or knowingly and adversely affect the integrity or protectiveness of the remedial measures to be implemented in the Order and/or Future Order. In addition to that general land/water restriction, if USEPA or IEPA determines in writing that Site-specific land/water restrictions, in the form of state or local laws, regulations, ordinances or other governmental controls, are needed to implement such remedial measures, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, the LAE Defendants shall cooperate with USEPA's or IEPA's efforts to secure such governmental controls.

## 3. GROUNDWATER USE RESTRICTIONS ON PORTIONS
## OF THE AUDREY AND BEN PROPERTY

In consideration of a one-time payment by the MLTF to Audrey and Ben of the sum of five thousand dollars ($5,000.00), the receipt and sufficiency of which is mutually

3

acknowledged, Audrey and Ben shall, commencing on the execution date of this Agreement, refrain from using the groundwater on that portion of the Property beneficially owned by them to the south of the Site, located in the area of the Groundwater Management Zone ("GMZ"), identified on the map attached hereto as exhibit D, until this Agreement is terminated.

## 4. EASEMENTS/DESCRIPTIONS

If USEPA or IEPA so requests in writing, the LAE Defendants shall execute and allow the recording, in the Recorder of Deeds Office for Boone County, Illinois, of an easement to run with title to the land, that grants the right to enforce, to the same extent that the MLTF could enforce, the land/water use restrictions described in this Agreement, or other Site-specific restrictions that USEPA or IEPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed as part of the Order and/or Future Order. No such easement shall grant or be construed to grant a fee simple interest in the affected Property to the grantee(s). Prior to the tendering of any easement to Audrey and Ben, but in no event later than two years after execution of this Agreement, the MLTF will obtain and provide to Audrey and Ben, at the MLTF's expense, a legal description of the extent of the GMZ on the portions of the Property beneficially owned by Audrey and Ben to the south of the Site. The LAE Defendants shall grant the rights to enforce the land/water use restrictions to (i) the United States, on behalf of USEPA, and its representatives; (ii) the State of Illinois, on behalf of IEPA, and its representatives; and/or (iii) other appropriate parties identified by USEPA or IEPA. Any easement granted hereunder shall be conditioned upon the written agreement of the grantee(s) to provide, and pay for the recording of, written vacation of such easement not later than one month after a use restriction described within such easement terminates.

4

## 5. TERMINATION OF USE RESTRICTIONS

This Agreement and all Amendments hereto shall be construed as covenants running with the land. This Agreement shall terminate, with respect to each use restriction hereunder, at the time the requirement for that use restriction terminates under the Order or under a Future Order. Further, the MLTF may terminate this Agreement, in whole or in part, whenever they determine, and provide written notice to the LAE Defendants, that it is no longer necessary. In the event a use restriction terminates, the MLTF shall, at its expense, execute and record, if recordation is necessary to clear title, an appropriate document evidencing the fact of that termination.

## 6. NO WAIVER; ENTIRE AGREEMENT

The failure of the MLTF or the LAE Defendants to insist upon the strict performance of any terms, covenants, or conditions of this Agreement, or to exercise any right or remedy herein contained, shall not be construed as a waiver or relinquishment for the future of such term, covenant, condition, right or remedy. This Agreement and the attached Exhibits constitute the entire Agreement between the LAE Defendants and the MLTF with respect to use restrictions on the LAE Defendants' Property.

## 7. CONSTRUCTION

It is mutually agreed that this Agreement shall be construed and interpreted as if drafted by each party and it is further acknowledged that this Agreement is the product of negotiations between the parties, and shall not be construed or interpreted against either party based on such party having drafted this Agreement, or any portion thereof.

## 8. INVALIDITY

A determination by a Court of competent jurisdiction that any provision of this Agreement is invalid for any reason shall not affect the validity of any other provision.

## 9. AGENTS AND EMPLOYEES OF THE MLTF

The rights granted to the MLTF and their successors and assigns under this Agreement may be exercised through their respective agents, employees, and contractors and by representatives of USEPA and IEPA, including their respective employees, agents, and contractors.

## 10. HEADINGS

The headings of this Agreement are for convenience only and shall not affect the meaning or construction of the contents of this Agreement.

IN WITNESS WHEREOF, this Agreement has been executed the day and year first above written.

MIG/DeWane Landfill Task Force

By: *Carolyn S Hesse*

Its: *Chairperson*

LAE Defendants

LAE, Inc.

By: *Raymond E. DeWane*

Its: *President*

*Raymond E. DeWane*
Raymond E. DeWane

*Audrey DeWane*
Audrey DeWane

*Benjamin Farina*
Benjamin Farina

*Jean Farina*
Jean Farina

Subscribed and Sworn to before
me this 28th day of Dec., 1998

*Joanne R. Appelquist*
Notary Public

"OFFICIAL SEAL"
JOANNE R. APPELQUIST
Notary Public, State of Illinois
My Commission Expires 4-20-2002



USE RESTRICTION AGREEMENT

EXHIBIT A

PROPERTY = AUDREY & BEN PROPERTY
AND THE SITE

## EXHIBIT B - THE PROPERTY

General.    The Property consists of the Site and the Audrey and Ben Property.

### THE AUDREY AND BEN PROPERTY

Owner:    Bank One, Illinois, NA, as Trustee under Trust No. 6682, the
beneficiaries of which are Audrey DeWane and Benjamin Farina

Property Code of Parcel:    06-06-31-200-024 (@46.04A)

Description:   **Parcel 06-06-31-200-024**

Part of the Northeast Quarter (¼) of Section Thirty-one (31), Township
Forty-four (44) North, Range Four (4) East of the Third (3rd) Principal Meridian,
bounded and described as follows, to-wit: Commencing at the Northwest corner
of the Northeast Quarter of said Section; thence South, along the West line of the
Northeast Quarter of said Section, 350.73 feet to the point of beginning for the
following described parcel; thence East, parallel with the North line of the
Northeast Quarter of said Section, 2214.0 feet, more or less, to the Easterly line of
premises conveyed by Elizabeth Crawford to John E. DeWane and Agnes M.
DeWane by Warranty Deed dated March 1, 1950 and recorded in Book 104 of
Deeds on page 106 in the Recorder's Office of Boone County, Illinois; thence
Southwesterly, along said Easterly line, 1209.0 feet, more or less, to its
intersection with a line which is 600.0 feet perpendicularly distant Northeasterly
from and parallel with the centerline of State Street Road (U.S. 20) running
Northwesterly and Southeasterly through said Quarter Section; thence
Northwesterly, parallel with the centerline of said State Street Road, 1997.0 feet,
more or less, to the West line of the Northeast Quarter of said Section; thence
North, along the West line of the Northeast Quarter of said Section, 690.0 feet,
more or less, to the point of beginning.

### THE SITE

Owner:    LAE, Inc., an Illinois corporation.

Property Codes of Parcels:    06-06-30-400-005 (@ 2.95A)
                              06-06-30-400-006 (@42.60A)
                              06-06-31-200-023 (@17.42A)

Description:   **Parcel 06-06-30-400-005**

That part of the South Half of Section 30, Township 44 North, Range 4 East of the Third Principal Meridian, bounded and described as follows: Beginning at the Southeast corner of said Section; running thence Westerly along the South line of said Section, 329 feet; thence North 178 feet; thence Northwesterly parallel with right of way of Chicago and Northwestern Railroad Company, 142 feet; thence Northeasterly at right angles with said right of way, 25 feet; thence Westerly parallel with said right of way, 2452 feet; thence North 50 feet to Chicago and Northwestern Railroad Company's right of way; thence Easterly along said right of way to East line of said Section; thence South to beginning; (excepting therefrom a parcel of land bounded and described as follows: Beginning at the Southeast corner of said Section; running thence Westerly along the South line of said Section, 329 feet; thence North to the South right of way line of the Chicago and Northwestern Railroad Company; thence Easterly along said right of way line to the East line of said Section; thence South to the place of beginning), all situated in County of Boone, State of Illinois.

**Parcels 06-06-30-400-006 and 06-06-31-200-023**

Part of the Southeast Quarter (¼) of Section Thirty (30), Township Forty-four (44) North, Range Four (4) East of the Third (3rd) Principal Meridian and part of the Northeast Quarter (¼) of Section Thirty-one (31), Township Forty-four (44) North, Range Four (4) East of the Third (3rd) Principal Meridian, bounded and described as follows, to-wit: Beginning at the Southwest corner of the Southeast Quarter of said Section 30; thence North, along the West line of the Southeast quarter of said Section 30, a distance of 1136.0 feet, more or less, to its intersection with the Southerly line of premises conveyed by Elizabeth Crawford to the Elgin and Belvidere Electric Company by Warranty Deed dated May 4, 1906 and recorded in Book 63 of Deeds on page 544 in the Recorder's Office of Boone County, Illinois; thence Southeasterly, along the Southerly line of said premises so conveyed by Crawford to Elgin And Belvidere Electric Company as aforesaid, 401.0 feet, more or less to a point of curve; thence Southeasterly, along the Southerly line of said premises so conveyed by Crawford to the Elgin and Belvidere Electric Company as aforesaid and along a circular curve to the right having a radius of 2667.0 feet and whose center lies to the Southwest, an arc distance of 955.0 feet, more or less, to a point of tangency; thence continuing Southeasterly, along the Southerly line of said premises so conveyed by Crawford to Elgin and Belvidere Electric Company as aforesaid, 776.0 feet, more or less; thence South, parallel with the East line of the Southeast Quarter of said Section, 497.53 feet; thence East, parallel with the South line of the Southeast Quarter of

said Section, 312.0 feet to the Easterly line of premises conveyed by Elizabeth Crawford to John E. DeWane and Agnes M. DeWane by Warranty Deed dated March 1, 1950 and recorded in Book 104 of Deeds on page 106 in said Recorder's Office; thence Southwesterly, along the Easterly line of said premises so conveyed by Crawford to DeWane as aforesaid, 261.0 feet, more or less, to its intersection with a line which is 350.73 feet perpendicularly distant South of and parallel with the North line of the Northeast Quarter of said Section 31; thence West, parallel with the North line of the Northeast Quarter of said Section 31, a distance of 2214.0 feet, more or less, to the West line of the Northeast Quarter of said Section 31; thence North, along the West line of the Northeast Quarter of said Section 31, a distance of 350.73 feet, more or less, to the place of beginning. Situated in the County of Boone and the State of Illinois.

# EXHIBIT C
## TO
## CONDITIONAL SETTLEMENT AGREEMENT

### ACCESS AGREEMENT

This Access Agreement is made and entered into this ~~28th~~ 8th day of ~~December, 1998~~ January 1999 by

and between LAE, Inc., Raymond DeWane, Jean Farina, Audrey DeWane and Benjamin Farina,

("Grantors") and the MIG/DeWANE LANDFILL TASK FORCE (as defined in the attached

Settlement Agreement) ("Grantees") under the following circumstances:

WHEREAS, Grantors are the owners of certain property (the "Property"), located east of

the City of Belvidere, in Boone County, Illinois, which Property and its ownership is shown on a

map, attached hereto as Exhibit A, and which Property is legally described in Exhibit B attached

hereto.

WHEREAS, landfill operations were conducted on a portion of the Property by a series of

parties from approximately 1969 through 1988, and the landfill was placed upon the National

Priorities List by the Environmental Protection Agency on August 30, 1990, as the

"MIG/DeWane Landfill Site" (the "Site"). The Site and its legal description are shown in

Exhibits A and B.

WHEREAS, an Administrative Order on Consent, together with all Attachments and

Exhibits thereto, (the "Order") has been entered into among the Grantees, the United States

1

Environmental Protection Agency ("USEPA") and the Illinois Environmental Protection Agency ("IEPA"), pursuant to which a Remedial Investigation/Feasibility Study ("RI/FS"), has been conducted on the Site;

WHEREAS, the Grantees wish to have continued access to the Site in order to perform Site remedial activities pursuant to the current Order or a future administrative order or consent decree among Grantees, USEPA and IEPA requiring Grantees to perform response activities at the Site (the "Future Order"). Grantors wish to continue to permit access to the Property, including the Site, to promote the completion of such activities.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is mutually acknowledged, the parties agree as follows:

1.     GRANT OF ACCESS TO SITE

A.     Grantors hereby grant to Grantees, USEPA, and IEPA, and each of their respective agents, consultants, employees and contractors, the nonexclusive right to use any driveways and roadways existing at the Site, or at the Property for purposes of access, ingress and egress to, from and between the Site and the streets and highways abutting and adjacent to the Property , without any fee or other charge being made for such use.

B.     Grantors grant to Grantees, USEPA and IEPA, each of their respective agents, consultants, employees and contractors, the right, at their expense, (and without recourse to

Grantors), to construct and maintain such other roadways on the Site deemed appropriate or necessary by Grantees, USEPA or IEPA to perform the remedial design, remedial action, oversight and related activities with respect to the Site.

C. The parties further recognize that this Access Agreement does not constitute an admission by Grantors of liability for any conditions at the MIG/DeWane Landfill Site, nor shall it be considered a release of liability, if any, for Site conditions.

D. Grantees shall construct and/or maintain all driveways and roadways in that condition and state of repair necessary for the uses to which such will be put by Grantees and their contractors and invitees. Further, Grantees shall not cause or allow any driveways or roadways on the Property to be in such a state of use, traffic or disrepair as to cause or contribute to a hazard to lawful users of such driveways or roadways.

E. The grant of access here given is restricted to such uses of existing driveways and roadways as are reasonable and necessary to the performance by Grantees of obligations set forth in the Order and/or Future Order. Grantees are responsible for assuring that vehicles, material and equipment using or being transported on driveways and roadways are designed, equipped and operated in a safe and lawful manner. Grantees will endeavor not to use driveways and roadways before the hour of 6:00 a.m. (CST) or after the hour of 7:00 p.m. , but have the right to use such ways during any reasonable hours.

## 2. SITE UTILIZATION

A. Grantees, USEPA, and IEPA shall have the right to enter on the Site, at reasonable

times and in a reasonable manner, and take any action which is reasonably necessary to carry out remedial design, remedial action, oversight, and related activities, in, under or around the Site, as described in the Order or a Future Order.

B.    The parties recognize that the performance of remedial design, remedial action, oversight, and related activities are within the sole and absolute control of Grantees, USEPA or IEPA. Grantors cannot, and will not attempt to, direct the manner in which such activities shall be performed.

C.    Grantees, USEPA, and IEPA shall have the right to erect any fencing on the Site deemed necessary or appropriate for security or the performance of the remedy and related activities.

D.    Grantors will not interfere with any remediation facilities or operations occurring at the Site or interfere with any other operation or activities of Grantees, USEPA, or IEPA pursuant to their rights under this Agreement. Provided, however, Grantors reserve their rights to take legal action to enjoin any breach of this Agreement, and any activities of Grantees, USEPA, IEPA, or their respective agents, consultants, employees and contractors, which constitute a public or private nuisance, trespass or violation of law.

E.    Grantees agree that they will not make any change in the Site for any purpose not necessary or appropriate to carry out remedial design, remedial action, oversight, or related activities with respect to the Site. The grant to utilize the Site is not, and shall not be construed as, a grant or license to create a condition which is not allowed by federal, state or local law.

## 3.  TERMINATION

A.     This Agreement and all Amendments hereto shall be construed as covenants running with the land.  This Agreement shall terminate at the time Grantees' obligations terminate under the Order or under a Future Order.  Further, Grantees may terminate this Agreement whenever they determine, and provide written notice to Grantors, that it is no longer necessary to enter on Grantors' Property, in which event Grantees shall, at their expense, execute and record an appropriate document evidencing the fact that this Agreement has terminated. Further, the failure of Grantees to obtain the additional named insured status for Grantors under the policies described at  Paragraphs 9 (b) and (c) shall operate to terminate this Agreement.

B.     Upon termination of this Agreement, Grantees shall surrender all fixtures which Grantees have permanently attached to the Property, except such fixtures as Grantees shall direct Grantors to remove.  Upon termination, Grantees shall remove from the Property all non-fixtures which were placed upon the Property during the term of this Access Agreement or the term of preceding access agreements.

## 4.   NO WAIVER; ENTIRE AGREEMENT

The failure of Grantees or Grantors to insist upon the strict performance of any terms, covenants, or conditions of this Agreement, or to exercise any right or remedy herein contained, shall not be construed as a waiver or relinquishment for the future of such term, covenant, condition, right or remedy.  This Agreement and the attached Exhibits constitute the entire Agreement between Grantors and Grantees with respect to access to Grantors' Property.

## 5. CONSTRUCTION

It is mutually agreed that this Agreement shall be construed and interpreted as if drafted by each party and it is further acknowledged that this Agreement is the product of negotiations between the parties, and shall not be construed or interpreted against either party based on such party having drafted this Agreement, or any portion thereof.

## 6. INVALIDITY

A determination by a Court of competent jurisdiction that any provision of this Agreement is invalid for any reason shall not affect the validity of any other provision.

## 7. AGENTS AND EMPLOYEES OF GRANTEES

The rights granted to Grantees and their successors and assigns under this Agreement may be exercised through their respective agents, employees, and contractors and by representatives of USEPA and IEPA, including their respective employees, agents, and contractors.

## 8. HEADINGS

The headings of this Agreement are for convenience only and shall not affect the meaning or construction of the contents of this Agreement.

## 9. INDEMNIFICATION; INSURANCE AND REPAIRS

(a)     The Grantees, jointly and severally, shall defend, indemnify and hold harmless Grantors, and their successors, heirs or assigns, from and against all claims, losses,

6

administrative or judicial proceedings, damages, and all costs and expenses incidental thereto, (including reasonable attorneys' fees), arising out of the use or occupancy of, operations conducted upon or equipment or materials placed or installed upon the Property by Grantees, USEPA or IEPA, or their agents, contractors, employees or invitees. In the event Grantees do not meet their obligation to defend Grantors, because of an actual or potential conflict of interest between Grantees and Grantors, Grantees' obligation to defend shall be met by timely paying the reasonable defense costs (including attorneys' fees) of the Grantors. The obligations of this subparagraph shall survive termination of this Agreement.

(b)  If Grantees procure, at any time during the term of this Agreement, insurance contracts covering the liability of Grantees for bodily injury, property damage and personal injury actually or allegedly sustained by any third party and arising out of the uses, operations or equipment described in the preceding subparagraph (a), Grantees shall cause each of the Grantors to be a named additional insured under each such insurance contract by written endorsements thereto. Within five days following the inception date of each such policy, Grantees shall provide written notice to Grantors, identifying the specific policy obtained and stating that Grantors have been named as additional insureds by a specific written endorsement. Such notice shall also provide Grantors with a certificate of such insurance, executed by an agent or the insurer, and a copy of the endorsement by which Grantors were named as additional insureds.

(c)  Grantees shall ensure that Grantors are named as additional named insureds, by policy endorsement, on the liability insurance policies of each contractor retained by Grantees to

do any work on the Property. If Grantees are named insureds on the liability insurance policies of any subcontractors of such contractors, Grantees shall ensure that such additional insured status is also extended to Grantors. It shall be the responsibility of Grantees to obtain, and promptly deliver to Grantors, certificates of insurance for each policy on which Grantors are named additional insureds and a copy of each policy endorsement by which the Grantors are provided additional insured status.

(d)    Grantees shall ensure that the liability insurance policies, including workers' compensation policies, of each contractor retained by Grantees to do any work on the Property, provide a waiver of the insurer's rights of subrogation against each of the Grantors.

(e)    The Grantees agree to repair, promptly, any damage to the Property arising of acts or omissions of Grantees, USEPA, IEPA, and their agents, contractors, consultants, employees or invitees, while on the Property.


## 10.    RELEASE OF LIABILITY AND COVENANT NOT TO SUE

The Grantees, jointly and severally, release Grantors from, and covenant not to sue Grantors for, liability to Grantees, including liability by way of contribution, indemnification, assignment or subrogation, for personal injury, bodily injury or property damage arising out of the use or occupancy of, or operations upon, the Property by Grantees, their agents, contractors, consultants, employees or invitees.

**IN WITNESS WHEREOF,** this Agreement has been executed the day and year first above written.

**MIG/DeWane Landfill Task Force**

By: *Carolyn S Hesse*

Its: *Chairperson*

**LAE Defendants**

LAE, Inc.

By: *Raymond E. DeWane*

Its: *President*

*Raymond E. DeWane*
Raymond E. DeWane

*Audrey DeWane*
Audrey DeWane

*Benjamin Farina*
Benjamin Farina

*Jean Farina*
Jean Farina

Subscribed and Sworn to
before me this 28th day
of January, 1999.

*Joanne R. Appelquist*
Notary Public

"OFFICIAL SEAL"
JOANNE R. APPELQUIST
Notary Public, State of Illinois
My Commission Expires 4-20-2002



**APPENDIX J**

# APPENDIX J

## STATE ENTITIES EXCLUDED FROM COVENANTS NOT TO SUE

H. Douglas Singer Mental Health Center, Rockford, Illinois